**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

                 Plaintiff,

- against –

ANTON NAPOLSKY,                          1:22-cr-00525-NRM-CLP
also known as "Anton Napolskiy," and

VALERIIA ERMAKOVA,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE INDICTMENT

Maria Temkin, Esq. (*pro hac vice*)
TEMKIN & ASSOCIATES, LLC
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 939-4181
Email: maria@temkinlegal.com
*Attorney for Defendant Valeriia Ermakova*

Anna V. Brown, Esq. (*pro hac vice*)
BROWN LEGAL CONSULTING, LLC
10 Rittenhouse Rd.
Frenchtown, NJ 08825
Telephone: (856) 357-4651
Email: anna@brownlegalconsulting.com
*Attorney for Defendant Anton Napolsky*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 3

    A. ALLEGATIONS IN THE INDICTMENT .................................................................... 3

    B. ALLEGATIONS IN THE COMPLAINT ...................................................................... 4

        1. Z-Library Website .............................................................................................. 4

        2. Relevant Jurisdictional Facts ........................................................................... 5

        3. Allegations of Defendants' Involvement with Z-Library Website ................ 6

            a. *Defendant Anton Napolsky's Alleged Involvement* ................................. 6

            b. *Defendant Valeriia Ermakova's Alleged Involvement* ........................... 7

ARGUMENT ........................................................................................................................ 8

    I. LEGAL STANDARD FOR DISMISSAL OF AN INDICTMENT ................................... 8

    II. THE INDICTMENT FAILS TO STATE OFFENSES UNDER THE LAWS OF THE
        UNITED STATES .................................................................................................... 8

        A. THE INDICTMENT FAILS TO STATE JURISDICTIONAL ELEMENTS OF THE
            OFFENSES ........................................................................................................ 8

            1. No Domestic Criminal Copyright Conduct by the Accused Is Alleged ........... 9

            2. No Domestic Wire Fraud Conduct By the Accused Is Alleged ..................... 11

            3. No Domestic Money Laundering Conduct by the Accused Is Alleged .......... 12

        B. WIRE FRAUD COUNTS FAIL TO STATE AN OFFENSE ............................................. 13

            1. An Indictment Must Set Forth "A Scheme to Defraud" "For Obtaining
               Money or Property" As Opposed to Creative Rephrasing of Copyright
               Infringing Conduct to Match the Elements of Wire Fraud Offenses ............... 13

2.  Counts II and III Fail to State "A Scheme to Defraud" "For Obtaining Money or Property" ................................................................................16

3.  Count IV Fails to State "A Scheme to Defraud" "For Obtaining Money or Property"..............................................................................................17

III.  THE INDICTMENT FAILS TO STATE OFFENSES WITH SPECIFICITY ...............19

A.  THE ELEMENTS OF CRIMINAL COPYRIGHT INFRINGEMENT ARE NOT SUFFICIENTLY PLED.................................................................................20

B.  THE ELEMENTS OF COUNT II - IV - CONSPIRACY TO COMMIT WIRE FRAUD AND WIRE FRAUD ARE NOT SUFFICIENTLY PLED ...................................20

C.  THE ELEMENTS OF MONEY LAUNDERING CONSPIRACY ARE NOT SUFFICIENTLY PLED.................................................................................21

IV.  THE INDICTMENT VIOLATES DUE PROCESS BECAUSE DEFENDANTS' CONDUCT LACKS SUFFICIENT NEXUS WITH THE UNITED STATES..............22

V.  THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF VENUE.................25

CONCLUSION....................................................................................................25

## **TABLE OF AUTHORITIES**

**AUTHORITIES**                                                                                                    **PAGES**

### **CASES**

*Action Apartment Ass'n, Inc. v. City of Santa Monica*, 163 P.3d 89 (Cal. 2007) .......................8, 9

*Bascunan v. Elsaca*, 927 F.3d 108 (2d Cir. 2019) ...................................................................9, 11

*Bryant v. Mattel*, No. CV 04-9049 DOC (RNBx), 2010 U.S. Dist. LEXIS 103851
(C.D. Cal. Aug. 2, 2010)...........................................................................................................15

*Ciminelli v. United States*, 143 S. Ct. 1121 (2023)................................................................ 13-14

*Cleveland v. United States*, 531 U.S. 12 (2000) ........................................................................13

*Damiano v. Sony Music Entm't*, 975 F. Supp. 623 (D.N.J. 1996) ................................................15

*Dubin v. United States*, 216 L. Ed. 2d 136 (2023)......................................................................18

*E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991) ................................................................9

*Filmvideo Releasing Corp. v. Hastings*, 668 F.2d 91 (2d Cir. 1981) ...........................................9

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 1996 U.S. Dist. LEXIS 18653 (S.D.N.Y.
Dec. 16, 1996)..........................................................................................................................13

*Grecco v. Age Fotostock Am., Inc.*, 2021 U.S. Dist. LEXIS 144023 (S.D.N.Y. 2021)................10

*Hamling v. United States*, 418 U.S. 87 (1974)..............................................................................8

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480 (S.D.N.Y. 2000) ..15

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y. 1992)..................................................................20

*Kelly v. United States*, 140 S. Ct. 1565 (2020) ....................................................................13, 14

*McNally v. United States*, 483 U. S. 350 (1987)........................................................................13

*Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) .............................................................9

*Naso v. Park*, 850 F. Supp. 264 (S.D.N.Y. 1994)......................................................................15

*Petroleos Mexicanos v. SK Eng'g & Constr. Co.*, 572 F. App'x 60 (2d Cir. 2014) .....................11

*RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016)................................................. 8, 9-10

*Russell v. United States*, 369 U.S. 749 (1962) ...........................................................19

*Sekhar v. United States*, 570 U.S. 729 (2013) ..................................................... 14-15

*State Street Global Advisors Trust Co. v. Visbal*, 431 F. Supp. 3d 322 (S.D.N.Y. 2020) .............10

*Subafilms, Ltd. v. Mgm-Pathe Communs. Co.*, 24 F.3d 1088 (9th Cir. 1994) ..............................13

*United States v. Ahmed*, 94 F. Supp. 3d 394 (E.D.N.Y. 2015) .....................................................8

*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998) ..............................................................8

*United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011) .....................................................22, 23

*United States v. Awan*, 459 F. Supp. 2d 167 (E.D.N.Y. 2006) ...............................................19

*United States v. Bescond*, 7 F.4th 127 (2d Cir. 2021)...................................................................1

*United States v. Cabrales*, 524 U.S. 1 (1998)..........................................................................25

*United States v. Dowling*, 473 U.S. 207 (1985).......................................... 14, 15, 16-17

