

Poder Judicial de la Nación



## CÉDULA DE NOTIFICACIÓN

**22000062156461**



TRIBUNAL: JUZGADO FEDERAL DE CORDOBA 1, SITO EN AV CONCEPCIÓN ARENAL Y W. PAUNERO 690 - CÓRDOBA - PISO 3°/4°/1°/2° (SEC ELECT)

FECHA DE RECEPCIÓN EN NOTIFICACIONES:

| | |
|---|---|
| Sr.: | DR. MAXIMILIANO HAIRABEDIAN |
| Domicilio: | 20203458941 |
| Tipo de Domicilio: | Electrónico |
| Carácter: | Sin Asignación |
| Observaciones Especiales: | Sin Asignación |

| N° ORDEN | EXPTE. N° | ZONA | FUERO | JUZGADO | PENAL SECRET. | S COPIAS | N PERSONAL | N OBSERV. |
|---|---|---|---|---|---|---|---|---|
| | 37089/2022 | | | | | | | |

Notifico a Ud. la resolución dictada en los autos:

REQUERIDO: NAPOLSKIY, ANTON Y OTRO s/EXTRADICION

Según copia que se acompaña.

QUEDA UD DEBIDAMENTE NOTIFICADO

Córdoba,      de diciembre de 2022.

EXHIBIT 1



Poder Judicial de la Nación

Fdo.:  FACUNDO TRONCOSO, SECRETARIO

*En …….…….…...de…….…….…….…de 2022, siendo horas …….…….….*

*Me constituí en el domicilio sito en.…….…….…….…….…….…….…   …….…….….*

*.…….…….…….…….…….…….…….…….…….…….…….…….…….…..   …….…….…*

*Y requerí la presencia de.…….…….…….…….…….…….…….…….…  …….…….…*

*y no encontrándose …….…….…….…….….*

*fui atendido por: …….…….…….…….…….…….…….…….…….…….…….…….….*

*.…….…….…….…….…….…….…….…….…….…….…….…….…….…….…….…*

*D.N.I; L.E; L.C; Nº.…….…….…….…….…….…….…….…….…….…….…….…..*

*Ni respondiendo persona alguna a mis llamados, requerí la presencia de un testigo quien  manifiesta ser:*

*…….…….…….…….…….…….…….…….…….…….…….…….…….…….….*

*.…….…….…….…….…….…….…….…….…….…….…….…….…….…….…*

*Acto seguido , e impuesto del motivo de mi presencia , le hice entrega de …….…….….*

*procedí a fijar en el acceso de la vivienda una copia de la presente*

*FIRMADO ANTE MI PARA CONSTANCIA.-*



**U.S. Department of Justice**

---

VAA:CJS:DSS:JAB:anz                                    Criminal Division

*Office of International Affairs*                    *Washington, D.C.  20530*

**To:**          The Central Authority of Argentina

**From:**        The Central Authority of the United States

**Subject:**     Request for Assistance in the Investigation and Prosecution of Investigation
                 of Z-Library

**Reference:**   CRM-182-81763 (Please use when responding)

**Date:**        December 9, 2022

<u>**Summary**</u>

The Central Authority of the United States of America requests the assistance of the

Central Authority of Argentina pursuant to the 1993 United States-Argentina Treaty on Mutual

Assistance in Criminal Matters (the "Treaty").  The United States Attorney's Office for the

Eastern District of New York (EDNY), the Computer Crime and Intellectual Property Section of

the U.S. Department of Justice, Criminal Division, and the Federal Bureau of Investigation

("FBI") (together, the "U.S. authorities") are investigating violations of U.S. criminal law

including criminal copyright infringement, wire fraud, wire fraud conspiracy, and money

laundering conspiracy perpetrated by the owners and administrators of Z-Library, an online

website offering millions of pirated eBooks for free to users in violation of U.S. copyright law.

The U.S. investigation has revealed that, from about January 2018 to November 2022, Anton NAPOLSKY (aka Anton NAPOLSKIY) and Valeriia ERMAKOVA (collectively, "the Defendants") engaged in a scheme to infringe the copyrights of published books for purposes of commercial advantage and private financial gain.  Operating out of Russia, the Defendants operated Z-Library, a digital piracy website that allowed users to fraudulently upload and download for free the intellectual property of thousands of artists, including artists located within the Eastern District of New York.  On October 22, 2022, the Defendants flew into Cordoba, Argentina.  On November 3, 2022, Argentine authorities arrested the Defendants in the vicinity of Rio Gallegos, Argentina pursuant to a U.S. request.  Argentine authorities transferred the Defendants to Cordoba, Argentina where they are currently detained pending extradition.

U.S. authorities seek access to any items seized from the fugitives pursuant to their arrest, as well as copies of police records produced pursuant to their arrest and detention.

## The Facts

### A.    Overview

U.S. authorities are investigating Z-Library, a website that bills itself as "the world's largest library" and claims to offer millions of ebooks for download.  Z-Library has been active since approximately 2009 and offers ebook files in a variety of file formats and encourages users to upload and download titles.  Many of the ebooks offered by Z-Library are protected intellectual property for which authors hold copyrights and publishers hold exclusive distribution rights, and which Z-Library has no right or license to distribute.  Thus, Z-Library is allowing users to download copyrighted books for free in violation of U.S. copyright law.  The copyright crimes perpetrated by the Defendants have had devastating effects on all manner of victims,

2

including authors, publishers, authors' estates (including ones which donate their proceeds to charity), independent bookstores, large commercial bookstores, and legitimate ebooks sellers.

