KTF/AFM:CWE/ANR
F. # 2021R01001

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                            Docket No. <u>22-CR-525 (S-1) (NRM) (CLP)</u>

ANTON NAPOLSKY
    also known as "Anton Napolskiy,"

and

VALERIIA ERMAKOVA,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS</u>

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Chand W. Edwards-Balfour
Antoinette N. Rangel
Assistant U.S. Attorneys
    (Of Counsel)

<u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

I.     THE DEFENDANTS' MOTION SHOULD NOT BE CONSIDERED BECAUSE THE DEFENDANTS HAVE REFUSED TO MAKE AN APPEARANCE IN THIS COURT ................................................................................................................. 4

     A.    The Fugitive Disentitlement Doctrine Disallows the Filing of Motions by Individuals Evading United States Jurisdiction .................................................. 5

     B.    The Fugitive Disentitlement Doctrine Applies to Indicted Individuals Who Refuse to Face Charges Against Them in the United States ............................ 6

     C.    The Defendants are Fugitives ............................................................................. 7

     D.    All Pertinent Policy Considerations Weigh in Favor of Disallowing Defendants' Motion ........................................................................................... 9

II.    THE CHARGES IN THE INDICTMENT ARE DOMESTIC, NOT EXTRATERRITORIAL, AND THERE IS A SUFFICIENT NEXUS TO THE UNITED STATES TO SATISFY DUE PROCESS ................................................. 11

     A.    Legal Standard ................................................................................................... 11

     B.    The Criminal Copyright Count Alleges Domestic Conduct and a Sufficient Nexus with the United States .......................................................................... 15

     C.    The Wire Fraud and Money Laundering Counts Allege Domestic Conduct .. 17

III.   THE DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A PRIMA FACIE CASE FAILS ................................................................................ 19

     A.    Applicable Law ................................................................................................. 19

     B.    Discussion ......................................................................................................... 23

          1.    Count One is Properly Pleaded....................................23

          2.    Counts Two Through Four are Properly Pleaded.................24

          3.    Count Five is Properly Pleaded....................................25

          4.    The Defendants' Remaining Arguments regarding the Government's Wire Fraud Counts Fail.......................26

IV.   THE GOVERNMENT PROPERLY ALLEGED VENUE FOR THE INSTANT PROSECUTION...........…...………………………………………….33

     A.    Applicable Law ................................................................................................. 33

     A.    Discussion ......................................................................................................... 36

CONCLUSION.................................................................................................................. 39

i

<u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

<u>Absolute Activist Value Master Fund Ltd. v. Ficeto</u>, 677 F.3d 60 (2d Cir. 2012)................ 13

<u>Bascunan v. Elsaca</u>, 927 F.3d 108  (2d Cir. 2019) ............................................................ 13, 14

<u>Bd. of Governors of Fed. Rsrv. Sys. v. Mahfouz</u>, No. 92 CIV. 5096 (MGC), 1992 WL
    183556 (S.D.N.Y. July 23, 1992) ..................................................................................... 8

<u>Bowers v. United States</u>, 212 L. Ed. 2d 342, 142 S. Ct. 1396 (2022) .................................. 24

<u>Boyce Motor Lines, Inc. v. United States</u>, 342 U.S. 337 (1952).......................................... 22

<u>Carpenter v. United States</u>, 484 U.S. 19 (1987) ............................................................... 29,30

<u>Ciminelli v. United States</u>, 598 U.S. 306 (2023) ................................................................... 29

<u>Collazos v. United States</u>, 368 F.3d 190 (2d Cir. 2004)........................................................ 10

<u>Cooper v. United States</u>, 639 F. Supp. 176 (M.D. Fla. 1986) ................................... 28, 29, 30

<u>Costello v. United States</u>, 350 U.S. 359 (1956) .................................................................... 19

<u>Degen v. United States</u>, 517 U.S. 820 (1996)......................................................................... 5

<u>Dowling v. United States</u>, 473 U.S. 207 (1985) .................................................................... 29

<u>Estelle v. Dorrough</u>, 420 U.S. 534 (1975) .............................................................................. 5

<u>European Cmty. v. RJR Nabisco, Inc.</u>, 764 F.3d 129 (2d Cir. 2014) .................................... 17

<u>Hanson v. Phillips</u>, 442 F.3d 789 (2d Cir. 2006)................................................................. 5, 9

<u>Hamling v. United States</u>, 418 U.S. 87 (1974) ..................................................................... 20

<u>In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC</u>, 917 F.3d 85 (2d Cir.
    2019) ............................................................................................................................... 12

<u>and Kiobel v. Royal Dutch Petroleum Co.</u>, 569 U.S. 108 (2013) ........................................ 12

<u>Lewis v. United States</u>, 146 U.S. 370 (1892) .......................................................................... 5

<u>Minnette v. Time Warner</u>, 997 F.2d 1023 (2d Cir. 1993) ..................................................... 38

<u>Molinaro v. New Jersey</u>, 396 U.S. 365 (1970) ........................................................................ 5

<u>Morrison v. Nat'l Aus. Bank Ltd.</u>, 561 U.S. 247 (2010) .................................................. 12, 13

<u>Oracle USA, Inc. v. Rimini St., Inc.</u>, No. 10 CV 106 (LRH), 2010 WL 3257933 (D. Nev.
    Aug. 13, 2010) ................................................................................................................. 28

<u>Pasquantino v. United States</u>, 544 U.S. 349 (2005)............................................................... 14

P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC., 428 F.3d 504 (3d Cir. 2005) .................................................................................... 23, 24, 25, 26

RJR Nabisco, Inc. v. European Community, 136 S. Ct. 2090 (2016) .................. 12, 13, 16, 17

Roth v. Pritikin, 710 F.2d 934 (2d Cir. 1983)........................................................ 29

Sekhar v. United States, 570 U.S. 729 (2013) .................................................... 30, 31

Sorcia v. Holder, 643 F.3d 117 (4th Cir. 2011) ...................................................... 38

United States v. Ahmed, 94 F. Supp. 3d 394 (E.D.N.Y. 2015)............................... 17

United States v. Al Kassar, 660 F.3d 108 (2d Cir. 2011) ........................... 15, 17, 19

United States v. Aleynikov, 676 F.3d 71 (2d Cir. 2012) ........................................ 12

United States v. Alfonso, 143 F.3d 772 (2d Cir. 1998) .............................. 20, 23, 27

United States v. Ali, 718 F.3d 929 (D.C. Cir. 2013) ............................................. 15

United States v. Avenatti, No. 19-CR-374 (JMF), 2022 WL 305145 (S.D.N.Y. Feb. 1, 2022)............................................................................... 32

United States v. Barrett, 153 F. Supp. 3d 552 (E.D.N.Y. 2015)............................. 37

United States v. Beech–Nut Nutrition Corp., 871 F.2d 1181 (2d Cir. 1989) ........................ 34

United States v. Bescond, 24 F.4th 759 (2d Cir. 2021) ............................... 6, 7, 8, 9

United States v. Blackwell, 946 F.2d 1049 (4th Cir. 1991).................................... 39

United States v. Blanco, 861 F.2d 773 (2d Cir. 1988)............................................. 6

United States v. Boney, 572 F.2d 397 (2d Cir. 1978) ........................................... 18

United States v. Buck, No. 13 CR 282 (VM), 2015 WL 195872 (S.D.N.Y. Jan. 9, 2015).... 10

United States v. Calderon, 243 F.3d 587 (2d Cir. 2001) ...................................... 18

United States v. Canady, 126 F.3d 352 (2d Cir. 1997)............................................. 5

United States v. Candella, 487 F.2d 1223 (2d Cir. 1973)...................................... 35

United States v. Cassese, 273 F. Supp. 2d 481 (S.D.N.Y. 2003) .......................... 23

United States v. Catino, 735 F.2d 718 (2d Cir.), cert. denied, 469 U.S. 855 (1984)........... 8, 9

United States v. Chung Cheng Yeh, No. CR 10-00231 (WHA), 2013 WL 2146572 (N.D. Cal. May 15, 2013) ........................................................................... 10

United States v. Clark, 593 Fed. App'x 53 (2d Cir. 2014) .................................... 31

United States v. Coffey, 361 F. Supp. 2d 102 (E.D.N.Y. 2005)............................. 22

United States v. de la Pava, 268 F.3d 157 (2d Cir. 2001) .................................... 19

ii

United States v. DeFiore, 720 F.2d 757 (2d Cir. 1983) ......................................................... 14

United States v. Dowling, 739 F.2d 1445 (9th Cir. 1984) ...................................................... 30

United States v. Elder, No. 18-CR-92 (WFK), 2021 WL 4129153

   (E.D.N.Y. Aug. 25, 2021) ................................................................................................. 22

United States v. Elson, 968 F. Supp. 900 (S.D.N.Y. 1997) .................................................... 22

United States v. Eng, 951 F.2d 461 (2d Cir. 1991) ............................................................. 5, 8

United States v. Finazzo, No. 10-CR-457 (RRM) (RML), 2014 WL 3818628 (E.D.N.Y. Aug.