*United States v. Evans*, 844 F.2d 36 (2d Cir. 1988).................................................................13

*United States v. Gallant*, 570 F. Supp. 303 (S.D.N.Y. 1983) ................................... 15-16

*United States v. Hawit*, 2017 U.S. Dist. LEXIS 23391 (E.D.N.Y. Feb. 17, 2017)......................11

*United States v. Hoskins*, 902 F.3d 69 (2d Cir. 2018) .......................................................9

*United States v. LaMacchia*, 871 F. Supp. 535 (D. Mass. 1994)...............................................15

*United States v. McCarthy*, 271 F.3d 387 (2d Cir. 2001) .............................................21

*United States v. Mollica*, 849 F.2d 723 (2d Cir. 1988)............................................. 20-21

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000)..................................................................19

*United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999) .............................................25

*United States v. Rosenblatt*, 554 F.2d 36 (2d Cir. 1977) ...............................................20

*United States v. Scully*, 108 F. Supp. 3d 59 (E.D.N.Y. 2015) ..................................................8

*United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007) ................................................ 17-18

*United States v. Sidorenko*, 102 F. Supp. 3d 1124 (N.D. Cal. 2015) ...................................... 23-24

*United States v. Solovey*, No. 04-CR-244S, 2005 U.S. Dist. LEXIS 42990
(W.D.N.Y. May 31, 2005) ...................................................................................................19

*United States v. Thompson*, 141 F. Supp. 3d 188 (E.D.N.Y. 2015) .............................................19

*United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982)...........................................................22

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999) .....................................................................8

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003)....................................................................22

*Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016).............................................................................23

## STATUTES AND FEDERAL RULES

Federal Rule of Criminal Procedure 7 .............................................................................................8

Federal Rule of Criminal Procedure 12 ..........................................................................................2

Federal Rule of Criminal Procedure 18 .........................................................................................25

Criminal Copyright Infringement Statute, 17 U.S.C. §506 ................................................ *passim*

Criminal Copyright Infringement, 17 U.S.C. §2319 ........................................................... *passim*

The Hobbs Act, 18 U.S.C. § 1951 .................................................................................................14

The Money Laundering Statute, 18 U.S.C. § 1956.....................................................................1,12

The National Stolen Property Act, 18 U.S.C. § 2314 ....................................................................14

The Wire Fraud Statute, 18 U.S.C. §1343 ........................................................................... *passim*

U.S. CONST. AMEND. V ...................................................................................................................22

U.S. CONST. AMEND. VI ..................................................................................................................25

U.S. CONST., ART. III, § 2, Cl. 3 ....................................................................................................25

## OTHER AUTHORITIES

Sebastian Herrera "*Amazon Halts Shipping, Prime Video Services in Russia*,"
THE WALL STREET JOURNAL, March 11, 2022 ................................................................6

Oliver Niehaus, "*Seizure of Z-Library Domain Detrimental to Student Access to
Educational Materials*," THE OBERLIN REVIEW, November 11, 2022 .........................................24

Alison Rumfitt, "*In defence of Z-Library and book piracy*", DAZED, November 25, 2022 .........24

Defendants Anton Napolsky ("**Napolsky**") and Valeriia Ermakova ("**Ermakova**"), by and through their undersigned attorneys, respectfully jointly submit this memorandum of law in support of their joint Motion to Dismiss the Indictment.

## INTRODUCTION

The five-count Indictment charges Napolsky and Ermakova with criminal copyright infringement,[1] conspiracy to commit wire fraud,[2] two counts of wire fraud[3] and money laundering conspiracy.[4]  Defendants are two Russian nationals that have neither resided in the United States nor visited the United States during the time relevant to the Indictment.  While traveling as tourists in Argentina Napolsky and Ermakova were detained pursuant to an arrest warrant issued in this case.  The extradition proceedings are now pending in the Argentinian Court system.[5]  No facts were presented in the Indictment or any supporting court documents that either Defendant's conduct took place in this district.

Defendants hereby move to dismiss[6] the Indictment against them pursuant to Rule 12 of the Federal Rules of Criminal Procedure for the following reasons:

---

[1] 17 USC §506(a)(l)(A) and §23l9(b)(l); 18 USC §2 and §3551 et seq.

[2] 18 USC §1349, §3551 et seq.

[3] 18 USC §1343, §2 and §3551 et seq.

[4] 18 USC 1956(h) and 3551 et seq.

[5] The Extradition Request is attached hereto as Exhibit 1.

[6] Defendants are entitled to challenge the Indictment, notwithstanding the fact that they remain absent from the United States. *See United States v. Bescond*, 7 F.4th 127, 139, 143 (2d Cir. 2021) (district court should consider the merits of a motion to dismiss of a foreign national residing abroad while allegedly committing the charged conduct because staying abroad does not qualify a "fugitive" under a "fugitive disentitlement" doctrine).

*First,* **Count I – Criminal Copyright -** should be dismissed for lack of jurisdiction under Rule 12(b)(2), for lack of specificity under 12(b)(3)(B)(iii) and for failure to state an offense under 12(b)(3)(B)(v) because (a) the U.S. Copyright Act does not apply extraterritorially, and no domestic criminal copyright conduct by the accused is alleged, and (b) the Indictment fails to state which copyrighted materials were unlawfully distributed, disclose the ownership of the copyrights and the victims, state the dates of infringement and by what acts Defendants infringed the lawfully held copyrights.

*Second,* **Counts II, III and IV – Conspiracy to Commit Wire Fraud and Wire Fraud -** should be dismissed for lack of jurisdiction under Rule 12(b)(2), for lack of specificity under 12(b)(3)(B)(iii) and for failure to state an offense under 12(b)(3)(B)(v) because (a) the U.S. Wire Fraud Act does not apply extraterritorially, and no domestic conduct by Defendants is alleged; (b) the conduct charged in the Indictment does not equate to a scheme to defraud for obtaining "money and property" element of the wire fraud offense; and (c) the Indictment fails to state with specificity the scheme to defraud, the manner of defrauding, the agreement to defraud and the money or property that was obtained through fraud.

*Third,* **Count V – Money Laundering Conspiracy -** should be dismissed for lack of jurisdiction under Rule 12(b)(2), lack of specificity under 12(b)(3)(B)(iii) and failure to state an offense under 12(b)(3)(B)(v) because (a) no financial transactions that took place in part or in whole in the United States are alleged, and (b) no illicit funds could have been generated and laundered because the alleged extraterritorial activities are not punishable under the U.S. laws.

*Fourth*, the Indictment violates Defendants' rights under the Due Process Clause of the Fifth Amendment of the United States Constitution because of the insufficient connection between the alleged Defendants' conduct and the United States.