Z-Library used Amazon Web Services (AWS) Simple Email Service which was connected to an AWS account registered to NAPOLSKY. NAPOLSKY used the AWS account to send tens of thousands of messages from email addresses at the domain associated with Z-Library's customer service function to individual email addresses and domains of educational institutions, that contained references to the Z-Library website. NAPOLSKY also used the AWS account to send emails for account creation purposes and password resets, as well as to request donations. For example, a message sent on November 27, 2021, had a subject line that included the phrase: "Z-Library (aka b-ok and 1lib) fundraising campaign. Last call (Visa cards are accepted now)." Other messages appeared to reflect automated alerts requested by users about the availability of books in Z-Library's database. For example, a message dated November 16, 2021, included the subject line: "Library ZAlerts: new books found on 'Healing.'" NAPOLSKY also used the services of Google Ads to advertise Z-Library. Google Ads is an online advertising platform developed by Google, where advertisers bid to display brief advertisements, service offerings, product listings, or videos to web users. It can place ads both in the results of search engines like Google Search and on non-search websites, mobile apps, and video.

Z-Library, at the direction of the Defendants, sent emails that contained fraudulent pretenses to authors and copyright holders of books. The Z-Library website contained a webpage that stated, in sum and substance, that if authors or copyright holders believed that their works were being shared in violation of their copyright, that they should provide notice and Z-Library would take their work off of the website. However, on July 4, 2021, and July 21, 2021, copyright holders emailed Z-Library and informed them that their works were being made

3

available for free in violation of their copyrights, and a Z-Library representative, working with the Defendants, told each of them that the works were removed, even though the works were still available on the website.  The copyright holders followed up making Z-library aware that the works were still available, but nothing changed.

The Defendants used the proceeds of the fraud to operate the Z-Library website, evade law enforcement, and for their own personal use.  Z-Library's website gave users the ability to donate to the website in order to obtain increased downloading capabilities on the website.  Users donated thousands of dollars via numerous electronic means which the Z-Library operators used to maintain the website, including by purchasing means to host servers in myriad locations.  The Defendants personally accessed the Z-Library funds that were donated through many means including Amazon and cryptocurrency exchanges.

The Defendants controlled a series of interrelated Z-Library email addresses including an email address to which the Z-Library website requested that donations be sent.  NAPOLSKY used a personal email address to order at least 21 items on Amazon.com that were paid for using Amazon gift cards that originated as "donations" by users to Z-Library.  Since March 20, 2019, ERMAKOVA, using gift cards donated to Z-library by users, used her Amazon customer account to place more than 110 orders totaling over US$13,628.32, most of them for beauty and apparel products.  For example, in about January 2021, an Amazon gift card donation was made to Z-Library.

Z-Library was a lucrative endeavor.  In an email dated May 18, 2020, NAPOLSKY used Z-Library email address feedback.bookos@gmail.com to apply for services with a payment services provider and claimed Z-Library's monthly income averaged between US$65,000 - $70,000 monthly, but twice annually (in March and September) it grew to between US$150,000

4

- US$200,000 monthly with all of the profit coming from donations.  On May 3, 2021,
ERMAKOVA sent a similar email using Z-Library email address zlibsupp@gmail.com to apply
for services with a payment services provider and claimed their monthly income averaged
US$50,000 but increased to US$150,000 in March and September because of fundraising
campaigns.  On May 30, 2022, ERMAKOVA received an email to her personal email address
from confluence@zlibrary.atlassian.net with the subject line "[Confluence] zlib > All Servers"
that identified the Z-Library dedicated and virtual private servers, the associated IP addresses,
and server hosting company information at that time.

On November 16, 2022, a federal grand jury sitting in the Eastern District of New York
returned and filed an Indictment against the Defendants charging them with Criminal Copyright
Infringement because they infringed on copyrights for the purpose of commercial and private
financial gain by using Z-Library to reproduce and distribute e-books, which were protected
intellectual property that authors held copyrights and publishers held exclusive distribution
rights, and which Z-Library had no right or license to distribute.  Additionally, the Defendants
are charged with Conspiracy to Commit Wire Fraud because they agreed to engage in an illegal
activity whereby they used wire transmissions, including emails, internet websites, and other
electronic wires, to further their scheme to defraud authors and publishers; and substantive Wire
Fraud for causing two specific emails with fraudulent information to be sent from a Z-Library
account to copyright owners in July 2021  Lastly, the Defendants are charged with Conspiracy
to Commit Money Laundering because they agreed to engage in illegal conduct which was to
engage in financial transactions, including deposits, withdrawals, and transfers of funds and
monetary instruments involving the proceeds of the criminal copyright scheme.

## The Offenses

**Title 17, United States Code, Section 506(a)(l)(A).          Criminal Infringement**

(a)    Criminal Infringement.—

(1) In general.—Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed—

(A) for purposes of commercial advantage or private financial gain;

(B) by the reproduction or distribution, including by electronic means, during any 180–day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of more than $1,000; or

(C) by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution.

\* \* \*

(3) Definition.—In this subsection, the term "work being prepared for commercial distribution" means—

(A) a computer program, a musical work, a motion picture or other audiovisual work, or a sound recording, if, at the time of unauthorized distribution—

(i)      the copyright owner has a reasonable expectation of commercial distribution; and

(ii)     the copies or phonorecords of the work have not been commercially distributed

\* \* \*

**Title 18, United States Code, Section 2319.          Criminal Infringement of a copyright**

(a) Any person who violates section 506(a) (relating to criminal offenses) of title 17 shall be punished as provided in subsections (b), (c), and (d) and such penalties shall be in addition to any other provisions of title 17 or any other law.