   1, 2014) ........................................................................................................................... 31

United States v. Gambino, 809 F. Supp. 1061 (S.D.N.Y. 1992) ............................................ 21

United States v. Goldberg, 756 F.2d 949 (2d Cir. 1985) ....................................................... 22

United States v. Gotti, No. 02-CR-743 (RCC), 2004 WL 32858 (S.D.N.Y. Jan. 6, 2004) .... 22

United States v. Grammatikos, 633 F.2d 1013 (2d Cir. 1980) ............................................... 34

United States v. Hancock, 268 F.2d 205 (2d Cir. 1959) ........................................................ 25

United States v. Hawit, No. 15- CR-252 (PKC), 2017 WL 663542

   (E.D.N.Y. Feb. 17, 2017) ............................................................................... 14, 17, 18, 19

United States v. Hayes, 118 F. Supp. 3d 620 (S.D.N.Y. 2015) .......................................... 6, 14

United States v. Hernandez, 980 F.2d 868 (2d Cir. 1992) ..................................................... 21

United States v. Hussain, 972 F.3d 1138 (9th Cir. 2020) ...................................................... 12

United States v. Jabar, 19 F. 4th 66 (2d Cir. 2021) .............................................................. 24

United States v. Johnson, 945 F.3d 606 (2d Cir. 2019) ......................................................... 27

United States v. Kashamu, 656 F. Supp. 2d 863 (N.D. Ill. 2009) ........................................... 6

United States v. Kelly, 462 F. Supp. 3d 191 (E.D.N.Y. 2020) .......................................... 20, 21

United States v. Kerik, 615 F. Supp. 2d 256 (S.D.N.Y. 2009) ............................................... 20

United States v. Kim, 246 F.3d 186 (2d Cir. 2001) ............................................................... 14

United States v. Knox, 396 U.S. 77 (1969) ........................................................................... 27

United States v. LaSpina, 299 F.3d 165 (2d Cir. 2002) ......................................................... 21

United States v. LaMacchia, 871 F. Supp. 535 (D. Mass. 1994) ..................................... 31, 32

United States v. Lange, 834 F.3d 58 (2d Cir. 2016) ......................................................... 33, 35

United States v. Laurent, 861 F. Supp. 2d 71 (E.D.N.Y. 2011) ................................. 21, 27, 33

United States v. Lombardo, 241 U.S. 73 (1916) ................................................................... 35

iii

United States v. Lopez Bello, No. 19 CR. 144 (AKH), 2023 WL 3199968 (S.D.N.Y. May 2, 2023) ................................................................................................ 27, 33

United States v. Manzer, 69 F.3d 222 (8th Cir. 1995)........................................... 29

United States v. Martignon, 492 F.3d 140 (2d Cir. 2007) ..................................... 29

United States v. Miller, 166 F. Supp. 3d 346 (W.D.N.Y. 2016) ........................ 9, 10

United States v. Motz, 652 F. Supp. 2d 284 (E.D.N.Y. 2009) ............................... 39

United States v. Napout, 963 F.3d 163 (2d Cir. 2020) ................................ 11, 13, 14

United States v. Ng, No. 18-CR-538 (MKB), Dkt. No. 84 (E.D.N.Y. Sept. 10, 2021) ........ 34

United States v. Novak, 443 F.3d 150 (2d Cir. 2006) ........................................... 38

United States v. Nunez, 375 F. Supp. 3d 232 (E.D.N.Y. 2018) ....................... 20, 21

United States v. Oliveri, 190 F. Supp. 2d 933 (S.D. Tex. 2001) ............................. 6

United States v. Perez, 575 F.3d 164 (2d Cir. 2009) ...................................... 21, 22

United States v. Petty, No. 22-CR-49-LJV, 2022 WL 1590609 (W.D.N.Y. May 19, 2022). 39

United States v. Potamitis, 739 F.2d 784 (2d Cir. 1984)...................................... 34

United States v. Ramirez, 420 F.3d 134 (2d Cir. 2005) .................................. 34, 35

United States v. Reale, No. 96-CR-1069 (DAB), 1997 WL 580778 (S.D.N.Y. Sept. 17, 1997).............................................................................. 21, 22

United States v. Reed, 773 F.2d 477 (2d Cir. 1985)........................................ 34, 35

United States v. Rodriguez-Moreno, 526 U.S. 275 (1999) .............................. 34, 35

United States v. Royer, 549 F. 3d 886 (2d Cir. 2008) ........................................... 35

United States v. Runner, No. 18-CR-0578 (JS), 2023 WL 2429610 (E.D.N.Y. Mar. 9, 2023)............................................................................... 27

United States v. Saavedra, 223 F.3d 85 (2d Cir. 2000) ....................................... 35

United States v. Sampson, 898 F.3d 270 (2d Cir. 2018) ....................................... 27

United States v. Shapiro, 391 F. Supp. 689 (S.D.N.Y. 1975) ............................... 10

United States v. Shultz, 482 F.2d 1179 (6th Cir. 1973)......................................... 29

United States v. Shortt Accountancy Corp., 785 F.2d 1448 (9th Cir. 1986)........................ 27

United States v. Smith, 198 F.3d 377 (2d Cir. 1999) ............................................ 34

United States v. Stanzione, 391 F. Supp. 1201 (S.D.N.Y. 1975) ........................... 10

United States v. Stolon, 555 F. Supp. 238 (E.D.N.Y. 1983) ............................ 23, 25

United States v. Stringer, 730 F.3d 120 (2d Cir. 2013) ..................................................... 22, 23

United States v. Sutton, 13 F.3d 595 (2d Cir. 1994) ............................................................. 34

United States v. Svoboda, 347 F.3d 471 (2d Cir. 2003) ........................................................ 35

United States v. Tairod Nathan Webster Pugh, No. 1:15-CR-00116-NGG, 2015 WL 9450598
    (E.D.N.Y. Dec. 21, 2015) .................................................................................................. 23

United States v. Trapilo, 130 F.3d 547 (2d Cir. 1997) ........................................................... 14

United States v. Vaulin, No. 16 CR 438-1, 2017 WL 3334861 (N.D. Ill. Aug. 4, 2017) ...... 11

United States v. Wang, 898 F. Supp. 758 (D. Colo. 1995) ..................................................... 28

United States v. Wedd, 993 F.3d 104 (2d Cir. 2021) ......................................................... 21, 26

United States v. White, 590 F.3d 1210 (11th Cir. 2009) ......................................................... 39

United States v. Williams, 644 F.2d 950 (2d Cir. 1981) ......................................................... 28

United States v. Wilson, 26 F.3d 142 (D.C. Cir. 1994) .......................................................... 27

United States v. Yakou, 428 F.3d 241 (D.C. Cir. 2005) ......................................................... 15

United States v. Yannotti, 541 F.3d 112 (2d Cir. 2008) .................................................... 20, 26

United States v. Yousef, 327 F.3d 56 (2d Cir. 2003) .............................................................. 15

United States v. Zemlyansky, 908 F.3d 1 (2d Cir. 2018) ........................................................ 26

WesternGeco LLC v. ION Geophysical Corp., 138 S. Ct. 2129 (2018) ................................ 13

Whitfield v. United States, 543 U.S. 209 (2005) ..................................................................... 38

Williams v. Affinion Grp., LLC, 889 F.3d 116 (2d Cir. 2018) ............................................... 32

## STATUTES

17 U.S.C. § 506(a)(1)(A ......................................................................................................... 23
18 U.S.C. § 1030 .................................................................................................................... 16
18 U.S.C. § 1030(a)(4) ................................................................................................. 23, 24, 25
18 U.S.C. § 1343 ........................................................................................................ 24, 31, 32
18 U.S.C. § 1349 .................................................................................................................... 24
18 U.S.C. § 1956(a)(1)(A) ..................................................................................................... 26
18 U.S.C. § 1956(h) ............................................................................................................... 25
18 U.S.C. § 1956(i) ................................................................................................................ 37
18 U.S.C. § 2314 .................................................................................................................... 29
18 U.S.C. § 3237(a) ............................................................................................................... 34

## RULES

Fed. R. Crim. P. 7(c)(1) ......................................................................................................... 20

Fed. R. Crim. P. 29 ................................................................................................................ 22

<u>PRELIMINARY STATEMENT</u>

The defendants, Russian nationals Anton Napolsky and Valeriia Ermakova, stand charged in a five-count superseding indictment (hereinafter, the "Indictment") in connection with their operation of Z-Library, a cluster of websites that victimized countless authors and publishers by pirating millions of copyrighted written materials including books, magazines, and other literature.  The defendants were arrested in Argentina and are pending extradition to the United States.

On July 12, 2023, the defendants filed a motion to dismiss the original indictment in this case in which they principally argue (1) that there is insufficient evidence to support the charges, (2) that all counts are improperly pleaded, (3) that there is an insufficient nexus between the charged conduct and the United States and that the statutes in question do not apply extraterritorially, and (4) that the Court lacks venue.  <u>See</u> ECF No. 12-1 ("Def. Mot." or the "Motion").[1]  Because the defendants are fugitives who have chosen to avoid the reach of this Court by resisting extradition, they are disentitled from seeking relief from this Court.  The Motion, therefore, should be denied without a review of its merits.

---

[1] The government obtained the Indictment on August 9, 2023, after the defendants filed their Motion.  The Indictment made minor substantive changes to the original indictment:  it includes Z-Library customers among the individuals who the defendants defrauded and alleges venue in two federal districts other than the Eastern District of New York for the substantive wire fraud counts.  The defendant's arguments are mostly unaffected; where superseding the original indictment has mooted or changed an issue, it is noted herein.

However, even if the Court should find that the defendants are entitled to seek relief, the Motion should be denied for myriad reasons:

- <u>First</u>, the defendants are charged with domestic conduct and there is a sufficient nexus to the United States to satisfy due process;

- <u>Second</u>, the government sufficiently pleaded the elements of each offense; and

- <u>Third</u>, the Indictment properly alleges venue.

The Motion is meritless and should be denied.

## BACKGROUND

On October 21, 2022, the Honorable Sanket J. Bulsara, United States Magistrate Judge in the Eastern District of New York, signed a criminal complaint charging the defendants with criminal copyright, in violation of Title 17, United States Code, Section 506(a)(1)(A) for their operation and control of Z-Library. Z-Library is a website that bills itself as "the world's largest library" and claims to offer millions of electronic books ("e-books") for download. Z-Library has been active since approximately 2009. It offers copyright-protected e-book files in a variety of file formats and encourages users to both upload and download titles. Many of the e-books offered by Z-Library are protected intellectual property for which authors hold copyrights and publishers hold exclusive distribution rights, and which Z-Library has no right or license to distribute. As such, a central purpose of Z-Library is allowing users to download copyrighted books without payment to the copyright holders in violation of U.S. copyright law (while maintaining a veneer of legality through, among other things, billing itself as a "library"). Users could download the books for free or make payments—the proceeds of which have been traced to the defendants—for more exclusive access and premiere options on the Z-Library website.

Foreign authorities arrested the defendants in Rio Gallegos, Argentina, on November 3, 2022, pursuant to a provisional arrest request from the United States. The defendants are currently engaged in extradition proceedings from Argentina to the United States.

On November 16, 2022, a federal grand jury sitting in the Eastern District of New York returned a five-count indictment charging the defendants with criminal copyright, wire fraud conspiracy, two counts of wire fraud, and money laundering conspiracy for their operation and control over Z-Library and using money obtained from their control over the website to launder proceeds. On August 9, 2023, the grand jury returned a superseding indictment that charged the same offenses. The superseding indictment differed from the underlying indictment

3

inasmuch as it included Z-Library customers among the individuals who the defendants defrauded, and alleged venue in two federal districts other than the Eastern District of New York for the substantive wire fraud counts.