*Finally*, the venue in this district is improper because Defendants' conduct did not take place this district.

## FACTUAL BACKGROUND[7]

### A.    ALLEGATIONS IN THE INDICTMENT

The Indictment follows the language of the charging offenses without providing detailed factual content as follows:

### Count I – Criminal Copyright:

Between approximately January 2018 and November 2022 Defendants, "within the Eastern District of New York and elsewhere," "together with others, did knowingly and willfully infringe a copyright for purposes of commercial advantage and private financial gain, which offense involved the reproduction and distribution, including by electronic means, during a 180-day period of ten or more copies of one or more copyrighted works having a total retail value of more than $2,500." Indictment, ¶1.

### Count II – Conspiracy to Commit Wire Fraud:

Between approximately January 2018 and November 2022 Defendants, "within the Eastern District of New York and elsewhere," "together with others, did knowingly and intentionally conspire" and "did knowingly and intentionally conspire to devise a scheme and artifice to defraud authors and publishers, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication …" Indictment, ¶2.

---

[7] The alleged facts recited herein are drawn from the Indictment and supporting court documents. They are accepted as true solely for the purposes of this motion to dismiss.

### Counts III & IV – Wire Fraud:

"On or about the dates set forth below, within the Eastern District of New York" Defendants "did knowingly and intentionally devise a scheme and artifice to defraud authors and publishers, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises." Indictment, ¶3.

For the purpose of executing such scheme and artifice" Defendants "together with others, did transmit and cause to be transmitted, by means of wire communication" two emails from a Z-Library account to a copyright owner. Indictment, ¶4.

### Count V - Money Laundering Conspiracy:

Between approximately January 2018 and November 2022 Defendants, "within the Eastern District of New York and elsewhere," "did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: deposits, withdrawals and transfers of funds and monetary instruments, which transactions in fact involved the proceeds of specified unlawful activity, to wit: criminal copyright, as alleged in Count One … and wire fraud, as alleged in Counts Three and Four … (collectively, the "Specified Unlawful Activities"), knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, with intent to promote the carrying on of the Specified Unlawful Activities. Indictment, ¶5.

**B.   ALLEGATIONS IN THE COMPLAINT**

The Complaint and Affidavit in support of an application for two arrest warrants filed in a related Case 22-MJ-1139, attached hereto as Exhibit 2, provide additional details:

### 1.  Z-Library Website

The charges stem from Defendants' alleged control and operation of a website, named Z-Library

and based in Russia, which allows users worldwide to upload and download content, including educational articles and books for free. As alleged in the Complaint:

- "Z-Library is a website that bills itself as "the world's largest library" and claims to offer millions of ebooks for download for free. Z-Library has been active since approximately 2009 and offers copyright-protected ebook files in a variety of file formats and encourages users to upload and download titles." Compl. ¶3.

- "Many of the ebooks offered by Z-Library are protected intellectual property for which authors hold copyrights and publishers hold exclusive distribution rights, and which Z-Library has no right or license to distribute." Compl. ¶4.

- "Z-Library consists of dozens of interrelated websites." Compl. ¶6.

- The users could upload and download books on Z-Library websites free of charge. Compl. ¶¶4, 7, 8, 10.

- "The domains https://b-ok.cc and https://booksc.org include "Donate" links in the upper right corner. For a donation of $1.00 or more, users can upgrade their account to "Premium" status, which unlocks certain features, including the ability to allow users to convert their files to various formats beyond the default format, and access to relevant URLs for downloading purposes. Z-Library accepts payment via Visa, American Express, Alipay, Bitcoin, and Amazon.com gift cards." Compl. ¶9.

### 2.  Relevant Jurisdictional Facts

Both Indictment and the Complaint mostly focus on alleged control of Z-Library by Defendants, who allegedly directed the activity from St. Petersburg, Russia, where they access the internet and send emails from the shared location and cause "millions of copyrighted works [to be] available online for free." Compl. ¶5. The charging documents offer generalized language of the criminal offenses that "[t]he scheme operated through online websites that allow users to fraudulently upload and download the intellectual property of thousands of artists, including artists located within Brooklyn, Queens, and elsewhere throughout the Eastern District of New York." Compl. ¶2.

The only facts or description of any conduct relating to the United States are as follows:

- The scheme operated through online websites that allow users to

fraudulently upload and download the intellectual property of thousands of artists, including artists located within Brooklyn, Queens, and elsewhere throughout the Eastern District of New York. Compl. ¶2;

•       Z-Library book titles are accessible from United States IP addresses at the site https://b-ok.cc... Compl. ¶7.

•       FBI agents, acting in an undercover capacity, have requested copyrighted books from Z-Library using the service's "send by email" function. The titles arrived, without copyright protections, as attachments to messages from the email address mailer@bookmail.org.  Bookmail.org is the domain associated with emails from Z-Library's customer service personnel. Compl. ¶22;

•       A donation of an Amazon gift card to Z-Library was claimed by an Amazon customer account ending in – 1502.  "The account was registered on November 30, 2018, and has payment methods on file, including a Visa and a Mastercard in the name of Ermakova Valeriya with the billing address for each of Fontanka River Embankment 24 18, St. Petersburg, Russia.  Additionally, there is a Mastercard in NAPOLSKY's name on the 1502 Account with a billing address in New Castle, Delaware. Based on an open-source search, it appears that the address is registered to a shipping company that provides mail forwarding services. Compl. ¶25.[8]

•       No U.S. victims are named in the Indictment or the Complaint.

### 3.   Allegations of Defendants' Involvement with Z-Library Website

#### a.   *Defendant Anton Napolsky's Alleged Involvement*

Defendant Napolsky is alleged to have control over Z-Library Website based on:

•   Napolsky registering an account with Google Pay in his name using his personal email address Napolsky7@gmail.com. Compl. ¶12;

•   Napolsky's control of series of email addresses associated with Z-Library, including email addresses requesting donations for Z-Library. Compl. ¶13;

•   Napolsky's use of his Russian-based telephone number to register the email Napolsky7@gmail.com as well as certain emails associated with Z-Library. Compl. ¶ 14;

---

[8] Amazon servers are located all over the world. *See* Description of AWS Global Infrastructure, available at https://aws.amazon.com/about-aws/global-infrastructure/. Similarly, Amazon gift cards can be purchased by anyone in the world. Amazon fulfilment centers were also located worldwide. *See* https://www.aboutamazon.eu/news/tag/fulfilment-center . Until recently, Amazon operated in Russia. *See* "Amazon Halts Shipping, Prime Video Services in Russia," THE WALL STREET JOURNAL, March 11, 2022, attached as Exhibit 3.