(b) Any person who commits an offense under section 506(a)(1)(A) of title 17—

(1) shall be imprisoned not more than 5 years, or fined in the amount set forth in this title, or both, if the offense consists of the reproduction or distribution, including by electronic means, during any 180-day period, of at least 10 copies or phonorecords, of 1 or more copyrighted works, which have a total retail value of more than $2,500;

(2) shall be imprisoned not more than 10 years, or fined in the amount set forth in this

title, or both, if the offense is a felony and is a second or subsequent offense under subsection (a); and

(3) shall be imprisoned not more than 1 year, or fined in the amount set forth in this title, or both, in any other case.

\* \* \*

**Title 18, United States Code, Section 1956 (h).**                **Money Laundering Conspiracy**

(a)

(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(A)

(i) with the intent to promote the carrying on of specified unlawful activity; or

\* \* \*

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

\* \* \*

(b) Penalties

\* \* \*

(2) Jurisdiction over foreign persons.—For purposes of adjudicating an action filed or enforcing a penalty ordered under this section, the district courts shall have jurisdiction over any foreign person, including any financial institution authorized under the laws of a foreign country, against whom the action is brought, if service of process upon the foreign person is made under the Federal Rules of Civil Procedure or the laws of the country in which the foreign person is found, and—

(A) the foreign person commits an offense under subsection (a) involving a financial transaction that occurs in whole or in part in the United States;

(B) the foreign person converts, to his or her own use, property in which the United States has an ownership interest by virtue of the entry of an order of forfeiture by a court of the United States; or

\* \* \*

(c) As used in this section—

(1) the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law

(2) the term "conducts" includes initiating, concluding, or participating in initiating, or concluding a transaction;

(3) the term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected;

(4) the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree;

(5) the term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery

\* \* \*

(7) the term "specified unlawful activity" means—

(A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31;

\* \* \*

8

(9) the term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

\* \* \*

(h) Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

\* \* \*

**Title 18, United States Code, Section 1343.**                **Wire Fraud**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . .  communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme . . . shall be . . . imprisoned not more than 20 years . . .

**Title 18, United States Code, Section 1349.**                **Conspiracy to Commit Wire Fraud**

Any person who attempts or conspires to commit any offense under this chapter [including access device fraud and wire fraud] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## **Subjects of the Investigation**

1. **Anton Napolsky**, aka Anton Napolskiy, aka John Bookos

   Date of Birth:                    18 May 1989
   Place of Birth:                   Russia
   Citizenship:                      Russian
   Address:                          Tipanova 29-405, Saint-Petersburg, 453300 Russia

2. **Valeriia Ermakova**, aka Valeria Bookos

   Date of Birth:                    22 August 1995
   Place of Birth:                   Russia
   Citizenship:                      Russia
   Address:                          Fontanka 24, Saint-Petersburg, 191028 Russia

9

**Assistance Needed**

Please ask the Argentine authority designated to execute this request to provide the assistance described below.

I.       Searches and Seizure of Evidence Incident to Arrest

Please provide FBI Legal Attaché Ricardo Hernandez with copies of any and all documents seized from the Defendants, Anton Napolsky and Valeriia Ermakova, in connection with their arrest. Additionally, please permit FBI Legal Attaché Ricardo Hernandez to image any and all computers, cellphones, and other electronic devices seized from the fugitives at the time of their arrest.

II.      Interviews and Testimony

Please identify the law enforcement officers and prosecutors who seized or took custody of evidence, interviewed witnesses, and/or interviewed persons associated with the Defendants, and authorize United States investigators and prosecutors to speak directly to these individuals about the arrests and the evidence recovered. The United States may invite the witnesses to travel to the Eastern District of New York, at the expense of the U.S. government, to testify at hearings, and/or trial, or to give formal deposition testimony at some future date.

III.     Police Reports and Records

Please provide any Argentine police records created pursuant to the investigation and arrest of the Defendants

10

## **Procedures to be Followed**

Please ask the Argentine authority designated to execute this request to follow the procedures set forth below.

A.  <u>Searches and Seizure of Evidence Incident to Arrest</u>

With respect to the originals of all documents seized by Argentine authorities, we request that such items be transmitted to the United States as soon as practicable through the U.S. law enforcement representative identified below.

B.  <u>Police Reports and Records</u>

With respect to police reports and records which were created pursuant to the investigation and arrest of the fugitives please have the appropriate custodian(s) of these documents complete the attached Attestation Regarding the Authenticity of Official Records (Attachment A).

## **Contact Information**

FBI Assistant Legal Attaché Ricardo Hernandez, who has responsibility for coordination with the Argentine authorities, and who has already been in contact with Argentine authorities regarding this matter, can be reached at +5411-5111-4601 or at email address rrhernandez@fbi.gov.

## **Conclusion**

We extend the assurance of our highest consideration and thank you for your attention to this request for assistance in connection with the investigation of Z-Library.