At trial, the evidence will show that the defendants operated and controlled Z-Library and used it to both infringe copyrights and operate a scheme to defraud copyright holders and Z-Library customers of money and property.  The victims of the defendants' criminal actions are located throughout the United States, including within the Eastern District of New York.  The evidence will also show that the defendants' operation of Z-Library depended on numerous servers located all over the world, including in the United States.

The evidence at trial will further show that the defendants used U.S.-based online payment services to perpetrate their criminal scheme, including to pay for the servers that hosted Z-Library and to launder the proceeds the defendants received from their fraud back to themselves for personal gain.  In addition, the defendants used the services of a U.S. company that provides email accounts and online file storage to make transactions related to the scheme and communicate with co-conspirators to operate Z-Library.

<u>ARGUMENT</u>

I. <u>THE DEFENDANTS' MOTION SHOULD NOT BE CONSIDERED BECAUSE THE DEFENDANTS HAVE REFUSED TO MAKE AN APPEARANCE IN THIS COURT</u>

The defendants are fugitives who have chosen to avoid the reach of this Court by remaining in Argentina.  Until they submit to the jurisdiction of the United States, they have no ability to compel this Court to consider the present Motion—or any type of motion.  Accordingly, the defendants' Motion should be rejected without a review of its merits.

A.    The Fugitive Disentitlement Doctrine Disallows the Filing of Motions by
Individuals Evading United States Jurisdiction

"A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner." United States v. Canady, 126 F.3d 352, 360 (2d Cir. 1997) (quoting Lewis v. United States, 146 U.S. 370, 372 (1892)).  Equally axiomatic is the idea that federal courts "have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities." Degen v. United States, 517 U.S. 820, 823 (1996).  From these two core concepts—the necessity of a defendant's presence and the authority of a court to protect the integrity of its judgments—springs the concept of fugitive disentitlement.  This doctrine dictates that the act of being a fugitive "disentitles the defendant to call upon the resources of the Court for determination of his claims." Molinaro v. New Jersey, 396 U.S. 365, 366 (1970).

Fugitive disentitlement is an equitable doctrine that is informed by four independent justifications: "(1) assuring the enforceability of a decision against a fugitive; (2) imposing a penalty for flouting the judicial process; (3) discouraging flights from justice to promote efficient operation of the courts; and (4) avoiding prejudice to the other side engendered by a defendant's flight." Hanson v. Phillips, 442 F.3d 789, 795 (2d Cir. 2006) (internal quotation omitted).

This doctrine "is grounded on the impropriety of permitting a fugitive to pursue a claim in federal court where he might accrue a benefit, while at the same time avoiding an action of the same court that might sanction him." United States v. Eng, 951 F.2d 461, 465 (2d Cir. 1991).  By barring fugitives from seeking relief from the very courts that they avoid, the doctrine "'encourages voluntary surrenders,' and 'promotes the efficient, dignified operation' of the courts." Degen, 517 U.S. at 823 (quoting Estelle v. Dorrough, 420 U.S. 534, 537 (1975)).  Put

simply, the fugitive disentitlement doctrine reflects the "unwillingness of courts to waste time and resources exercising jurisdiction over litigants who will only comply with favorable rulings of the court." United States v. Oliveri, 190 F. Supp. 2d 933, 935 (S.D. Tex. 2001). The doctrine, which enables the efficient and fair management of litigation, is often applied to bar the filing of pretrial motions by fugitives. See, e.g., United States v. Kashamu, 656 F. Supp. 2d 863, 866–67 (N.D. Ill. 2009) (noting that "the fugitive disentitlement doctrine can apply to pretrial motions in criminal cases" and collecting selected cases).

      B.    The Fugitive Disentitlement Doctrine Applies to Indicted Individuals Who Refuse to Face Charges Against Them in the United States

As its name implies, the fugitive disentitlement doctrine prohibits the filing of motions by fugitives. Thus, before refusing consideration of a motion filed by a person not physically present, a court must first "consider the threshold question of whether the defendant is a 'fugitive.'" United States v. Hayes, 118 F. Supp. 3d 620, 624 (S.D.N.Y. 2015).

"Fleeing from justice is not always a physical act; it may be a state of mind." Eng, 951 F.2d at 464. Accordingly, "a defendant with notice of criminal charges who actively resists returning from abroad to face those charges is a fugitive from justice." Id.; see also United States v. Blanco, 861 F.2d 773, 779 (2d Cir. 1988) ("A person can be said to be a fugitive when, while abroad, they learn that they are under indictment and make no effort to return to the United States to face charges.").

"Fugitivity implies some action by [the defendant] to distance herself from the United States or frustrate arrest." United States v. Bescond, 24 F.4th 759, 771 (2d Cir. 2021). Thus, the Second Circuit recently held that a citizen of France who simply remained at home in France and whose home country would not extradite her was not subject to the fugitive disentitlement doctrine. Id. at 772. With respect to her alleged crimes—transmitting false,

misleading, and knowingly inaccurate commodities reports while working as a French banker—
Bescond took no steps to conceal her identity and took no actions in the United States, although
her actions were alleged to have downstream effects in the United States.  In contrast, even
foreign citizens who are located outside of the United States when they learn of the charges
against them can be deemed "constructive-flight fugitives" when, as examples, (1) their conduct
took place in, or is inextricably intertwined with, the United States; (2) the defendants concealed
their identities in connection with the scheme; and (3) their location abroad at the time of the
charges does not amount to "simply remain[ing] at home," as was the case with Bescond.  See,
e.g., United States v. Lopez Bello, No. 19 CR. 144 (AKH), 2023 WL 3199968, at *1 (S.D.N.Y.
May 2, 2023) (applying fugitive disentitlement doctrine to a Venezuelan who allegedly used
U.S.-based companies to charter private flights, involving at times U.S.-registered aircraft, and
paid for private flights by using associates to deliver cash in Venezuela to be smuggled into the
United States, all in connection with an international drug conspiracy, although he remained
abroad in Venezuela and had not been to the United States since several years before the charged
conduct).

    C.    <u>The Defendants are Fugitives</u>

        The defendants are fugitives who are choosing to remain outside the jurisdictional
reach of this Court.  The defendants were arrested in a remote region of a foreign country—
Argentina—where they have no legal status other than as tourists.  The defendants are aware of
the charges against them and have hired United States-based counsel who have filed notices of
appearance in this case.  The defendants are fighting extradition to the United States and refuse
to come to the jurisdiction to answer the charges against them.

        The defendants' attempt to categorize themselves as non-fugitives through
reliance upon United States v. Bescond is misguided.  In Bescond, as described above, the

Second Circuit found the defendant was not a fugitive nor subject to disentitlement because, among other things, she was in her home country with no extradition policy and therefore no obligation to appear in the United States.  24 F.4th 759, 767–75 (2d Cir. 2021).  Bescond in no way concealed her identity in connection with the alleged crimes and was charged with conduct that amounted to actions she took in France as part of her banking job.  By merely choosing to stay put, consistent with her rights under the treaty of her home country, the Second Circuit reasoned, she did nothing tantamount to being a fugitive.

   The defendants here are a far cry from Bescond.  As described more fully below, although the defendants never stepped foot in the United States, their online conduct repeatedly and deliberately crossed the U.S. border and made ample use of U.S. companies and facilities to commit their crimes.  Unlike Bescond, the defendants were not openly doing their jobs.  To the contrary, no public information tied them to Z-Library or made evident that this purported online library was run by Russian nationals relying on customer donations to enrich themselves and make personal purchases.  Moreover, the defendants were apprehended in a remote region of Argentina and have no citizenship rights in Argentina, in stark contrast to Bescond.

   "The disentitlement doctrine prevents a defendant from enjoying the benefits of the legal system while simultaneously flouting that system by fleeing the jurisdiction, or by 'constructively fleeing' by resisting extradition or refusing to appear at his arraignment."  Bd. of Governors of Fed. Rsrv. Sys. v. Mahfouz, No. 92 CIV. 5096 (MGC), 1992 WL 183556, at *1 (S.D.N.Y. July 23, 1992); United States v. Eng, 951 F.2d 461, 465–66 (2d Cir. 1991); United States v. Catino, 735 F.2d 718, 722–23 (2d Cir.), cert. denied, 469 U.S. 855 (1984).  To allow the defendants to resist extradition while enjoying the benefit of the legal system in the Eastern

District would be contrary to well-settled precedent.  Indeed, to apply the facts of <u>Bescond</u> here would swallow the rule and render the fugitive disentitlement doctrine all but useless.

   "The primary purpose of the fugitive disentitlement doctrine—promoting mutuality of litigation—is served both when a defendant flees the United States and when he chooses to remain outside the United States."  <u>United States v. Miller</u>, 166 F. Supp. 3d 346, 348 (W.D.N.Y. 2016).  Thus, "[i]t is entirely irrelevant" whether a defendant left the United States after being charged or simply declined to come to the United States upon learning of the criminal charges.  <u>Id</u>; <u>see</u> <u>United States v. Catino</u>, 735 F.2d 718, 722 (2d Cir. 1984).  Here, the defendants in this case are fugitives as they are declining to come to the United States upon learning of the charges against them in the Eastern District of New York.

  D. <u>All Pertinent Policy Considerations Weigh in Favor of Disallowing Defendants'<br>Motion</u>

   Given the defendants' status as fugitives, the Court should decline to entertain their Motion.  As mentioned above, four policy considerations undergird the fugitive disentitlement doctrine: "(1) assuring the enforceability of a decision against a fugitive; (2) imposing a penalty for flouting the judicial process; (3) discouraging flights from justice to promote efficient operation of the courts; and (4) avoiding prejudice to the other side engendered by a defendant's flight."  <u>Hanson v. Phillips</u>, 442 F.3d 789, 795 (2d Cir. 2006) (internal quotation omitted).  All four policy considerations weigh against the defendants.