- Napolsky's ownership of at least two Amazon accounts, with registration records reflecting his Russian phone number and his Russian address and Napolsky's use of Amazon gift cards - allegedly "donated" by Z-Library users - to make at least 21 orders on Amazon. Compl. ¶16;

- Napolsky registering email service with Amazon Web Service for Z-Library customer service function bookmail.org domain, which sent "tens of thousands of messages from email addresses at the domain bookmail.org … to a widely varying set of what appear to be personal email addresses, located at common personal email domains like gmail.com and aol.com, as well as more than twelve thousand email addresses at ".edu" domains. Compl. ¶¶17-22.

There are no allegations that Napolsky, who resides in Russia, has ever conducted any activity in the United States.

### b. Defendant Valeriia Ermakova's Alleged Involvement

Defendant Ermakova is alleged to have control over Z-Library based on:

- Ermakova's use of Amazon gift cards - allegedly "donated" by Z-Library users - to make purchases through Amazon account she allegedly shares with Defendant Napolsky "totaling over $13,628.32, most of them for beauty and apparel products" that were shiped to Ermakova "at the address Fontanka River Embankment, St. Petersburg, Russia." Compl. ¶¶24-26;

- Ermakova's logging on her Amazon account from the same IP Address "5.8.39.0 interchangeably and sometimes around the same time" as Napolsky, Compl. ¶¶27-28;

- Ermakova receiving emails "from the email address jira@zlibrary.atlassian.net" belonging to an Australian software company Atlassian Corporation Plc regarding a task management project Jira on or about January 10, 2022, January 14, 2022 and March 22, 2022. According to the Indictment "these emails indicate[] that the defendants ANTON NAPOLSKY and VALERIIA ERMAKOVA were collaborating regarding Z-Library software…" Compl. ¶29(c); and

- Ermakova sending on or about October 25, 2018, to Napolsky Personal Email-1 and email "attaching what appears to be an electronic version of the book "Dare to Lead: Brave Work. Tough Conversations. Whole Hearts," Compl. ¶29(d).

There are no allegations that Ermakova, who resides in Russia, has ever conducted any activity in the United States.

**ARGUMENT**

I. **LEGAL STANDARD FOR DISMISSAL OF AN INDICTMENT**

Federal Rule of Criminal Procedure 12(b) "authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds." *United States v. Ahmed*, 94 F. Supp. 3d 394, 404 (E.D.N.Y. 2015). Thus, "[w]hen deciding a motion to dismiss a count of an indictment, a court must accept all the factual allegations in the indictment as true." *United States v. Scully*, 108 F. Supp. 3d 59, 117 (E.D.N.Y. 2015). "A court should not look beyond the face of the indictment and draw inferences as to proof to be adduced at trial[.]" *Id.* at 117.

II. **THE INDICTMENT FAILS TO STATE OFFENSES UNDER THE LAWS OF THE UNITED STATES**

"[An] indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ." Fed. R. Crim. P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or convictions in bar of future prosecutions for the same offense." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). This generally requires an Indictment to "do little more than [] track the language of the statute charged and state the place and time (in approximate terms) of the alleged crime." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (internal quotation marks and citations omitted).

A. **THE INDICTMENT FAILS TO STATE JURISDICTIONAL ELEMENTS OF THE OFFENSES**

It is a longstanding principle of American law that legislation of Congress is meant to apply only within the territorial jurisdiction of the United States unless a contrary intent appears in the text of the statute. *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016) (internal

quotation marks omitted) ("It is a basic premise of our legal system that, in general, United States law governs domestically but does not rule the world"). "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Austl. Bank Ltd*., 561 U.S. 247, 255, 130 S. Ct. 2869, 2878 (2010).

"Courts will therefore not apply a U.S. law extraterritorially unless 'the affirmative intention of the Congress [is] clearly expressed. *United States v. Hoskins*, 902 F.3d 69, 85 (2d Cir. 2018) (quoting *E.E.O.C. v. Arabian Am. Oil Co*., 499 U.S. 244, 248 (1991)). This principle stems from the risk of "unintended clashes between our laws and those of other nations which could result in international discord." *Id*.

The underlying statutes in Counts I, II, III and IV (Copyright Infringement and Wire Fraud) do not provide for extraterritorial application. *Filmvideo Releasing Corp. v. Hastings*, 668 F.2d 91, 93 (2d Cir. 1981) ("copyright laws do not have extraterritorial application"); *Bascunan v. Elsaca*, 927 F.3d 108, 121 (2d Cir. 2019) ("wire fraud statutes do not indicate an extraterritorial reach"). The remaining Count V – Money Laundering Conspiracy limits extraterritorial jurisdiction to financial transactions and foreign person's conduct that occurs in whole or in part in the United States, which is not the case here.

### 1. No Domestic Criminal Copyright Conduct by the Accused Is Alleged

If a statute has no extraterritorial application, the second step of the analysis is to determine "whether the case involves a domestic application of the statute." *RJR Nabisco, Inc. v. European Cmty*., 579 U.S. 325, 337 (2016). "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the

case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Id.*

The focus of copyright infringement is the willful reproduction or distribution of copyrighted materials in the United States.  There is no such thing as an international copyright that automatically protects an author's writings throughout the world. Protection against unauthorized use in any country is within the national justice system of each country.  There are no facts in the charging documents to support the legal conclusion that Defendants reproduced or distributed copyrighted materials within the United States.  Defendants neither resided nor traveled to the United States during the time relevant to the Indictment. Any alleged activities tying them to Z-Library operation took place abroad.  The fact that "copyrighted books were available for download through Z-Library websites," Compl. ¶4, and "Z-Library book titles are accessible from United States IP addresses", Compl. ¶7, does not amount to Defendants' own domestic conduct of "reproduction and distribution" of copyrighted materials within the United States.[9]

Complaint further alleges that FBI agents, acting in an undercover capacity, requested and received copyrighted books from Z-Library using the service's "send by email" function, Compl. ¶22.  However, that is FBI agent's own conduct but not Defendants' conduct. "Send by email" would have been a function like one on LexisNexis or Westlaw where the user researches the materials and sends them to oneself through an electronic search platform.  There is no allegation

---

[9] As SDNY district court observed recently, "It is not a sufficient predicate act that a copyrighted work is made available online to United States users." *Grecco v. Age Fotostock Am., Inc.*, 2021 U.S. Dist. LEXIS 144023, 2021 U.S. Dist. LEXIS 144023, *9 (S.D.N.Y. 2021). Rather, a plaintiff must establish certain "plus factors," such as: "(1) the direction of copyrighted material into the United States, (2) [that] foreign acts are intended to, and do, have an effect within the United States, and (3) the uploading of copyrighted materials to servers located in the United States." *State Street Global Advisors Trust Co. v. Visbal*, 431 F. Supp. 3d 322, 340 (S.D.N.Y. 2020).