<u>December 9, 2022</u>
Date

_____
Christopher J. Smith
Acting Deputy Director
Office of International Affairs

11

**ATTACHMENT A**

**ATTESTATION OF AUTHENTICITY OF OFFICIAL RECORDS**

      I, _____, knowing that any false testimony on my part subjects me to
                 (name)

to criminal sanction, ATTEST:

      1. That I hold the position of _____, at
                                           (position)

_____;
(name of the institution and Government to which it belongs)

      2. That as part of the functions of my position I am authorized by the laws of

_____ to attest that the documents attached hereto and which I describe
(State to which it belongs)

below are authentic copies of the original official documents which are filed at

_____,
(name of the respective official entity and government to which it belongs)

which is a governmental agency or entity of the government of Argentina.

    Description of the Documents:

_____
      (Signature)

_____
      (Title)

_____
      (Date)



**Departamento de Justicia de los Estados Unidos**

División Penal

VAA:CJS:DSS:JAB:anz

*Oficina de Asuntos Internacionales*          *Washington, D.C. 20530*

**A:**          La Autoridad Central de Argentina

**De:**         La Autoridad Central de los Estados Unidos

**Asunto:**     Solicitud de asistencia en la investigación y el procesamiento de la investigación [sic] de Z-Library

**Referencia:** CRM-182-81763 (úsese al responder)

**Fecha:**      9 de diciembre de 2022

<u>**Resumen**</u>

La Autoridad Central de los Estados Unidos de América solicita la asistencia de la Autoridad Central de Argentina en virtud del Tratado de 1993 entre los Estados Unidos y Argentina sobre Asistencia Mutua en Materia Penal (el "Tratado"). La Fiscalía de los Estados Unidos para el Distrito Este de Nueva York (EDNY, por sus siglas en inglés), la Sección de Delitos Informáticos y Propiedad Intelectual del Departamento de Justicia de los Estados Unidos, División Penal, y la Oficina Federal de Investigación ("FBI") (en conjunto, las "autoridades estadounidenses") están investigando las violaciones de la ley estadounidense penal, incluida la infracción penal de derechos de autor, fraude electrónico, conspiración para cometer fraude electrónico y conspiración para lavar dinero perpetradas por los propietarios y administradores de Z-Library, un sitio web en línea que ofrece millones de libros electrónicos pirateados de forma gratuita a los usuarios, en violación de la ley estadounidense de derechos de autor.

La investigación de los Estados Unidos ha revelado que, desde aproximadamente enero de 2018 hasta noviembre de 2022, Anton NAPOLSKY (alias Anton NAPOLSKIY) y Valeriia

ERMAKOVA (colectivamente, "los Acusados") participaron en un ardid para infringir los derechos de autor de libros publicados con fines de ventaja comercial y ganancia financiera privada. Operando desde Rusia, los acusados gestionaban Z-Library, un sitio web de piratería digital que permitía a los usuarios cargar y descargar de forma fraudulenta y gratuita la propiedad intelectual de miles de artistas, incluidos artistas ubicados en el Distrito Este de Nueva York. El 22 de octubre de 2022, los acusados volaron a Córdoba, Argentina. El 3 de noviembre de 2022, las autoridades argentinas detuvieron a los Acusados en las cercanías de Río Gallegos, Argentina, de conformidad con una solicitud de los Estados Unidos. Las autoridades argentinas trasladaron a los acusados a Córdoba, Argentina, donde se encuentran detenidos a la espera de su extradición.

Las autoridades estadounidenses solicitan acceso a todos los artículos incautados a los fugitivos tras su detención, así como copias de los registros policiales producidos tras su arresto y detención.

## Los hechos

A.    **Descripción general**

Las autoridades estadounidenses están investigando a Z-Library, un sitio web que se autodenomina "la mayor biblioteca del mundo" y afirma ofrecer millones de libros electrónicos para descargar. Z-Library ha estado activa aproximadamente desde 2009, ofrece archivos de libros electrónicos en diversos formatos y anima a los usuarios a cargar y descargar títulos. Muchos de los libros electrónicos ofrecidos por Z-Library son propiedad intelectual protegida sobre la que los autores tienen derechos de autor y las editoriales derechos de distribución exclusivos, y que Z-Library no tiene derecho ni licencia para distribuir. Por lo tanto, Z-Library está permitiendo a los usuarios descargar libros protegidos por derechos de autor de forma gratuita en violación de la ley estadounidense de derechos de autor. Los delitos contra los derechos de autor perpetrados por los acusados han tenido efectos devastadores en todo tipo de víctimas, incluidos autores, editores,

herencias de autores (incluidas las que donan sus ganancias a obras benéficas), librerías

independientes, grandes librerías comerciales y vendedores legítimos de libros electrónicos.

Z-Library utilizó Amazon Web Services (AWS) Simple Email Service que estaba

conectado a una cuenta de AWS registrada a nombre de NAPOLSKY. NAPOLSKY utilizó la

cuenta de AWS para enviar decenas de miles de mensajes desde direcciones de correo electrónico

del dominio asociado a la función de atención al cliente de Z-Library a direcciones de correo

electrónico individuales y dominios de instituciones educativas, que contenían referencias al sitio

web de Z-Library. NAPOLSKY también utilizó la cuenta de AWS para enviar mensajes de correo

electrónico con fines de creación de cuentas y restablecimiento de contraseñas, así como para

solicitar donaciones. Por ejemplo, un mensaje enviado el 27 de noviembre de 2021 tenía un asunto

que incluía la frase: "Campaña de recaudación de fondos de Z-Library (alias b-ok y 1lib). Última

llamada (ahora se aceptan tarjetas Visa)". Otros mensajes parecían reflejar alertas automáticas

solicitadas por los usuarios sobre la disponibilidad de libros en la base de datos de Z-Library. Por

ejemplo, un mensaje fechado el 16 de noviembre 2021, incluía el asunto: "Biblioteca ZAlerts:

nuevos libros encontrados sobre 'Curación'". NAPOLSKY también utilizó los servicios de Google

Ads para publicitar Z-Library. Google Ads es una plataforma de publicidad en línea desarrollada

por Google, en la que los anunciantes participan para mostrar anuncios breves, ofertas de servicios,

listados de productos o vídeos a los usuarios de la web. Puede colocar anuncios tanto en los

resultados de motores de búsqueda como Google Search y en sitios web que no son de búsqueda,

aplicaciones para móviles y vídeos.