   First, although the defendants appear willing to accept a favorable ruling on their Motion—that is, a dismissal—there is absolutely no indication that they would voluntarily submit to the Court's jurisdiction if their Motion were denied.  As such, the Court's decision would be wholly unenforceable.  The Court should not countenance such a result.  The defendants "[are] not entitled to receive any potentially favorable rulings from this Court if [they

are] unwilling to stand for and face the consequences of any potentially unfavorable rulings."
United States v. Buck, No. 13 CR 282 (VM), 2015 WL 195872, at *3 (S.D.N.Y. Jan. 9, 2015).
The defendants' resistance from extradition despite Argentina's attempts to extradite them to
face their charges in the United States suggests that the defendants have no intention to travel to
the United States to have their case adjudicated.  Thus, the defendants "[are] willing to enjoy the
benefits of a legal victory, but [are] not at all prepared to accept the consequences of an adverse
holding."  United States v. Stanzione, 391 F. Supp. 1201, 1202 (S.D.N.Y. 1975).  In order to
"insure some form of 'mutuality,'" courts are generally "unwilling to allow a defendant to gain
the benefit of a favorable result when he is unwilling to risk the burden of an adverse decision."
United States v. Shapiro, 391 F. Supp. 689, 693 (S.D.N.Y. 1975).  The defendants should not be
permitted to engage in this type of "one-sided litigation."  Miller, 166 F. Supp. 3d at 348.

Second, the defendants' efforts to litigate from afar flouts judicial process from
the Court.  The defendants are "attempt[ing] to invoke from a safe distance only so much of a
United States court's jurisdiction" as might benefit them "while carefully shielding [themselves]
from the possibility of a penal sanction."  Collazos v. United States, 368 F.3d 190, 200 (2d Cir.
2004).  The defendants' efforts are intended to undermine established judicial process.  If the
defendants desire resolution of their case, they are welcome to take the course of action available
to all defendants: appear in the Eastern District of New York and litigate this matter.  "Until [the
defendants are] willing to submit [their] case for complete adjudication, however, [they] should
not be permitted to utilize the resources of the court to determine isolated issues."  United States
v. Chung Cheng Yeh, No. CR 10-00231 (WHA), 2013 WL 2146572, at *3 (N.D. Cal. May 15,
2013).

Third, if this Court ruled on the defendants' Motion without requiring them to be physically present in the United States, it would incentivize flight in future cases.  This would be a deeply troubling outcome as it would encourage individuals who are arrested in countries and subject to extradition to flee prosecution and deliver demands while constructively evading prosecution.  United States v. Vaulin, No. 16 CR 438-1, 2017 WL 3334861, at *5 (N.D. Ill. Aug. 4, 2017).  As such, this factor weighs against defendants.

Finally, issuing a ruling in this case would exacerbate the prejudice caused to the government by the defendants' flight.  The government cannot proceed with its case until the defendants appear in the Eastern District of New York.  The defendants' fugitive status is thus highly prejudicial to the government's ability to prosecute this case.

In sum, all four policy considerations militate against entertaining the defendants' Motion.  Thus, the Court should deny defendants' Motion without considering its merits.

II.     THE CHARGES IN THE INDICTMENT ARE DOMESTIC, NOT
        EXTRATERRITORIAL, AND THERE IS A SUFFICIENT NEXUS TO THE UNITED
        STATES TO SATISFY DUE PROCESS

Each Count in the Indictment alleges domestic conduct, and the facts alleged are more than sufficient to satisfy due process.  Therefore, the defendants' Motion to dismiss on the basis that it charges extraterritorial conduct and that it fails to comport with due process, is wrong, and should be denied.

    A.     Legal Standard

A defendant may challenge a federal indictment under Rule 12 "on the ground that it fails to allege a crime within the terms of the applicable statute."  United States v. Aleynikov, 676 F.3d 71, 75–76 (2d Cir. 2012).  "As a general matter, statutes are presumed to have only domestic application," but that presumption may be rebutted.  United States v. Napout, 963 F.3d 163, 178 (2d Cir. 2020).  A case involving foreign conduct may proceed where "either

11

the statute [at issue] indicates its extraterritorial reach" or—despite the existence of foreign conduct—"the case [nonetheless] involves a domestic application of the statute." In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC, 917 F.3d 85, 95 (2d Cir. 2019).

In analyzing issues relating to the extraterritorial reach of federal statutes, courts generally apply a two-step framework. See RJR Nabisco, Inc. v. European Cmty., 136 S. Ct. 2090, 2101 (2016) (citing Morrison v. Nat'l Aus. Bank Ltd., 561 U.S. 247 (2010), and Kiobel v. Royal Dutch Petroleum Co., 569 U.S. 108 (2013)). At the first step, a court must determine "whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." Id. at 2093–94. If the statute does not apply extraterritorially, at the second step of the inquiry a court must determine "whether the case involves a domestic application of the statute." Id. at 2094. Courts make this determination by identifying "the statute's 'focus'," i.e., the "'focus' of Congressional concern," and asking whether conduct relevant to that focus occurred in the United States. Id. at 2100–01 (citing Morrison, 561 U.S. at 266). "Although the Supreme Court has referred to th[e] extraterritoriality analysis as a 'two-step framework,'" the Second Circuit has made clear that "these 'steps' need not be sequential," and that the first step, determining the extraterritorial reach of a statute, "is of no moment when a case is truly a domestic matter" under the second step of the analysis. Picard, 917 F.3d at 95 n.6; see also United States v. Hussain, 972 F.3d 1138, 1142–43 (9th Cir. 2020) (turning to second step when analyzing extraterritoriality of wire fraud). Accordingly, the government focuses here only on the second step of the extraterritoriality analysis.

"The focus of a statute is the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate."

WesternGeco LLC v. ION Geophysical Corp., 138 S. Ct. 2129, 2137 (2018) (internal quotation marks and alterations omitted).  If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.  RJR Nabisco, 136 S. Ct. at 2101; see also Morrison, 561 U.S. at 267–70 (holding that "focus" of the Exchange Act is upon "purchases and sales of securities in the United States"); Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 69 (2d Cir. 2012) ("[T]he transactional test announced in Morrison does not require that each defendant alleged to be involved in a fraudulent scheme engage in conduct in the United States.").

In Bascuñán, the Second Circuit held that a civil RICO complaint alleging predicate schemes by a citizen-resident of Chile to defraud another citizen-resident of Chile using mail and wire facilities of the United States alleged domestic violations of the mail and wire fraud statutes.  Bascunan v. Elsaca, 927 F.3d 108, 123 (2d Cir. 2019).  Bascuñán further clarified that the focus of the mail and wire fraud statutes is "the use of the mail or wires in furtherance of a scheme to defraud."  Id. at 122.  Although use of the wires must be more than "merely incidental" to the scheme, Bascuñán made clear that sufficient domestic conduct is alleged when "the use of the mail or wires [is] a core component of the scheme to defraud."  Id. at 124.  Additionally, the Second Circuit held in Napout that conspiracy charges similar to those at issue here—in which the defendants were physically located abroad but relied on use of the U.S. wires to commit their crimes—alleged domestic violations of the wire fraud statute.  963 F.3d at 181 (observing that, among other domestic contacts, "in the relatively straightforward quid pro quo transactions underlying these schemes, the quid was provided through the use of

U.S. wires"); see also United States v. Hawit, No. 15-CR-252 (PKC), 2017 WL 663542, at *6

(E.D.N.Y. Feb. 17, 2017) (observing that, although the "fraud scheme[] extended beyond the

United States—and may very well ha[ve] had [its] center[] of gravity outside the United States—

the scheme['s] contacts with the United States were substantial, and the U.S. wires were an

integral part of the overall scheme[].").

       The holdings of Bascuñán and Napout were consistent with a long line of

precedents holding that "the purpose of the [wire fraud] statute . . . [is] to prevent the use of [U.S.

wires] in furtherance of fraudulent enterprises.'" United States v. Kim, 246 F.3d 186, 191 (2d

Cir. 2001) (quoting United States v. Trapilo, 130 F.3d 547, 553 (2d Cir. 1997)).  In Kim, the

defendant – an employee of the United Nations working in Croatia – approved fraudulent

invoices, which were transmitted to New York and paid from a New York bank account.  See

246 F.3d at 188.  In rejecting the defendant's argument that his prosecution relied on an

extraterritorial application of the statute, the Court concluded that Congress "clearly intended"

for the wire fraud statute to cover frauds involving foreign conduct.  See id.; see also

Pasquantino v. United States, 544 U.S. 349, 371 (2005) (stating that the use of "U.S. interstate

wires to execute a scheme to defraud" is the "domestic element of [the defendants'] conduct . . .

[and] what the Government is punishing"); United States v. DeFiore, 720 F.2d 757, 761 (2d Cir.

1983) (holding that wire fraud statute's "focus is upon the misuse of the wires" and "Congress

clearly has the authority to regulate such misuse" (internal quotation marks omitted)); United

States v. Hayes, 118 F. Supp. 3d 620, 628 (S.D.N.Y. 2015) (finding domestic application of the

wire fraud statute and stating that defendant's "argument that the location of the wires is

'ancillary' to the location of the scheme to defraud must, therefore, be rejected because the

location of the wires is the Court's primary concern").

In addition, the Due Process Clause of the Fifth Amendment imposes limits on the United States' authority to enforce its laws beyond its territorial boundaries.  See, e.g., United States v. Yousef, 327 F.3d 56, 86 (2d Cir. 2003).  However, all that is required by the Due Process Clause is "a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair."  Id. at 258 (quoting United States v. Al Kassar, 660 F.3d 108, 118 (2d Cir. 2011).  In cases involving "non-citizens acting entirely abroad, [such a] nexus exists when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests."  Al Kassar, 660 F.3d at 118; cf. United States v. Ali, 718 F.3d 929, 946 (D.C. Cir. 2013) (noting that Al Kassar "only tells us when such a nexus exists, not when it is absent"); see also United States v. Yousef, 750 F.3d 254, 262 (2d Cir. 2014) (holding that due process requires a "territorial nexus").

B.   The Criminal Copyright Count Alleges Domestic Conduct and a Sufficient Nexus with the United States

The Indictment alleges domestic conduct in connection with the criminal copyright count, therefore, the defendants' Motion to dismiss Count One on this basis should be denied.  The defendants claim that there is "no such thing as an international copyright" so the criminal copyright statute cannot be applied to the defendants' foreign conduct.  Def. Mot. at 10.  Essentially, their assertion is that because the defendants "neither resided nor traveled to the United States" their "alleged activities tying them to Z-Library took place abroad" and thus, they cannot be prosecuted in the United States for criminal copyright.  Id.  This is wrong on the law and the facts.[2]

_____

[2] The defendants make several incorrect factual assertions in their Motion that are inconsistent with the language of the Indictment and the government's theory of the case.  For example, the defendants claim that there are no facts to support the legal conclusion that they reproduced or distributed copyrighted materials within the United States.  Def. Mot. at 10.  The government disputes these and other similar assertions and will offer contrary evidence at trial.