Defendants knew the location of the undercover FBI agents and willfully directed the materials to the United States.

The Indictment is also devoid of any specific examples of violations of copyrighted work in the United States.  Neither can Defendants' use of Amazon gift cards be attributed to U.S. domestic conduct of "financial gain," since prior to early 2022 Amazon did business in Russia and Russian customers ordered retail in Russia.  The facts pled in the charging documents do not support domestic application of the Copyright Act.[10]

Accordingly, Count I – Criminal Copyright should be dismissed for lack of jurisdiction.

### 2.   No Domestic Wire Fraud Conduct By the Accused Is Alleged

The focus of the wire fraud statute is "the use of the … wires in furtherance of a scheme to defraud." *Bascunan v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019).  "[I]n a given case, a court must conduct a more holistic assessment of the conduct that constitutes the alleged fraud scheme, including consideration of whether the scheme involves only incidental or minimal use of U.S. wires." *United States v. Hawit*, No. 15 Crim. 252 (PKC), 2017 U.S. Dist. LEXIS 23391, 2017 WL 663542, at *5 (E.D.N.Y. Feb. 17, 2017).  *See, e.g., Petroleos Mexicanos v. SK Eng'g & Constr. Co.*, 572 F. App'x 60, 61 (2d Cir. 2014) ("three minimal contacts with the United States: the financing was obtained here, the invoices were sent to the bank for payment, and the bank issued payment" were insufficient because "[t]he activities involved in the alleged scheme—falsifying

---

[10] Moreover, as stated in the Indictment, Z-Library users could upload and download books on Z-Library websites free of charge. The webspace provided by Z-Library would be similar to a University providing a study hall for students where they would meet to study and share a course book or exchange books from courses they had completed with other students for free; or any bookstore, such as Barnes and Nobles, which allows customers to sit in their café reading for free any book available on the store's shelves. While Z-Library provided a platform for such sharing, any infringement of copyrighted works would have been by third party users.

the invoices, the bribes, the approval of the false invoices—took place outside of the United States.").

There are no facts in the charging documents and request for extradition that the culpable conduct in the alleged scheme – creating Z-Library or making copyrighted materials available on Z-Library's website, and the sending of two emails to copyright owners referenced in paragraph 4 of the Indictment – was done from any United States location.  These limited alleged facts related to United States contacts do not support domestic application of the Wire Fraud Act.

Accordingly, the wire fraud counts II through IV should be dismissed for lack of jurisdiction.

### 3.   No Domestic Money Laundering Conduct by the Accused Is Alleged

The money laundering statute provides for extraterritorial application under limited circumstances.  First, 18 U.S.C.S. § 1956(b) provides for jurisdiction over foreign persons only "if service of process upon the foreign person is made under the Federal Rules of Civil Procedure or the laws of the country in which the foreign person is found, and … the foreign person commits an offense under subsection (a) involving **a financial transaction that occurs in whole or in part in the United States**." *Id*. (emphasis added). Second, 18 U.S.C.S. § 1956 (f) permits "extraterritorial jurisdiction over the conduct prohibited by this section if— (1) the conduct is by a United States citizen or, **in the case of a non-United States citizen, the conduct occurs in part in the United States**; and the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000." *Id*. (emphasis added).

There are no facts in the charging documents that show that any financial transaction or Defendants' conduct took place in the United States, and the service of process was made. In addition, because U.S. copyright infringement laws do not protect copyright outside the United

States, any alleged conduct abroad was not unlawful;[11] thus, any funds related to Z-Library operations were not generated by unlawful activities.

Accordingly, the money laundering Count V should be dismissed for lack of jurisdiction.

**B.      WIRE FRAUD COUNTS FAIL TO STATE AN OFFENSE**

### 1. An Indictment Must Set Forth "A Scheme to Defraud" "For Obtaining Money or Property" As Opposed to Creative Rephrasing of Copyright Infringing Conduct to Match the Elements of Wire Fraud Offenses

The wire fraud statute applies to the transmission of communications by "wire" in the execution of a scheme "to defraud, or for obtaining money or property by means of false or fraudulent pretenses." 18 U.S.C.S. § 1343.  "Construing that disjunctive language as a unitary whole, this Court has held that 'the money-or-property requirement of the latter phrase' also limits the former."  *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) (quoting *McNally v. United States*, 483 U. S. 350, 358 (1987) (superseded by statute). The two clauses do not operate independently. The only fraud schemes implicated by the wire fraud statute are the ones that "deprive the victim of money or property." *Id.* (internal quotations omitted).[12]

As the Supreme Court recently held, "The wire fraud statute reaches only traditional

---

[11] *Subafilms, Ltd. v. Mgm-Pathe Communs. Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994) ("the United States copyright laws do not reach acts of infringement that take place entirely abroad"); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 1996 U.S. Dist. LEXIS 18653, at *19-20 (S.D.N.Y. Dec. 16, 1996) ("extraterritorial infringements are not violations of the Copyright Act").

[12] *See also Cleveland v. United States*, 531 U.S. 12, 26-27 (2000) (vacating a criminal conviction for violation of Section 1341 concluding "that § 1341 requires the object of the fraud to be "property" in the victim's hands and that a Louisiana video poker license in the State's hands is not "property" under § 1341); *United States v. Evans*, 844 F.2d 36 (2d Cir. 1988) (affirming dismissal of wire fraud counts in the indictment involving deceptive efforts to arrange sales of arms from various foreign countries to Iran, and, in furtherance of that scheme, to deceive the United States about the true destination of the arms because "a scheme to defraud must involve the deceptive obtaining of property", and that the right to control future arms sales is not a property right for this purpose).

property interests." *Ciminelli v. United States*, 143 S. Ct. 1121, 1128 (2023). It further reiterated that "the federal fraud statutes criminalize only schemes to deprive people of traditional property interests," *id*. at 1124, and that "the [g]overnment must prove not only that [] fraud defendants 'engaged in deception,' but also that money or property was 'an object of their   fraud,'" *id*. at 1126 (*quoting Kelly v. United States*, 140 S. Ct. 1565, 1571, 206 L. Ed. 2d 882 (2020).)