Z-Library, bajo la dirección de los acusados, envió correos electrónicos que contenían

afirmaciones fraudulentas a autores y titulares de derechos de autor de libros. El sitio web de Z-

Library contenía una página web que indicaba, en resumen, que si los autores o titulares de

derechos de autor creían que sus obras estaban siendo compartidas en violación de sus derechos de

autor, que debían proporcionar notificación y Z-Library retiraría sus obras del sitio web. Sin

embargo, el 4 de julio de 2021 y el 21 de julio de 2021, los titulares de derechos de autor enviaron correos electrónicos a Z-Library y les informaron de que sus obras estaban siendo puestas a disposición de forma gratuita en violación de sus derechos de autor, y un representante de Z-Library, en colaboración con los acusados, les dijo a cada uno de ellos que las obras habían sido retiradas, a pesar de que las obras seguían estando disponibles en el sitio web. Los titulares de los derechos de autor hicieron un seguimiento para informar a Z-Library de que las obras seguían estando disponibles, pero nada cambió.

Los acusados utilizaron las ganancias del fraude para operar el sitio web Z-Library, evadir la aplicación de la ley y para su propio uso personal. El sitio web de Z-Library ofrecía a los usuarios la capacidad de realizar donaciones al sitio web con el fin de obtener una mayor capacidad de descarga en el sitio web. Los usuarios donaron miles de dólares a través de numerosos medios electrónicos que los operadores de Z-Library utilizaron para mantener el sitio web, incluso la compra de medios para alojar servidores en innumerables ubicaciones. Los acusados accedieron personalmente a los fondos de Z-Library que fueron donados a través de muchos medios incluidos Amazon y los intercambios de criptomonedas.

Los acusados controlaban una serie de direcciones de correo electrónico interrelacionadas de Z-Library, incluida una dirección de correo electrónico a la que el sitio web de Z-Library solicitaba que se enviaran donaciones. NAPOLSKY utilizó una dirección de correo electrónico personal para pedir al menos 21 artículos en Amazon.com que se pagaron utilizando tarjetas de regalo de Amazon que se originaron como "donaciones" de usuarios a Z-Library. Desde el 20 de marzo de 2019, ERMAKOVA, utilizando tarjetas regalo donadas a Z-Library por los usuarios, utilizó su cuenta de cliente de Amazon para realizar más de 110 pedidos por un total de más de $13,628.32 dólares estadounidenses, la mayoría de ellos de productos de belleza y ropa. Por ejemplo, aproximadamente en enero de 2021, se realizó una donación de tarjetas regalo de Amazon a Z-Library.

Z-Library era una empresa lucrativa. En un correo electrónico fechado el 18 de mayo de 2020, NAPOLSKY utilizó la dirección de correo electrónico de Z-Library feedback.bookos@gmail.com para solicitar servicios a un proveedor de servicios de pago y afirmó que los ingresos mensuales de Z-Library oscilaban en promedio entre $65,000 y $70,000 dólares estadounidenses mensuales, pero dos veces al año (en marzo y septiembre) aumentaron a entre $150,000 y $200,000 dólares estadounidenses mensuales y que todos los beneficios procedían de donaciones. El 3 de mayo de 2021 ERMAKOVA envió un correo electrónico similar utilizando la dirección de correo electrónico de Z-Library zlibsupp@gmail.com para solicitar servicios a un proveedor de servicios de pago y afirmó que sus ingresos mensuales eran de $50.000 dólares estadounidenses en promedio, pero que aumentaron a $150,000 dólares estadounidenses en marzo y septiembre debido a las campañas de recaudación de fondos. El 30 de mayo de 2022, ERMAKOVA recibió un correo electrónico a su dirección de correo electrónico personal de confluence@zlibrary.atlassian.net que en la línea de asunto decía "*[Confluence] zlib > All Servers*" que identificaba a los servidores privados dedicados y virtuales de Z-Library, las direcciones IP asociadas y la información de la empresa de alojamiento de servidores en ese momento.

El 16 de noviembre de 2022, un gran jurado federal reunido en el Distrito Este de Nueva York radicó y presentó una acusación formal contra los acusados imputándoles un delito de infracción de derechos de autor porque infringieron los derechos de autor con fines de lucro comercial y privado utilizando Z-Library para reproducir y distribuir libros electrónicos, que eran propiedad intelectual protegida sobre la que los autores tenían derechos de autor y los editores derechos exclusivos de distribución, y que Z-Library no tenía derecho ni licencia para distribuir. Además, los acusados están imputados por conspiración para cometer fraude electrónico porque acordaron participar en una actividad ilegal mediante la cual utilizaron transmisiones electrónicas, incluidos correos electrónicos, sitios web de Internet y otras transmisiones electrónicas, para fomentar su ardid de defraudar a autores y editores; y fraude electrónico sustantivo por causar el

5

envío de dos correos electrónicos específicos con información fraudulenta desde una cuenta de Z-Library a titulares de derechos de autor en julio de 2021. Por último, los acusados están imputados de conspiración para cometer lavado de dinero porque acordaron participar en una conducta ilegal que consistía en realizar transacciones financieras, incluidos depósitos, retiros y transferencias de fondos e instrumentos monetarios que implicaban las ganancias del ardid delictivo de los derechos de autor.