First, the Indictment plainly alleges domestic conduct in connection with the criminal copyright count. For example, it alleges that the defendants' conduct took place "within the Eastern District of New York" and that through their conduct they received, inter alia, United States currency valued at over $2,500. ECF No. 14 at ¶ 1 ("Indict.").

Second, at trial, the government will prove that the defendants accessed computer servers throughout the United States and used them for the purpose of committing their copyright infringements by making copyright protected works of people from within the Eastern District of New York, available for free to people within the Eastern District of New York and elsewhere in the United States for commercial advantage and private financial gain through their operation and control of Z-Library. At trial, the government will prove that the defendants used servers in the United States to fuel their criminal copyright scheme. Without access to the computing power, bandwidth and other functions of these U.S.-based servers, the defendants could not have carried out their criminal copyright scheme. The copyrighted content of U.S.-based authors and publishers—many of whom are based in New York—was the lifeblood of the defendants' scheme. Id. at ¶ 2. And U.S.-based Z-Library customers, including those in the Eastern District of New York, uploaded and downloaded the copyrighted works to Z-Library. Indeed, law enforcement agents were able to obtain copyright protected works from Z-Library in New York. See ECF No. 1 at ¶ 22 ("Compl.").

The allegations in the Indictment are more than sufficient to show that "conduct relevant to [17 U.S.C. § 506(a)(1)(A)'s] focus occurred in the United States." RJR Nabisco, Inc., 136 S. Ct. at 2101. Indeed, "[i]f domestic conduct satisfies every essential element to prove a violation of a United States statute that does not apply extraterritorially, that statute is violated even if some further conduct contributing to the violation occurred outside the United States."

16

United States v. Hawit, No. 15 CR 252 (PKC), 2017 WL 663542, at *4 (E.D.N.Y. Feb. 17, 2017)

(quoting European Cmty. v. RJR Nabisco, Inc., 764 F.3d 129, 142 (2d Cir. 2014), rev'd and

remanded on other grounds, 136 S. Ct. 2090 (2016)).

    For all of the same reasons, the allegations regarding criminal copyright are

sufficient to show a nexus to the United States that satisfies due process.  Given the extensive use

of U.S.-based servers in connection with the scheme, and the numerous U.S.-based victims of the

scheme, the defendants cannot credibly argue that the application of U.S. laws would "be

arbitrary or fundamentally unfair" or that they did not understand that their conduct "would

subject [them] to prosecution somewhere" when they used servers to operate Z-Library in the

United States, and had Z-Library customers and victims also located in the United States.  Al

Kassar, 660 F.3d at 119.  Furthermore, "[i]f at the close of the Government's case, the

Government has failed to prove the required jurisdictional nexus, [the defendants] may renew

[their] as-applied due process challenge at that time."  United States v. Ahmed, 94 F. Supp. 3d

394, 410 (E.D.N.Y. 2015).

  C.  The Wire Fraud and Money Laundering Counts Allege Domestic Conduct

    The Indictment alleges domestic conduct in connection with the wire fraud and

money laundering counts; therefore, the defendants' Motion to dismiss Counts Two through Five

on that basis should be denied.  The defendants argue that Counts Two through Four, alleging

Wire Fraud Conspiracy and Wire Fraud, do not apply extraterritorially.  Def. Mot. at 11–12.  The

defendants also argue that, while the money laundering statute provides for extraterritorial

application under certain limited circumstances, it does not apply here because there are no facts

that show the defendants' conduct took place in the United States.  Id. at 12–13.  The defendants'

Motion fails because the Indictment does not allege conduct that is solely extraterritorial in

nature, but rather alleges several types of domestic conduct in connection with all the wire fraud and money laundering counts.

First, the Indictment plainly alleges substantial domestic conduct in connection with the wire fraud and money laundering counts. For example, the Indictment alleges that the defendants' conduct took place "within the Eastern District of New York," within the "District of New Jersey," and "within the Northern District of California." Indict. ¶¶ 2, 3, 5.[3] Specifically, it alleges that Z-Library accounts sent emails to copyright owners within the United States from outside thereof. Id. Further, the Complaint discussed copyright owners being located within the Eastern District of New York and elsewhere. See Compl. ¶ 2.

Second, at trial, the government expects the evidence to prove that the defendants transmitted and caused to be transmitted emails to copyright owners within the Eastern District of New York, the District of New Jersey, and the Northern District of California and elsewhere in the United States in furtherance of their criminal scheme. Additionally, as discussed above, the government expects to also prove at trial that the defendants accessed multiple servers in the United States. The evidence will show that U.S.-based servers hosted websites through which the defendants were able to maintain their criminal scheme i.e., the operation of Z-Library. These websites were the medium through which the defendants were able to obtain and facilitate

---

[3] The Motion does not address the out-of-venue counts because they are new to the Indictment. Notably, the government frequently charges out-of-venue counts as part of a large, multi-count indictment. See, e.g., United States v. Hawit, 15-cr-252 (E.D.N.Y.). As discussed further below, upon extradition to the Eastern District of New York, the defendants may choose to waive venue on the out-of-venue counts and proceed to trial on all counts in the Eastern District of New York, or those counts may be severed and the defendants can face trial on those counts in the respective alleged districts. See United States v. Calderon, 243 F.3d 587, 590 (2d Cir. 2001); Cf. United States v. Boney, 572 F.2d 397, 401 n. 6 (2d Cir.1978) ("We can understand why counsel did not attack the venue, for that would have resulted simply in a trial in [another district court].)

money transfers for Z-Library as a result of and to fuel their fraudulent actions.  Further, the

defendants made payments to companies in the United States to allow for Z-Library's data to be

maintained at hosting servers located in the United States.  Some of those payments were routed

through a U.S. company that facilitates online payments.  This was done to launder the proceeds

and either route them back to the defendants abroad or to pay U.S. companies that maintained the

servers that the defendants used to operate Z-Library.  These facts demonstrate "significantly

more than an incidental or minimal use of U.S. wires in furtherance of otherwise foreign

schemes to defraud." Hawit, 2017 WL 663542, at *6 (denying motion to dismiss wire fraud

counts in FIFA indictment where "the alleged fraud schemes extended beyond the United

States—and may very well have had their centers of gravity outside the United States—but the

schemes' contacts with the United States were substantial, and the U.S. wires were an integral

part of the overall schemes.").

        For all of the same reasons, the allegations regarding wire fraud and money

laundering are sufficient to show a nexus to the United States that satisfies due process.  Al

Kassar, 660 F.3d at 119.

III.     THE DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A PRIMA
        FACIE CASE FAILS

        The Indictment sufficiently pleaded the elements of each offense; therefore, the

defendants' Motion to dismiss for failing to state an offense with specificity should be denied.

    A.     Applicable Law

        "An indictment returned by a legally constituted and unbiased grand jury, . . . if

valid on its face, is enough to call for trial of the charge on the merits." Costello v. United

States, 350 U.S. 359, 363 (1956).  Accordingly, motions to dismiss indictments are disfavored,

and must satisfy a high standard.  See United States v. de la Pava, 268 F.3d 157, 165 (2d Cir.

2001) ("The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." (citation omitted)); United States v. Kelly, 462 F. Supp. 3d 191, 195 (E.D.N.Y. 2020) (same); United States v. Nunez, 375 F. Supp. 3d 232, 238 (E.D.N.Y. 2018) ("A motion to dismiss an indictment must satisfy a high standard." (citation omitted)); United States v. Kerik, 615 F. Supp. 2d 256, 262 (S.D.N.Y. 2009) (same).

An "indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). The Federal Rules of Criminal Procedure require only that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Second Circuit has made clear that an indictment satisfies the requirements of Rule 7(c) if it "do[es] little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (citation omitted). For example, in Yannotti, the Second Circuit upheld an indictment charging a racketeering conspiracy that the defendant claimed, "included overly broad temporal and geographic spans," did not detail the alleged "conspiratorial conduct," and did not identify the alleged co-conspirators. Id. In upholding the indictment, which merely tracked the language of the statute, the court concluded that the "contested portions of the [indictment] provided Yannotti with sufficient notice of the allegations . . . so that he could defend against those allegations in the instant prosecution and in any future prosecutions." Id.

On a motion to dismiss, the court must accept all factual allegations in an indictment as true. See Nunez, 375 F. Supp. 3d at 238. Moreover, "the pleading standard for an indictment is entirely separate from the evidentiary standard at trial," and courts "do not evaluate the adequacy of the facts to satisfy the elements of the charged offense" until after trial. United States v. Wedd, 993 F.3d 104, 120–21 (2d Cir. 2021). The indictment need not "detail the specific facts of the underlying scheme[]" to survive a Rule 12 motion. Id. at 121. Thus, a defendant's factual arguments challenging facially valid pleadings do not justify pre-trial dismissal of the indictment. The government is entitled to marshal and present its evidence at trial and, if warranted, have its sufficiency tested by a motion for judgment of acquittal. Kelly, 462 F. Supp. 3d at 197; see also United States v. Perez, 575 F.3d 164, 166 (2d Cir. 2009) ("Defendants . . . had no basis to challenge the sufficiency of the indictment before trial because it met the basic pleading requirements and was valid on its face."); United States v. Laurent, 861 F. Supp. 2d 71, 110 (E.D.N.Y. 2011) ("A technically sufficient indictment thus 'is not subject to dismissal on the basis of factual questions, the resolution of which must await trial.'" (quoting Alfonso, 143 F.3d at 776–77)); United States v. Reale, No. 96-CR-1069 (DAB), 1997 WL 580778, at *7 (S.D.N.Y. Sept. 17, 1997) ("Defendants confuse standards of pleading with standards of proof."); United States v. Gambino, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992) ("[D]efendant may not challenge a facially valid indictment prior to trial for insufficient evidence.").