In *United States v. Dowling*, 473 U.S. 207, 216 (1985), in a related context, interpreting the National Stolen Property Act, 18 U.S.C. § 2314, the Supreme Court drew a clear distinction between taking property by fraud and engaging in copyright infringement. Obtaining property by fraud would "contemplate a physical identity between the items unlawfully obtained and those eventually transported, and hence some prior physical taking of the subject goods." *Id*.   "The copyright owner, however, holds no ordinary chattel. A copyright, like other intellectual property, comprises a series of carefully defined and carefully delimited interests to which the law affords correspondingly exact protections." *Id*. at 217.   The Supreme Court further explored property rights under Section 106 of the Copyright Act "to publish, copy, and distribute the author's work," and the rights of others to use copyrighted works, and concluded that the property rights of a copyright holder have a character distinct from the exclusive possessory interests in general. *Id*. Transporting copies of copyrighted materials does not equate to theft, conversion, or fraud. *Id*. "The infringer invades a statutorily defined province guaranteed to the copyright holder alone. But he does not assume physical control over the copyright; nor does he wholly deprive its owner of its use." *Id*.

In *Sekhar v. United States*, in a related context of the Hobbs Act, 18 U.S.C. § 1951, the Supreme Court also clarified that "obtaining property" "requires not only the deprivation but also the acquisition of property."  570 U.S. 729, 734 (2013) (internal quotation marks omitted).  The

requirement that property be "obtained" means that the property "must … be transferable—that is, capable of passing from one person to another." *Id*. That requires not only "that the victim 'part with' his property," but also that the perpetrator "'gain possession' of it." *Id*. (citations omitted). Thus, a mere "interference with rights" is distinct from obtaining property, and that a defendant must pursue something of value from the victim that can be "exercised, transferred, or sold" to come within the statute's ambit. 570 U.S. at 735-36.

Applying *Dowling*, in *United States v. LaMacchia*, 871 F. Supp. 535 (D. Mass. 1994) (superseded by statute on other grounds), the Massachusetts district court held that the government could not prosecute an infringement under the mail and wire fraud statutes because the "'bundle of rights' conferred by copyright is unique and distinguishable from the indisputably broad range of property interests protected by the mail and wire fraud statutes." *Id*. at 543. *See also Bryant v. Mattel*, No. CV 04-9049 DOC (RNBx), 2010 U.S. Dist. LEXIS 103851, at *25 (C.D. Cal. Aug. 2, 2010) ("since copyright infringement cannot be effectuated through fraud, c.f 18 U.S.C. § 2319, a scheme to infringe copyrights is not a scheme or artifice proscribed by the mail fraud or wire fraud statutes."); *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp*., 98 F. Supp. 2d 480, 491 (S.D.N.Y. 2000) (collecting cases dismissing wire fraud claims based on copyright infringement); *Damiano v. Sony Music Entm't*, 975 F. Supp. 623, 632 (D.N.J. 1996) ("Plaintiff's RICO claims must fail because they are actually nothing more than copyright infringement claims presented as mail fraud"); *Naso v. Park*, 850 F. Supp. 264, 274 (S.D.N.Y. 1994) (plaintiffs who alleged patent infringement and false designation of origin did not state a scheme to defraud); *United States v. Gallant*, 570 F. Supp. 303, 309 (S.D.N.Y. 1983) (overruled on other grounds),

> The government attempts to bootstrap a violation of the copyright laws into a violation of the mail fraud statute. The adoption of such an extension of the *Brewer* rule urged by the government could turn any crime into a mail fraud violation. If Congress had intended that any crime, like a copyright violation, could supply the

"fraud" element of a mail fraud violation, then it would not have drafted the mail fraud statute, 18 U.S.C. §§ 1341 and 1343, to forbid the use of mails and wires in furtherance of "any scheme or artifice to defraud." Instead, it would have forbidden the use of mails and wires in the furtherance of "any crime." Congress did not do so, and the Second Circuit has not so expanded the ambit of the law.

Thus, a copyright violation involving the use of wires does not automatically transform in a wire fraud act offense. To charge a defendant with wire fraud an indictment must independently set forth facts showing "a scheme to defraud" victims for "obtaining money of property", which are not present in the Indictment and supporting documents.

### 2. Counts II and III Fail to State "A Scheme to Defraud" "For Obtaining Money or Property"

Counts II and III[13] generally charge Defendants with conspiring and devising a scheme "to defraud authors and publishers, and to obtain money and property from them." Indictment ¶¶ 2, 3. Even accepting as true all the allegations in the Indictment and supporting documents, the charges cannot be maintained.

First, no scheme to defraud is pled. The indictment presents certain allegations of a scheme to infringe copyrights (to interfere with the exercise of intangible property rights), but not a scheme to obtain money or property by means of deception within the meaning of 18 U.S.C.S. § 1343.

Second, no false pretenses are stated in Counts II and III.

Finally, there is no "money or property" to be obtained within the meaning of 18 U.S.C.S. § 1343 under applicable law. Z-Library did not take away the originals of the books that could be considered "property" for purposes of the wire fraud. *See Dowling* discussed above (requiring a physical identity of the items and physically taking away and gaining possession of property, not

---

[13] The Indictment pleads Wire Fraud Counts III and IV together in one combined section that includes paragraphs 3 and 4. It appears that Count III correlates to paragraph 3 of the Indictment, and Count IV – to paragraph 4. Accordingly, Defendants argue each count here as such.

copying it). Nor does this case involve any deception in obtaining legal rights (copyrights): for example, in a case where an assignee of copyrights fraudulently induces a copyright holder - assignor to legally transfer his copyrights to vest in a new owner, in which case the copyright holder is deprived of his property rights.[14]  The allegations here are for infringement but not for a deprivation of a right.

An abstract expression in the Complaint, ¶5, that "Z – Library has robbed the individuals of the fruits of their labor" (assuming meaning the author's royalties for distribution) still misses the mark.  Z – Library was allegedly a platform, through which its users uploaded and downloaded the books, similar to a student room in a university where students could exchange their books.  Z – Library did not obtain authors' royalties in exchange for distributing the books.  Uploads and downloads were free of charge.  The royalties did not exist and could not have been obtained from the authors as "money or property."  Nor did the authors offer the technical capabilities of Z – Library's search engine and file conversion functions, for which use Z – Library suggested "a donation of $1 or more." Those "donations" cannot be creatively reclassified as "money or property" to fit the definition of a wire fraud offense: they were not obtained from authors by means of fraudulent pretenses.