### **Los delitos**

**Sección 506(a)(l)(A) del título 18 del Código de los Estados Unidos.      Infracción penal**

(a)      Infracción penal.—

(1)      En general.-- Quien intencionalmente infrinja un derecho de autor será castigado según lo dispuesto en la sección 2319 del Título 18, si la infracción se cometió--
(A) con fines de ventaja comercial o beneficio financiero privado;

(B) por la reproducción o distribución, incluido por medios electrónicos, durante cualquier período de 180 días, de 1 o más copias o fonogramas de 1 o más obras protegidas por derechos de autor, que tengan un valor total de venta al por menor superior a $1,000 dólares estadounidenses; o

(C) mediante la distribución de una obra en preparación para su distribución comercial, poniéndola a disposición en una red informática accesible al público, si dicha persona sabía o debería haber sabido que la obra estaba destinada a la distribución comercial.

* * *

(3)      Definición.-- En esta subsección, el término "obra en preparación para su distribución comercial" significa—
(A) un programa informático, una obra musical, una película cinematográfica u otra obra audiovisual, o un registro de sonido, si, en el momento de la distribución no autorizada—
(i)  el titular de los derechos de autor tiene una expectativa razonable de distribución comercial; y
(ii) las copias o fonogramas de la obra no se han distribuido comercialmente

* * *

**Sección 2319 del título 18 del Código de los Estados Unidos.         Infracción penal respecto a los derechos de autor**

6

(a)     Quienquiera que viole la sección 506(a) (relativa a delitos penales) del título 17 será castigado como se dispone en las subsecciones (b), (c) y (d) y dichas penas se sumarán a cualquier otra disposición del título 17 o de cualquier otra ley.

(b)     Quienquiera persona que cometa un delito bajo la sección 506(a)(1)(A) del título 17-

>   (1)     será encarcelado por un período no superior a 5 años, o multado por la cantidad establecida en este título, o ambas cosas, si el delito consiste en la reproducción o distribución, incluido por medios electrónicos, durante cualquier período de 180 días, de al menos 10 copias o fonogramas, de 1 o más obras protegidas por derechos de autor, que tengan un valor total de venta al por menor superior a $2,500 dólares estadounidenses;

>   (2)     será condenado a una pena de prisión no superior a 10 años, o a una multa por la cantidad establecida en este título, o ambas cosas, si el delito es grave y se trata de un segundo delito o de un delito subsiguiente según lo dispuesto en esta subsección (a); y

>   (3)     será encarcelado por un período no superior a 1 año, o multado por la cantidad establecida en el presente título, o ambas cosas, en cualquier otro caso.

* * *

**Sección 1956(h) del título 18 del Código de los Estados Unidos.     Conspiración para cometer lavado de dinero**

(a)

>   (1) Quienquiera que, a sabiendas de que los bienes implicados en una transacción financiera representan las ganancias de algún tipo de actividad ilícita, realice o intente realizar dicha transacción financiera que, de hecho, implica las ganancias de una actividad ilícita especificada—

>>   (A)

>>>   (i) con la intención de promover la realización de una actividad ilegal específica;
>>   o

* * *

Será condenado a una multa no superior a $500,000 dólares estadounidenses o al doble del valor de los bienes implicados en la transacción, la cantidad que sea mayor, o a una pena de prisión no superior a veinte años, o ambas cosas. A efectos del presente párrafo, se considerará que una transacción financiera implica las ganancias de una actividad ilegal especificada si forma parte de un conjunto de transacciones paralelas o dependientes, cualquiera de las cuales implica las

7

ganancias de una actividad ilegal especificada, y todas ellas forman parte de un único plan o acuerdo.

* * *

(b) Sanciones

(2) Jurisdicción sobre personas extranjeras.-- Para los fines de adjudicar una acción presentada o hacer cumplir una sanción ordenada en virtud de esta sección, los tribunales de distrito tendrán jurisdicción sobre cualquier persona extranjera, incluida cualquier institución financiera autorizada en virtud de las leyes de un país extranjero, contra quien se presente la acción, si el servicio de proceso sobre la persona extranjera se realiza en virtud de las Reglas Federales de Procedimiento Civil o las leyes del país en el que se encuentra la persona extranjera, y—

(A) la persona extranjera comete un delito en virtud de esta subsección (a) que implica una transacción financiera que se produce en su totalidad o en parte en los Estados Unidos;

(B) la persona extranjera convierte, para su propio uso, bienes en los que Estados Unidos tiene una participación de titularidad en virtud de la entrada en vigor de una orden de decomiso por parte de un tribunal de los Estados Unidos; o bien

(c-) Tal como se usa en esta sección—

(1) el término "a sabiendas de que los bienes involucrados en una transacción financiera representan el producto de alguna forma de actividad ilícita" significa que la persona sabía que los bienes involucrados en la transacción representaban ganancias procedentes de alguna forma, aunque no necesariamente de qué forma, de actividad que constituye un delito grave según la ley estatal, federal o extranjera