When determining whether a count sufficiently alleges a violation, the indictment should be read "in its entirety." United States v. Hernandez, 980 F.2d 868, 871 (2d Cir. 1992). Additionally, the indictment "must be read to include facts which are necessarily implied by the specific allegations made." United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002). Both the

21

Second Circuit and this Court have repeatedly emphasized that the level of factual detail required is very minimal.  See, e.g., United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) ("When the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy, this court has repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity." (quotation omitted, emphasis added)); United States v. Coffey, 361 F. Supp. 2d 102, 111 (E.D.N.Y. 2005) ("Generally, the indictment does not have to specify evidence or details of how the offense was committed.").

On a pretrial motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, the allegations of the indictment must be taken as true.  See Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952); United States v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985).  A defendant must wait until after the close of the government's case-in-chief at trial or after the jury's verdict before contesting the sufficiency of the evidence.  See Fed. R. Crim. P. 29; see also, e.g., United States v. Elson, 968 F. Supp. 900, 905 (S.D.N.Y. 1997) ("[I]t is well established that an Indictment that is valid on its face may not be dismissed on the ground that it is based on inadequate or insufficient evidence.").

A motion to dismiss a properly pleaded indictment "confuses standards of pleading with standards of proof."  United States v. Elder, No. 18-CR-92 (WFK), 2021 WL 4129153, at *3 (E.D.N.Y. Aug. 25, 2021), on reconsideration, No. 18-CR-92 (WFK), 2022 WL 16837124 (E.D.N.Y. Nov. 9, 2022); United States v. Reale, 96-CR-1069, 1997 WL 580778, at *7 (S.D.N.Y. Sept. 17, 1997); see also, e.g., United States v. Perez, 575 F.3d 164, 166 (2d Cir. 2009) ("The Defendants, however, had no basis to challenge the sufficiency of the indictment before trial because it met the basic pleading requirements and was valid on its face."); United States v. Gotti, No. 02-CR-743 (RCC), 2004 WL 32858, at *2 (S.D.N.Y. Jan. 6, 2004)

("Defendants will have other opportunities to contest the sufficiency of the Government's evidence, but a pretrial motion to dismiss part of the indictment is not the time nor the proper occasion."); United States v. Cassese, 273 F. Supp. 2d 481, 484–85 (S.D.N.Y. 2003) (same and collecting cases).

> B.   Discussion

> 1.   Count One is Properly Pleaded

Count One charges a violation of 17 U.S.C. § 506(a)(1)(A).  Section 506(a)(1)(A) provides:

> Any person who willfully infringes a copyright . . .  if the infringement was committed—for purposes of commercial advantage or private financial gain [shall be guilty of a crime].

Count One tracks the statutory language and required elements, charging that the defendants, "did knowingly and willfully infringe a copyright for purposes of commercial advantage and private financial gain, which offense involved the reproduction and distribution, including by electronic means, during a 180-day period of ten or more copies of one or more copyrighted works having a total retail value of more than $2,500."  Indict. ¶ 1; see also  United States v. Stolon, 555 F. Supp. 238, 239 (E.D.N.Y. 1983) ("Section 506(a) of Title 17 of the United States Code provides that criminal copyright infringement occurs when a person "'infringes a copyright willfully and for purposes of commercial advantage or private financial gain.'").  Having thus pleaded the elements for this on Count One, the Indictment is not subject to dismissal for failure to state a "prima facie" case for criminal copyright.  E.g., Alfonso, 143 F.3d at 776; United States v. Tairod Nathan Webster Pugh, No. 1:15-CR-00116-NGG, 2015 WL 9450598, at *6 (E.D.N.Y. Dec. 21, 2015); Stringer, 730 F.3d at 124.  The Indictment has pleaded all the required elements of criminal copyright and need not list the copyright protected works to be sufficiently pleaded for purposes of a charging instrument.

23

2.     Counts Two Through Four are Properly Pleaded

Count Two charges a violation of 18 U.S.C. § 1349.  Section 1349 provides that

"any person who attempts or conspires to commit [wire fraud shall be guilty of a crime]."

Counts Three and Four charge a violation of 18 USC § 1343.  Section 1343 provides:

> Whoever, having devised or intending to devise any scheme or
> artifice to defraud, or for obtaining money or property by means of
> false or fraudulent pretenses, representations, or promises, transmits
> or causes to be transmitted by means of wire, radio, or television
> communication in interstate or foreign commerce, any writings,
> signs, signals, pictures, or sounds for the purpose of executing such
> scheme or artifice [shall be guilty of a crime].

Count Two tracks the statutory language and required elements, charging that the

defendants, "did knowingly and intentionally conspire to devise a scheme and artifice to defraud

authors, publishers and customers, and to obtain money and property from them by means of one

or more materially false and fraudulent pretenses, representations and promises, and for the

purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means

of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and

sounds."  Indict. ¶ 2; see also United States v. Jabar, 19 F. 4th 66, 76 (2d Cir. 2021), cert. denied

sub nom. Bowers v. United States, 212 L. Ed. 2d 342, 142 S. Ct. 1396 (2022) ("Conspiracy to

commit wire fraud requires merely the agreement between defendants to engage in the foregoing

and an overt act by one of the conspirators in furtherance of the conspiracy.").

Counts Three and Four also track the statutory language and required elements,

charging that the defendants, "did knowingly and intentionally devise a scheme and artifice to

defraud authors, publishers and customers, and to obtain money and property from them by

means of one or more materially false and fraudulent pretenses, representations and promises.

For the purpose of executing such scheme and artifice, the defendants . . . did transmit and cause

to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds" on July 4, 2021 and July 17, 2021 in emails from Z-Library accounts to copyright owners.  Indict. ¶¶ 3–4; see also United States v. Stolon, 555 F. Supp. 238, 239 (E.D.N.Y. 1983), 428 F.3d 504, 508 (3d Cir. 2005) ("The elements of wire fraud are: '(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the wires to further the scheme.'").  The language in Counts Three and Four satisfies the requirements that the indictment allege (1) a scheme to defraud or obtain money or property through false pretenses and (2) money or property as the object of the scheme.

Counts Three and Four each articulate the final element of wire fraud: use of the wires to further the scheme.  Each of these counts lists an email from outside the United States to locations within the United States that was made or received in furtherance of the scheme to defraud and the relevant defendants that made, received, or caused the emails to be sent.  See Indict. ¶ 4.  Emails are wire communications within the meaning of the statute, regardless of whether the defendant or a third party initiated the email.  United States v. Hancock, 268 F.2d 205, 205 (2d Cir. 1959).  Each count properly links the use of the wires to the fraudulent scheme in the operation of Z-Library by the defendants, stating that each email at issue was made "to defraud authors, publishers and customers, and to obtain money and property from them." Indict. ¶¶ 2, 3, 5.

### 3.   Count Five is Properly Pleaded

Count Five charges a violation of 18 U.S.C. § 1956(h).  Section 1956(h) provides:

> Any person who knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, [conspires to] conduct or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity [shall be guilty of a crime].

Count Five tracks the statutory language and required elements, charging that the defendants, "did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: deposits, withdrawals and transfers of funds and monetary instruments, which transactions in fact involved the proceeds of specified unlawful activity, to wit: criminal copyright, as alleged in Count One, in violation of Title 17, United States Code, Section 506(a)(1)(A), and wire fraud, as alleged in Counts Three and Four, in violation of Title 18, United States Code, Section 1343 (collectively, the 'Specified Unlawful Activities'), knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, with intent to promote the carrying on of the Specified Unlawful Activities."  Indict. ¶ 7; see also  United States v. Zemlyansky, 908 F.3d 1, 10 (2d Cir. 2018) (The government must allege "(1) an agreement between at least two people to commit [money laundering], and (2) the defendant's knowing engagement in the conspiracy with the specific intent that" money laundering be committed.).

Here, the Indictment alleges that the defendants "did knowingly and intentionally conspire to" launder money.  Indict. ¶ 7.  Moreover, the defendants are alleged to possess "the intent to promote the carrying on of specified unlawful activity: criminal copyright and wire fraud.  Id.  The pleadings "track the language" of 18 U.S.C. § 1956(a)(1)(A)'s intent requirement verbatim, as is permitted by the law.  Yannotti, 541 F.3d at 127.  Rule 12 does not require any additional "specific facts of the underlying scheme[]."  Wedd, 993 F.3d at 121.

    4.    The Defendants' Remaining Arguments Regarding
           the Government's Wire Fraud Counts Fail

The defendants' remaining arguments in support of their Motion for failure to state an offense regarding the wire fraud counts either ignore the language of the Indictment or

26

require the Court to address "factual questions, the resolution of which must await trial." United States v. Laurent, 861 F. Supp. 2d 71, 110 (E.D.N.Y. 2011) (quoting Alfonso at 776–77).

       For example, the defendants claim that "a copyright violation involving the use of wires does not automatically transform in[to] a wire fraud offense," there is no scheme to defraud, there are no false pretenses, and there was no deprivation of a right. Def. Mot. at 13–19. The defendants are wrong. The Indictment plainly alleges a wire fraud scheme as discussed supra § III (B)(2). Indict. ¶¶ 2–4. Counts Two through Four also allege that the defendants "did knowingly and intentionally conspire to device a scheme and artifice to defraud" and that they "did knowingly and intentionally devise a scheme and artifice to defraud" authors and publishers (and, as added in the Indictment, customers).[4] Indict. ¶¶ 2–4. Significantly, while the Indictment

---

[4] In addition to defrauding authors and publishers, the defendants also, as now alleged in the Indictment, fraudulently induced customers to make payments to Z-Library for copyrighted works. Z-Library held itself out to be a legitimate, legal entity: an online library. In reliance on this misrepresentation, certain customers made donations to Z-Library, money which the defendants, in turn, used for personal expenses. The Second Circuit has "concluded that even [where] the victim received the benefit of its bargain under the terms of the parties' contract," fraudulent intent may still be established if "the defendant's misrepresentations implicated an essential element of the bargain." United States v. Johnson, 945 F.3d 606, 613 (2d Cir. 2019). Where the allegedly "false representations are directed to the quality, adequacy or price of the goods themselves," a customer "is made to bargain without facts obviously essential in deciding whether to enter the bargain" and fraudulent intent may be "apparent." Id. A decision to dismiss the wire fraud counts on the basis that they were not obtained by false pretenses as the defendants allege (Def. Mot. at 17), would be improper. United States v. Runner, No. 18-CR-0578 (JS), 2023 WL 2429610, at *10 (E.D.N.Y. Mar. 9, 2023) ("for the Court to issue such a 'pretrial factual finding [against the Government] [would] constitute[ ] a premature adjudication as to the sufficiency of the . . . evidence and [be] improper at the Rule 12(b) stage.'"); United States v. Sampson, 898 F.3d 270, 278 (2d Cir. 2018). "Once again, the Court will not usurp the role and function of the jury to decide issues of Defendant's intent that involve dispositive evidentiary questions that are more appropriately determined at trial." Runner, 2023 WL 2429610, at *10 (citing United States v. Knox, 396 U.S. 77, 83 & n.7 (1969)); see also United States v. Wilson, 26 F.3d 142, 159 (D.C. Cir. 1994) ("[A] decision on a [Rule 12] motion should be deferred[ ] if disposing of the motion involves deciding issues of fact that are inevitably bound up with evidence about the alleged offense itself."); United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986) ("If [a] pretrial claim is 'substantially founded upon and intertwined with' evidence concerning the alleged offense, the motion falls within the

mentions who was defrauded, it does not state that the fraud is simply copyright infringement. (It is not.) The government will present evidence at trial to prove that copyright owners and customers were defrauded of (significant amounts) money and property by the defendants.