### 3. Count IV Fails to State "A Scheme to Defraud" "For Obtaining Money or Property"

Count IV of Wire Fraud, Indictment ¶4, charges Defendants with wire fraud based on two specific emails.  However, the elements of "a scheme to defraud" for obtaining "money or property" are still missing.  There is "a fine line between schemes that do no more than cause their

---

[14] There is also no allegation that copyright owners had any copyrights registered abroad where the alleged activity took place or that there were any attempts to get the copyright owners to legally transfer their interests in U.S. registered copyrights.

victims to enter into transactions they would otherwise avoid -- which do not violate the mail or wire fraud statutes -- and schemes that depend for their completion on a misrepresentation of an essential element of the bargain -- which do violate the mail and wire fraud statutes." *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007). The conduct targeted by a federal fraud statute should be "at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature…". *Dubin v. United States*, 216 L. Ed. 2d 136, 144 (June 8, 2023) (overturning the judgment for aggravated identity theft under 18 U.S.C.S. § 1028A(a)(1) added to Medicate fraud charges because "the crux of petitioner's overbilling was inflating the value of services actually provided, while the patient's means of identification was an ancillary part of the Medicaid billing process."). *Id*.

Here, the emails were not "at the crux of what makes the underlying offense criminal." *Id.* The alleged Z-Library representatives were not making false statements so they could obtain original copyrighted books from the owners or to legally assign intangible copyright to Z - Library. Based on the allegations in the Extradition Request, Exhibit 1 at 3-4, the copyrighted materials referenced in the emails have been previously uploaded to a Z-Library website, when "on July 4, 2021, and July 21, 2021, copyright holders emailed Z-Library and informed them that their works were being made available for free in violation of their copyrights, and a Z-Library representative, working with the Defendants, told each of them that the works were removed, even though the works were still available on the website." The books were allegedly available through the website irrespective of the emails, there was no property that could have been obtained by means of wires, *i.e.*, emails. The emails were simply a *post-factum* correspondence incidental to a copyright infringement issue. The Wire Fraud Act does not criminalize the use of wires in the furtherance

18

of a copyright infringement scheme, it criminalizes the use of wires in the furtherance of a scheme to defraud for obtaining money and property.

Accordingly, the wire fraud counts should be dismissed because the elements of the offenses "to defraud" to obtain "money or property" are not stated and cannot be stated as a matter of law under the circumstances of this case.

## III.   THE INDICTMENT FAILS TO STATE OFFENSES WITH SPECIFICITY

"[T]he language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Russell v. United States*, 369 U.S. 749, 765 (1962) (internal citation omitted). "The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (internal quotations omitted).  "These concerns are heightened when the statute in question uses generic terms to categorize a variety of different activities each proscribed in the statute." *United States v. Awan*, 459 F. Supp. 2d 167, 175 (E.D.N.Y. 2006) (dismissing a charge of a conspiracy to provide "material support or resources" to be used in a conspiracy to murder, kidnap, or maim a person outside the United States because the indictment did not specify the kind of "material support").[15]

---

[15] *See also United States v. Solovey*, No. 04-CR-244S, 2005 U.S. Dist. LEXIS 42990, at *1 (W.D.N.Y. May 31, 2005) (dismissing an indictment for failure to identify victims); *United States v. Thompson*, 141 F. Supp. 3d 188, 202 (E.D.N.Y. 2015) (dismissing a portion of an indictment for not specifying the charge of "any sexual activity for which a person could be charged with a criminal offense").

## A.    THE ELEMENTS OF CRIMINAL COPYRIGHT INFRINGEMENT ARE NOT SUFFICIENTLY PLED

In Count I – Criminal Copyright Infringement the Indictment uses the generic statutory language for a legal conclusion that Defendants "infringe[d] copyright." Indictment, ¶1.  In civil copyright cases a "properly plead copyright infringement claim must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992).

The Indictment fails to identify any book titles that Defendants had allegedly distributed in this district without the permission of a copyright holder.  Nor does the Indictment identify any valid copyrights in existence at the times alleged in the Indictment. The dates or circumstances of such reproduction and distribution are also missing.  It is also unclear what specific acts Defendants undertook "to infringe copyright."

## B.    THE ELEMENTS OF COUNT II - IV - CONSPIRACY TO COMMIT WIRE FRAUD AND WIRE FRAUD ARE NOT SUFFICIENTLY PLED

"When the government proceeds under the conspiracy-to-defraud clause, in cases that could as easily have been brought under the 'offense' clause, the courts must be alert to subtle 'attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions." *United States v. Rosenblatt*, 554 F.2d 36, 42 (2d Cir. 1977) (finding that "the phrase 'conspiracy to defraud the United States" is too broad to state the offense) (internal citations omitted).  "In light of the current broad range of conduct covered by the federal fraud statutes, it is critical that courts vigilantly enforce the Fifth Amendment requirement that a person be tried only on the charges contained in the indictment returned by the grand jury." *United States v. Mollica*, 849 F.2d 723,

729 (2d Cir. 1988) (internal citation omitted).

Here, Counts II and III, Indictment, ¶¶2-3, broadly accuse Defendants of conspiring and devising a scheme "to defraud authors and publishers, and to obtain money and property from them." Indictment, ¶2.  It fails to identify any victim that Defendants allegedly conspired to defraud, the property that was the object to be obtained, the manner of defrauding and what the agreement / the scheme to defraud (as opposed to any agreement / scheme to infringe copyright) was. The Indictment further uses generic statutory terms of "materially false and fraudulent pretenses, representations and promises" but fails to identify what those false pretenses were, when they were made, to whom, and what "money or property" was sought to be obtained.  Count IV of Wire Fraud, Indictment, ¶4, appears to be more specific as to the dates and the alleged fraudulent pretenses but it still fails to specify the remaining elements of the offense.

### C.   THE ELEMENTS OF MONEY LAUNDERING CONSPIRACY ARE NOT SUFFICIENTLY PLED

The Indictment does not specify any financial transactions with the proceeds from copyright infringement and wire fraud. Nor does the Indictment identify what funds in this case were the proceeds of criminal copyright and wire fraud activities.

"Our case law consistently distinguishes between the crime that produces proceeds and the subsequent crime of laundering those proceeds …." *United States v. McCarthy*, 271 F.3d 387, 395 (2d Cir. 2001).  If the Indictment considers the Amazon cards donated to Z – Library to be "the proceeds of some form of unlawful activity," there is still no allegation that subsequent transactions with the Amazon cards (the proceeds) took place in whole or in part in the United States.  As explained earlier, Amazon operated in Russia independently and operated local retail warehouses that fulfilled purchase orders specific to geographical locations.

In addition, the purchases of "beauty and apparel products" amounting to over thirteen

thousand dollars in three years and mailed to defendants' address in St. Petersburg, Russia, Compl. ¶26, also do not qualify as transactions "with the intent to promote carrying on of specified unlawful activity," *i.e.*, copyright or wire fraud under 18 U.S.C. §§ 1956(h).

Thus, the lack of factual particularity warrants the dismissal of the Indictment.