(2) el término "realiza" incluye iniciar, concluir o participar en la iniciación o conclusión de una transacción;

(3) el término "transacción" incluye una compra, venta, préstamo, promesa, regalo, transferencia, entrega u otra disposición y, con respecto a una institución financiera, incluye un depósito, retiro, transferencia entre cuentas, cambio de divisas, préstamo, ampliación de crédito, compra o venta de acciones, bonos, certificados de depósito u otros instrumentos monetarios, uso de una caja de seguridad o cualquier otro pago, transferencia o entrega por, a través de o a una institución financiera, por cualquier medio que se efectúe;

(4) el término "transacción financiera" significa (A) una transacción que de cualquier manera o grado afecte el comercio interestatal o exterior (i) que implique el movimiento de fondos por medio electrónico u otros medios o (ii) que implique uno o más instrumentos monetarios, o (iii) que implique la transferencia de la titularidad de cualquier bien inmueble, vehículo, embarcación o aeronave, o (B) una transacción que implique el uso de una institución financiera que se dedique, o cuyas actividades afecten, al comercio interestatal o exterior de cualquier manera o en cualquier grado;

8

(5) el término "instrumentos monetarios" significa (i) monedas o divisas de los Estados Unidos o de cualquier otro país, cheques de viaje, cheques personales, cheques bancarios y giros postales, o (ii) valores de inversión o instrumentos negociables, al portador o de cualquier otra forma en que la titularidad de los mismos se transmita en el momento de la entrega

(7) el término "actividad ilegal especificada" significa—

(A) cualquier acto o actividad que constituya un delito enumerado en la sección 1961(1) de este título, excepto un acto que sea procesable en virtud del subcapítulo II del capítulo 53 del título 31;

* * *

(9) el término "ganancias" significa cualquier bien derivado de u obtenido o retenido, directa o indirectamente, a través de algún tipo de actividad ilícita, incluidos los ingresos brutos de dicha actividad.

* * *

(h) Toda persona que conspire para cometer cualquier delito definido en esta sección o en la sección 1957 estará sujeta a las mismas sanciones que las prescritas para el delito cuya comisión fue objeto de la conspiración.

* * *

**Sección 1343 del título 18 del Código de los Estados Unidos.**          **Fraude electrónico**

Quienquiera que, habiendo concebido o con la intención de concebir cualquier ardid o artificio para defraudar, o para obtener dinero o bienes mediante pretensiones, manifestaciones o promesas falsas o fraudulentas, transmita o cause que se transmita por medios electrónicos . . . comunicación en el comercio interestatal o exterior, cualquier escrito, signo, señal, imagen o sonido con el fin de ejecutar dicho ardid . . . será . . . condenado a un máximo de 20 años de prisión.

**Sección 1349 del título 18 del Código de los Estados Unidos.**          **Conspiración para cometer fraude electrónico**

Toda persona que intente cometer o conspire para cometer cualquier delito contemplado en este capítulo [incluido el fraude de dispositivos de acceso y el fraude electrónico] estará sujeta a las mismas sanciones que las previstas para el delito cuya comisión fue objeto de la tentativa o de la conspiración.

**<u>Sujetos objeto de la investigación</u>**

**1. Anton Napolsky**, alias Anton Napolskiy, alias John Bookos

Fecha de nacimiento:                    18 de mayo de 1989

Lugar de nacimiento:              Rusia
Ciudadanía:                       Rusa
Domicilio:                        Tipanova 29-405, San Petersburgo, 453300 Rusia

**2. Valeriia Ermakova**, alias Valeria Bookos

Fecha de nacimiento:              22 de agosto de 1995
Lugar de nacimiento:              Rusia
Ciudadanía:                       Rusa
Domicilio:                        Fontanka 24, San Petersburgo, 191028 Rusia

### Asistencia solicitada

Sírvase solicitar a la autoridad argentina designada para ejecutar esta solicitud que proporcione la asistencia que se describe a continuación.

I.     Cateos e incautación de pruebas durante la detención

Sírvase proporcionar al agregado legal del FBI Ricardo Hernández copias de todos y cada uno de los documentos incautados a los acusados, Anton Napolsky y Valeriia Ermakova, en relación con su detención. Además, sírvase permitir al agregado legal del FBI Ricardo Hernández obtener imágenes de todos y cada una de las computadoras, teléfonos celulares y otros dispositivos electrónicos incautados a los fugitivos en el momento de su detención.

II.    Entrevistas y testimonios

Sírvase identificar a los agentes del orden público y fiscales que incautaron o custodiaron pruebas, entrevistaron a testigos y/o entrevistaron a personas asociadas con los acusados, y autorizar a los investigadores y fiscales de los Estados Unidos a hablar directamente con estos individuos sobre las detenciones y las pruebas recuperadas. Los Estados Unidos podrían invitar a los testigos a viajar al Distrito Este de Nueva York, a expensas del gobierno de los Estados Unidos, para testificar en las audiencias, y/o en el juicio, o para prestar declaración formal en una fecha futura.

III.   Informes y registros policiales

10

Sírvase proporcionar todos los registros policiales argentinos creados en virtud de la investigación y detención de los acusados.

## **Procedimientos que deben seguirse**

Sírvase solicitar a la autoridad argentina designada para ejecutar esta solicitud que siga los procedimientos que se establecen a continuación.

A. Cateos e incautación de pruebas durante la detención

Con respecto a los originales de todos los documentos incautados por las autoridades argentinas, solicitamos que dichos artículos sean transmitidos a los Estados Unidos tan pronto como sea posible a través del representante del orden público estadounidense identificado más abajo.