The wire fraud statute hinges substantively on fraud and does not depend on whether the property involved is tangible or intangible. Indeed, this point was underscored in United States v. Wang, where the statute applied to the transmission by wire of computer files containing confidential source code, and the court found that the requirement of fraud does not restrict the statute to fraud intended to acquire money or goods, but covers fraud to deprive another of the intangible right of intangible value. 898 F. Supp. 758, 760–61 (D. Colo. 1995) (holding computer program is property and infringement may be prosecuted under both Copyright Act and wire fraud statute). Similarly, in Cooper v. United States, the indictment alleged that petitioners criminally infringed the copyright in certain sound recordings and the wire fraud violations alleged that petitioners used the telephone system in furtherance of a scheme to defraud copyright owners, sound recording companies, recording artists and musicians, the public and other individuals and businesses dealing in and purchasing phonorecords. 639 F. Supp. 176 (M.D. Fla. 1986). The court affirmed a conviction wherein there was a scheme to fraudulently deprive "copyright owners, sound recording companies and recording artists and musicians" of their rightful income and royalties and to fraudulently represent to the public and to others that certain sound recordings "were produced by the manufacturers identified on the labels of said products" when, in fact, the products were not legitimately or lawfully reproduced. Id. at 180 (holding that using wires to distribute thousands

---

province of the ultimate finder of fact and must be deferred." (quoting United States v. Williams, 644 F.2d 950, 953 (2d Cir. 1981))).

of pirated sound recordings is a crime under 18 U.S.C. § 1343); United States v. Manzer, 69 F.3d 222, 230 (8th Cir. 1995) (affirming a conviction based on selling unauthorized satellite decryption equipment by mail and the telephone); United States v. Shultz, 482 F.2d 1179, 1180–82 (6th Cir. 1973) (upholding a conviction under 18 U.S.C. §§ 1341, 1343 for selling counterfeit sound recordings over the mail).

The defendants rely on four distinguishable cases to support their claims that the Indictment fails to charge the defendants with engaging in a scheme to defraud victims of their money or property.  First, the defendants rely on Ciminelli v. United States, in which the Court held that "the right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest.  Accordingly, the right-to-control theory cannot form the basis for a conviction under the federal fraud statutes."  598 U.S. 306 (2023).  Ciminelli is inapposite.  In that case, the Court found that there is no right to economic information.  By contrast, here, courts in the Second Circuit have specifically found that people have property rights in their intellectual property.  Roth v. Pritikin, 710 F.2d 934, 939 (2d Cir. 1983); see United States v. Martignon, 492 F.3d 140, 152 (2d Cir. 2007).  Therefore, defrauding a person of their copyright, among other actions, would necessarily deprive them of property.

Second, the Motion ignores Carpenter v. United States, which is directly on point, and instead relies on Dowling v. United States—in which the Court held that merely transporting copies of copyrighted materials does not equate to theft, conversion, or fraud—to argue that arguing that Dowling precludes the application of the wire fraud statute to conduct that involves copyrights.  473 U.S. 207, 217 (1985).  The Supreme Court's decision in Dowling, however, dealt only with the National Stolen Property Act, 18 U.S.C. § 2314.  The Section 1341 convictions for mail fraud in that case were affirmed by the Court of Appeals and were not at

29

issue in the Supreme Court.  United States v. Dowling, 739 F.2d 1445, 1447–49 (9th Cir.

1984) ("If the government can prove the requisite elements to support a mail fraud conviction in

relation to Dowling's activities, we find nothing in the Copyright Act to prohibit prosecution of

those acts under the Mail Fraud statute."), reversed on other counts, 473 U.S. at 211 &

n.1 ("Only the § 2314 counts concern us here."); see Cooper v. United States, 639 F. Supp. 176,

179–80 (M.D. Fla. 1986) (upholding wire fraud conviction for scheme to defraud copyright

owners after Dowling, ruling that "Dowling cannot be interpreted so as to remove from the

reaches of the wire fraud statute a scheme to defraud copyright owners, musicians and the public

from the protections afforded by the copyright laws of this country").  In Carpenter, the Court

held that confidential business information has long been recognized as "property" and its

intangible nature does not render it any less "property" protected by the mail and wire fraud

statutes.  Carpenter v. United States, 484 U.S. 19, 25–26 (1987).  However, as Carpenter

explicitly held, a defendant "cannot successfully contend . . . that a scheme to defraud requires a

monetary loss, such as giving the [confidential] information to a competitor; it is sufficient that

[the victim] has been deprived of its right to the exclusive use of the [confidential] information,

for exclusivity is an important aspect of . . . most property."  Carpenter, 484 U.S. at 26–27.

Thus, in Carpenter, like here, a deprivation of an intangible right, is a deprivation of property.

   Third, the defendants rely upon Sekhar v. United States, in which the Court held

that an attempt to coerce another into recommending that his employer enter into a non-binding

commitment to invest in his own company did not constitute "obtaining property" as the

recommendation was not a transferable object of value.  570 U.S. 729 (2013).  Sekhar has little

relevance to the case at hand.  See id. at 2729 ("I do not suggest that the concepts of property

under the mail fraud statute and the Hobbs Act are necessarily the same.") (Alito, J. concurring

in judgment).  Other courts have reached similar conclusions.  See e.g., United States v. Clark, 593 Fed. App'x 53, 54 n. 1 (2d Cir. 2014) (upholding a wire fraud conviction and classifying petitioner's reliance on Sekhar as "misplaced" since, there, the Court "analyzed the scope of the concept of 'property' for purposes of the Hobbs Act, not the wire fraud statute."); United States v. Finazzo, No. 10-CR-457 (RRM) (RML), 2014 WL 3818628, at *34 (E.D.N.Y. Aug. 1, 2014) (declining to apply the Sekhar property definition to property as used in fraud statutes, including the federal mail (18 U .S.C. § 1341) and wire fraud (18 U.S.C. § 1343) statutes).

Fourth, the defendants rely upon United States v. LaMacchia, in which the Court held that the government cannot charge mail or wire fraud as a substitute for a criminal copyright charge in the absence of evidence of any misrepresentation or scheme to defraud.  871 F. Supp. 535 (D. Mass. 1994).  In LaMacchia, the defendant set up an electronic bulletin board where correspondents could swap popular software applications and computer games without paying the required licensing fees or royalties to the respective software manufacturers and vendors.  Id. at 536.  As a result of the worldwide traffic that his electronic bulletin board generated, the defendant was charged with wire fraud under 18 U.S.C. § 1343.  Id.  The district court dismissed the case, holding that the defendant could not be criminally prosecuted for conduct that merely amounted to copyright infringement.  Id. at 545.  In contrast, here, the Indictment alleges conduct that is more than simply copyright infringement.  Rather, it alleges that the defendants engaged in a vast scheme to defraud authors, publishers and customers and used wires in furtherance of that scheme both in the United States and abroad.  The copyright owners are identified victims of the fraud; but the allegations of fraud are not limited to criminal copyright.

The defendants next argue that the affidavit submitted in connection with the request to the Argentina to extradite the defendants is insufficient to prove the government's case

with respect to the wire fraud counts.  The defendants' complaints about the wire fraud counts appears to be temporal.   First, they note that in the extradition affidavit, the government alleges that "copyrighted materials referenced in the emails have been previously uploaded to a Z-Library website" and since the books were allegedly available through the website irrespective of the emails, there was no property that could have been obtained by means of wires.  Def. Mot. at 18.  Second, the defendants state that the emails were simple a "post-factum correspondence incidental to a copyright infringement issue" and there is no "scheme to defraud for obtaining money or property."  Id. at 18–19.   These arguments mischaracterize the extradition paperwork—which the Court cannot rely on to decide this Motion in any event—and ignores the operative charging instrument and the plain language of the statute.

The wire fraud statute criminalizes the transmission of any interstate or foreign wire communication in furtherance of a scheme to defraud someone.  18 U.S.C. § 1343.  The wire communication itself need not be fraudulent so long as it is in furtherance of a scheme to defraud.  Williams v. Affinion Grp., LLC, 889 F.3d 116, 125 (2d Cir. 2018); United States v. Avenatti, No. 19-CR-374 (JMF), 2022 WL 305145, at *14 (S.D.N.Y. Feb. 1, 2022) ("The wired communication need not itself be fraudulent. Indeed, it may be completely innocent as long as it was made in furtherance of the fraudulent scheme.").  The Indictment here alleges that the defendants executed a scheme to defraud victim authors, publishers and customers out of money or property.  Indict. ¶¶ 3–4.  As relevant to these counts, the defendants defrauded specific copyright owners by illegally making their property available to readers online for free through Z-Library.  The emails alleged in the wire fraud counts were sent from Z-Library to defrauded copyright owners within the time period of the ongoing scheme.  The timing of these emails— whether sent before or after the victims' property was uploaded to Z-Library—is irrelevant so

long as they were transmitted in furtherance of a scheme to defraud. These emails clearly were, and are so alleged in the Indictment.

To the extent the defendants believe that the government cannot prove the fraudulent acts at trial, they may make that argument to the jury once they submit to this Court's jurisdiction. However, the factual allegations in the Indictment are more than sufficient to allege wire fraud. E.g., Laurent, 861 F. Supp. 2d at 110.