## IV.   THE INDICTMENT VIOLATES DUE PROCESS BECAUSE DEFENDANTS' CONDUCT LACKS SUFFICIENT NEXUS WITH THE UNITED STATES

The Fifth Amendment provides that "no person" shall be "deprived of life, liberty, or property, without due process of law."  *See* U.S. CONST. AMEND. V.   The Due Process clause guarantees every criminal defendant "fundamental fairness" that is "essential to the very concept of justice." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 860 (1982).  In order to prosecute a foreign citizen for conduct occurring abroad, due process requires that the government show "a sufficient nexus between the defendant and the United States, so that such application [of criminal law] would not be arbitrary or fundamentally unfair." *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011) (internal quotation marks and citation omitted). "For non-citizens acting entirely abroad, a jurisdictional nexus exists when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests."  *Id.*, at 118.

In *Al Kassar*, this Circuit found a sufficient nexus existed because the alleged conspiracy involved selling firearms to a terrorist organization "with the understanding that [the firearms] would be used to kill Americans and destroy U.S. property" indicating that the aim "was to harm U.S. citizens and interests and to threaten the security of the United States." *Id*. Similarly in *United States v. Yousef*, 327 F.3d 56, 112 (2d Cir. 2003), "[t]he defendants conspired to attack a dozen United States-flag aircraft in an effort to inflict injury on this country and its people and influence American foreign policy, and their attack on the Philippine Airlines flight was a 'test-run' in furtherance of this conspiracy."

However, this case is fundamentally different from the ones involving foreigners plotting to harm U.S. interests and people. The materials were allegedly available through Z-Library's websites for users to upload and to download free of charge. No *aim* to harm U.S. persons is alleged in the Indictment, as Z-Library never specifically targeted U.S. publishers or American authors, users themselves searched for books they needed, themselves uploaded and downloaded them. There is no allegation that Z-Library itself picked and chose U.S. publications or American authors. Imputing Defendants with an *aim* to harm U.S. interests for purposes of establishing jurisdiction would be a pure legal fiction in this case.

The Complaint alleges that

> The copyright crimes perpetrated … described herein have had devastating effects on all manner of victims, including authors, publishers, authors' estates (including ones which donate their proceeds to charity), independent bookstores, large commercial bookstores, and legitimate ebooks sellers.

Compl. ¶ 5.

But "[j]urisdictional nexus is determined by the *aims* of the conspiracy, not by its effects." *United States v. Al Kassar*, 660 F.3d 108, 119 (2d Cir. 2011) (emphasis added). *See also Waldman v. PLO*, 835 F.3d 317, 343-44 (2d Cir. 2016) (finding no specific jurisdiction in a civil case "because the terror attacks in Israel at issue here were not expressly aimed at the United States and because the deaths and injuries suffered by the American plaintiffs in these attacks were 'random [and] fortuitous' and because lobbying activities regarding American policy toward Israel are insufficiently 'suit-related conduct.'").

The analysis in *United States v. Sidorenko*, 102 F. Supp. 3d 1124 (N.D. Cal. 2015) is instructive on the difference between the economic effects and the required *aim* of the offense:

> the government contends that the domestic nexus is satisfied by the United States' financial interest, because it pays millions of dollars annually to ICAO, and by the United States' security interest … The government cites to literally zero authority

in support of this contention. Moreover, as with the government's position about the extraterritorial reach of the relevant statutes, its argument that any financial or security interest supports a domestic nexus proves too much. If everything that had an impact on national security gave the United States the right to drag foreign individuals into court in this country, the minimum contacts requirement would be meaningless.

*Id.,* at 1133.

Here, the economic effects of the alleged conduct are insufficient to establish the required aim to cause harm to the United States' persons or interest.[16]

Because the Indictment fails to establish a sufficient nexus between Defendants and the United States, the Fifth Amendment bars their prosecution, and the Indictment should be dismissed.

---

[16] Moreover, any alleged harm to authors is quite speculative. As one of such authors explains in his article:

> While it's true that authors deserve to reap the benefits of their work, that isn't being undermined by sources like Z-Library… Holly Witteman, a health informatics researcher and professor at the Université Laval in Quebec City, Canada, said in a tweet, "That $35 that scientific journals charge you to read a paper goes 100 percent to the publisher, 0 percent to the authors. If you just email us to ask for our papers, we are allowed to send them to you for free, and we will be genuinely delighted to do so." If authors are happy to disseminate their papers anyway, it doesn't seem like … scholarly articles that Z-Library provided for free actually hurt the authors…

Oliver Niehaus, "*Seizure of Z-Library Domain Detrimental to Student Access to Educational Materials*," THE OBERLIN REVIEW, November 11, 2022, available at https://oberlinreview.org/28366/opinions/seizure-of-z-library-domain-detrimental-to-student-accessibility-of-education-materials/.

As another author explains in her article, arguing that the existence of Z-Library was beneficial for literacy among economically disadvantaged individuals and availability of educational materials in poor communities, and that economic benefits to general public outweighed any alleged detriment to the publishers – "Not everyone has access to a library, and not every library in the world is well-stocked." *See* Alison Rumfitt, "*In defence of Z-Library and book piracy*", DAZED, November 25, 2022, available at https://www.dazeddigital.com/life-culture/article/57545/1/in-defence-of-piracy-and-z-library-shut-down-alison-rumfitt-writer-author.

## V.      THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF VENUE

Article III of the Constitution requires that "the Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." Art. III, § 2, Cl. 3. The Sixth Amendment also requires that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." "*Locus delicti* [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998). *See also United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) ("In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."). Rule 18 of the Federal Rules of Criminal Procedure requires that absent a statute or law to the contrary, the "Government must prosecute an offense in the district in which the offense was committed."

In this case no facts were alleged in the Indictment that Defendants' own conduct took place in this district. Accordingly, the Indictment incorrectly situates venue in the Eastern District of New York and should be dismissed for lack of venue.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Indictment against them be dismissed.

Dated: July 12, 2023                           Respectfully submitted,


Maria Temkin, Esq.                             Anna V. Brown, Esq
*Attorney for Defendant Valeriia Ermakova*     *Attorney for Defendant Anton Napolsky*
*Admitted Pro Hac Vice*                        *Admitted Pro Hac Vice*

TEMKIN & ASSOCIATES, LLC                       BROWN LEGAL CONSULTING, LLC
1700 Market Street, Suite 1005                 10 Rittenhouse Rd.

Philadelphia, PA 19103
Telephone: (215) 939-4181
Email: maria@temkinlegal.com

Frenchtown, NJ 08825
Telephone: (856) 357-4651
Email: anna@brownlegalconsulting.com

cc:    Clerk of the Court (By ECF)
       Counsel of Record (By ECF)