B. Informes y registros policiales

Con respecto a los informes y registros policiales elaborados en el marco de la investigación y la detención de los fugitivos, sírvase pedir al custodio o custodios correspondientes de dichos documentos que complete(n) el Certificado de autenticidad de los registros oficiales adjunto (Anexo A).

## **Información de contacto**

El agregado legal auxiliar del FBI Ricardo Hernández, quien tiene la responsabilidad de la coordinación con las autoridades argentinas, y quien ya ha estado en contacto con las autoridades argentinas en relación con este asunto, puede ser localizado en el +5411-5111-4601 o en la dirección de correo electrónico rrhernandez@fbi.gov.

## **Conclusión**

Le transmitimos el testimonio de nuestra más alta consideración y le agradecemos la atención prestada a esta solicitud de asistencia en relación con la investigación de Z-Library.

11

<u>9 de diciembre de 2022</u>                         <u> [Firma]                   </u>
Fecha                                               Christopher J. Smith
Subdirector en funciones
Oficina de Asuntos Internacionales

**ANEXO A**

**CERTIFICADO DE AUTENTICIDAD DE REGISTROS OFICIALES**

Yo, _____ sabiendo que cualquier testimonio
                (nombre)

falso de mi parte me sometería a sanciones penales, DOY FE:

    1. De que mantengo el cargo de _____, en
                             (cargo)

_____;
        (nombre de la institución y el gobierno a la cual pertenece)

    2. Que como parte de las funciones de mi cargo, estoy autorizado por las leyes de

_____ para dar fe de que los documentos adjuntos al presente
(estado al cual pertenece)

y los cuales se describen abajo, son copias auténticas de los documentos oficiales originales, los
cuales están archivados en

_____,
(nombre de la entidad oficial correspondiente y el gobierno a la cual pertenece)

la cual es una entidad gubernamental o entidad del gobierno de Argentina.

    Descripción de los documentos:

_____
      (Firma)

_____
      (Cargo)

_____
      (Fecha)

13



República Argentina - Poder Ejecutivo Nacional
Las Malvinas son argentinas

**Nota**

**Número:**

**Referencia:** Solicitud de asistencia librada por el Departamento de Justicia de Estados Unidos en la investigación identificada como CRM-182-81763, seguida contra Z-Library.

**A:** Dr. Eduardo Daniel Ávalos- Presidente- (Cámara Federal de Apelac de Córdoba),

**Con Copia A:**

---

**De mi mayor consideración:**

AL SEÑOR PRESIDENTE
DE LA CÁMARA FEDERAL
DE APELACIONES DE CÓRDOBA
Dr. Eduardo Daniel Ávalos
S_____/_____D

Me dirijo a usted a los fines de remitir para su diligenciamiento la solicitud de asistencia internacional de fecha 9 de diciembre de 2022 -en sus versiones en inglés y en español-, librada por el Departamento de Justicia de los Estados Unidos de América, en la investigación penal identificada como **CRM-182-81763**, seguida contra **Z-Library**.

Dicha solicitud ha sido librada en el marco del Tratado de Asistencia Jurídica Mutua en Asuntos Penales, suscripto entre la República Argentina y los Estados Unidos de América (Ley N° 24.034), del que este Ministerio de Justicia y Derechos Humanos es Autoridad Central.

Tal como surge del ítem **Asistencia solicitada**, en los puntos I a III se detallan las medidas que se

requieren de las  autoridades judiciales argentinas, conforme los **Procedimientos** descriptos en dicha solicitud; ello en la medida que sea compatible con nuestra normativa interna (Artículo 5, inciso 3, del citado Tratado).

De acuerdo a lo establecido en el artículo 74 de la Ley de Cooperación Internacional en Materia Penal N° 24.767, y toda vez que los sujetos bajo investigación -Anton Napolsky, alias Anton Napolskiy, alias John Bookos y Valeriia Ermakova, alias Valeria Bookos- se encuentran detenidos en la provincia de Córdoba, según se informa en la solicitud, se le remite para que por su intermedio, se arbitren los medios para proceder a la designación del Juzgado que se encargará de su diligenciamiento.

Por último, se solicita que se informe a la Dirección Nacional de Asuntos Internacionales de este Ministerio el Juzgado en que ha sido radicada, para lo cual podrá enviar un correo electrónico a dicha dependencia a: agaldiz@jus.gov.ar y/o amenegozzi@jus.gov.ar

Sin otro particular saluda atte.

Poder Judicial de la Nación

## JUZGADO FEDERAL DE CORDOBA 1

//**TIFICO**: que la nota proveniente del Ministerio de Justicia y Derechos Humanos en la que se adjunta el pedido de Asistencia Judicial requerido por los Estados Unidos de América, fue recibida por correo electrónico a la casilla de la Secretaría Penal de este Juzgado Federal N° 1 en el día de la fecha. Oficina, 27-12-2022.

Córdoba, 27 de diciembre de 2022.

Téngase presente el certificado que antecede. En lo que respecta al pedido de Asistencia Judicial a través de ley 24.034, previo a todo y tratándose de un proceso de extradición dentro del cual es requerida la asistencia por el Estado requirente, córrase vista al Sr. Fiscal Federal N° 3, conf. art. 25 ley 24.767.

RICARDO BUSTOS FIERRO
JUEZ FEDERAL

Ante mi.

FACUNDO TRONCOSO
SECRETARIO