IV.    THE GOVERNMENT PROPERLY ALLEGED VENUE FOR THE INSTANT PROSECUTION

The Indictment properly alleged venue for each count in the Indictment, and the defendants' Motion based on venue should be denied. In the alternative, the Court should hold its decision in abeyance until the defendants appear before this Court and have determined whether they want to waive venue as to Counts Three and Four. If the defendants choose not to waive venue, the government will not oppose the Court's dismissal of those Counts without prejudice, so the government may bring those two charges and try those cases in the appropriate districts.[5]

A.    Applicable Law

At trial, the Government bears the burden of proving venue by a preponderance of the evidence. United States v. Lange, 834 F.3d 58, 69 (2d Cir. 2016). Venue may be proved by circumstantial evidence. Id. (citing United States v. Potamitis, 739 F.2d 784, 791 (2d Cir. 1984)). If the issue of venue is "squarely interposed" by the defense, the question must be submitted to a jury. United States v. Sutton, 13 F.3d 595, 598 (2d Cir. 1994) (quoting United

---

[5] Such a determination should not be made until the defendants appear in this Court to answer the charges in the Indictment, for all of the reasons discussed in § I(C) above regarding the fugitive disentitlement doctrine.

States v. Grammatikos, 633 F.2d 1013, 1022 (2d Cir. 1980)).  Courts in the Second Circuit

typically defer until trial a ruling on the propriety of the prosecution's choice of venue.  United

States v. Ng, No. 18-CR-538 (MKB), Dkt. No. 84 at *42–43 (E.D.N.Y. Sept. 10, 2021) (citing

cases).

        When a federal statute defining an offense does not specify how to determine the

location where the crime was committed, "[t]he locus delicti must be determined from the nature

of the crime alleged and the location of the act or acts constituting it."  United States v. Ramirez,

420 F.3d 134, 138 (2d Cir. 2005) (citing United States v. Rodriguez-Moreno, 526 U.S. 275

(1999)).  To carry out that task, a court must "initially identify the conduct constituting the

offense," and then "discern the location of the commission of the criminal acts."  Ramirez, 420

F.3d at 138 (citing Rodriguez–Moreno, 526 U.S. at 279 (noting that it is helpful to identify the

"verbs" of a statute)).  Venue is proper only where the acts constituting the offense—the crime's

"essential conduct elements"—took place.  Id.; see also United States v. Smith, 198 F.3d 377,

384 (2d Cir. 1999).

        If a crime consists of a single, non-continuing act, the proper venue is clear: the

crime "is 'committed' in the district where the act is performed."  Ramirez, 420 F.3d at 139

(citing United States v. Beech–Nut Nutrition Corp., 871 F.2d 1181, 1188 (2d Cir. 1989)).  In

other cases, however, the Constitution does not command a single exclusive venue for

prosecution.  United States v. Reed, 773 F.2d 477, 480 (2d Cir. 1985).  Thus, where "the acts

constituting the crime and the nature of the crime charged implicate more than one location," id.,

venue is properly laid in any of the districts where an essential element of the crime took place.

See Rodriguez–Moreno, 526 U.S. at 281 ("[W]here a crime consists of distinct parts which have

different localities [,] the whole may be tried where any part can be proved to have been done.")

(quoting <u>United States v. Lombardo</u>, 241 U.S. 73, 77 (1916)).  As noted in <u>Ramirez</u>, Congress has codified the rule that continuing offenses may be prosecuted wherever a proscribed act occurs in the first paragraph of 18 U.S.C. § 3237(a):

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed.

<u>Ramirez</u>, 420 F.3d at 139.  Where an offense is continuing, venue is properly laid in "'the whole area through which force propelled by an offender operates.'"  <u>Id</u>. at 147 n.11 (quoting <u>United States v. Candella</u>, 487 F.2d 1223, 1228 (2d Cir. 1973)).  In other words, venue is proper both "in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue."  <u>United States v. Svoboda</u>, 347 F.3d 471, 482–84 (2d Cir. 2003). An act in furtherance may be "any act, innocent or illegal, as long as it is done in furtherance of the object or purpose of the conspiracy. . . . This includes not just acts by co-conspirators but also acts that the conspirators caused others to take that materially furthered the ends of the conspiracy."  <u>Lange</u>, 834 F.3d at 70 (citing <u>United States v. Royer</u>, 549 F. 3d 886, 896 (2d Cir. 2008)).

Where venue may properly lie in more than one district under a continuing offense theory, the court is further tasked with asking "whether the criminal acts in question bear 'substantial contacts' with any given venue."  <u>United States v. Saavedra</u>, 223 F.3d 85, 93 (2d Cir. 2000) (quoting <u>Reed</u>, 773 F.2d at 477).  The substantial contacts test "takes into account four main factors: (1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding." <u>Id</u>.

A.      Discussion

Venue in this case is based on the defendants' operation of Z-Library and its activities in the Eastern District of New York and elsewhere, as alleged.  As the government asserts in its various charging instruments, victims were from the Eastern District of New York, copyright protected works were made available to people within the Eastern District of New York, and the defendants possessed at least one bank account through which they laundered funds through the Eastern District of New York.  Additionally, the government alleges that two wire communications traveled in interstate and foreign commerce through, among other places, the District of New Jersey and the Northern District of California.  The operation of Z-Library and the criminal scheme related thereto and acts in furtherance of the charged conspiracies implicate proper venue in several ways, any one of which would be sufficient to defeat the defendants' argument that venue is improper in the Eastern District of New York, the District of New Jersey, and the Northern District of California.[6]

First, the government will establish that copyright-protected works were made available on Z-Library without legal authority, and that such copyrighted works were (1) owned by victims located within the Eastern District of New York, and (2) made available to customers located in the Eastern District of New York.  Additionally, the defendants' fraudulent operation of Z-Library constituted a continuing offense that the defendants participated in over time during which they engaged in numerous acts in furtherance of their criminal conduct within the Eastern District of New York.

---

[6] The defendants have not had the opportunity to address the issue of venue in the District of New Jersey and the Northern District of California for the substantive wire fraud counts because the Indictment was superseded after the Motion was filed.  The government reserves the right to respond to any such arguments.

Second, the Indictment alleges that the defendants committed wire fraud and criminal copyright in the Eastern District of New York, the District of New Jersey, and the Northern District of California and elsewhere, and that they laundered the proceeds of that "specified unlawful activity, to wit, [criminal copyright and wire fraud]."  Indict. ¶ 5.  These allegations alone are sufficient to survive a pretrial motion to dismiss because "the government only has to show that the indictment alleges facts sufficient to support venue."  See United States v. Barrett, 153 F. Supp. 3d 552, 561 n.5 (E.D.N.Y. 2015).  But in any event, the Indictment also more specifically alleges that the defendants committed criminal copyright, wire fraud conspiracy, and money laundering conspiracy within the Eastern District of New York.  Indict. ¶¶ 1, 2, 5.  The defendants' assertions that the allegations in the Indictment are insufficient to support venue in the Eastern District of New York for money laundering conspiracy are squarely foreclosed by statute and Supreme Court precedent.

Lastly, the money laundering allegations are plainly sufficient to support venue in the Eastern District of New York pursuant to the money laundering venue provision of 18 U.S.C. § 1956(i), which provides:

> (1) Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 may be brought in—
>
> > (A) any district in which the financial or monetary transaction is conducted; or
> >
> > (B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds from that district to the district where the financial or monetary transaction is conducted
>
> (2) A prosecution for an attempt or conspiracy offense under this section or section 1957 may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place.

37

In other words, Section 1956(i)(1)(B) provides that venue lies for money laundering in any district where the defendant participated in the underlying specified unlawful activity— here, the criminal copyright and wire fraud—from which the laundered proceeds were derived, as long as the defendant allegedly played a role in transferring the proceeds from that district, which includes the Eastern District of New York.  Section 1956(i)(2) extends this general rule to inchoate money laundering offenses by providing that venue is proper in "any district in which venue would lie if the completed substantive money laundering offense had been accomplished" under paragraph (1) or "any district in which an overt act in furtherance of the conspiracy was committed."  Whitfield v. United States, 543 U.S. 209, 218 (2005).

The government agrees, and the Indictment alleges, that Venue for Counts Three and Four does not lie in this District; rather, the Indictment alleges those counts were committed "in the District of New Jersey" and the "Northern District of California."  Indict. ¶¶ 3–4; cf. United States v. Novak, 443 F.3d 150, 162 (2d Cir. 2006).  The government's decision to present out-of-district counts to the grand jury gives the defendants the option of proceeding by way of a single trial on all crimes alleged by the government.  If the defendants are unwilling to waive venue, the government will pursue trial on Counts Three and Four in the courts where venue lies—and the defendants can face multiple trials regarding the same conduct.  In that case, the Court has the inherent authority to transfer the case to the appropriate districts where venue may lie.  Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993); See Sorcia v. Holder, 643 F.3d 117, 122 (4th Cir. 2011) (recognizing, in different context, that courts generally have the "inherent power to transfer cases over which they have jurisdiction but not venue"); United States v. Blackwell, 946 F.2d 1049, 1052 n.1 (4th Cir. 1991) (affirming that court has inherent authority to transfer a criminal case in certain circumstances, even where not explicitly

authorized by Rule 21(b)); United States v. Petty, No. 22-CR-49-LJV, 2022 WL 1590609, at *2 (W.D.N.Y. May 19, 2022) (same); cf. e.g., United States v. White, 590 F.3d 1210, 1212 (11th Cir. 2009) (affirming conviction after court sua sponte transferred venue to a different district). However, since the Second Circuit has never squarely addressed a district court's inherent authority to transfer a criminal case, if the court seeks to dismiss the Counts for lack of venue, the government would not object to such dismissal without prejudice. See United States v. Motz, 652 F. Supp. 2d 284, 296 (E.D.N.Y. 2009) (dismissing counts on venue grounds "without prejudice" to repleading or presentation to a grand jury in a different district). This will permit the government to seek additional indictments charging the defendants with these crimes in the other relevant districts.

<u>CONCLUSION</u>

For the reasons stated above, the defendants' Motion should be denied in its entirety.

Dated:     Brooklyn, New York
           August 14, 2023

                                    BREON PEACE
                                    United States Attorney
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201


                          By:     _____/s/_____
                                    Chand W. Edwards-Balfour
                                    Antoinette N. Rangel
                                    Assistant United States Attorneys
                                    (718) 254-7000