**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

               Plaintiff,

- against –

ANTON NAPOLSKY,                         1:22-cr-00525-NRM-CLP
also known as "Anton Napolskiy," and

VALERIIA ERMAKOVA,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


<u>**DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW**</u>
<u>**IN FURTHER SUPPORT OF  THEIR MOTION TO DISMISS THE INDICTMENT**</u>

Maria Temkin, Esq. (*pro hac vice*)
TEMKIN & ASSOCIATES, LLC
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 939-4181
Email: maria@temkinlegal.com
*Attorney for Defendant Valeriia Ermakova*

Anna V. Brown, Esq. (*pro hac vice*)
BROWN LEGAL CONSULTING, LLC
10 Rittenhouse Rd.
Frenchtown, NJ 08825
Telephone: (856) 357-4651
Email: anna@brownlegalconsulting.com
*Attorney for Defendant Anton Napolsky*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................1

REPLY ARGUMENT ......................................................................................................2

I.   DEFENDANTS ARE ENTITLED TO SEEK THE DISMISSAL OF THE
     INDICTMENT..........................................................................................................2

     A. EXTRADITION PROCEEDINGS IN ARGENTINA .........................................................2

     B. DEFENDANTS ARE NOT FUGITIVES .......................................................................3

     C. DISCRETIONARY FACTORS DO NOT FAVOR DISENTITLING DEFENDANTS................6

II.  THE INDICTMENT FAILS TO ESTABLISH DOMESTIC APPLICATION OF
     RELEVANT STATUTES AND FAILS TO STATE OFFENSES .................................8

     A. COUNT I – CRIMINAL COPYRIGHT IS DEFICIENT ....................................................8

          1.   Charging Documents Fail to Allege Domestic Criminal Copyright
               Infringing Activities By Defendants........................................................8

          2.   Copyrighted Works Are Unknown ..............................................................12

     B. COUNTS II – V ARE DEFICIENT ...........................................................................13

          1.   Charging Documents Fail to Allege Domestic Use of Wires By Defendants
               And Domestic Financial Transactions .........................................................13

          2.   Counts II (Conspiracy to Commit Wire Fraud) and Counts III and IV
               (Wire Fraud) Fail to State Offenses .............................................................16

               a.   *Wire Fraud Conspiracy and Wire Fraud Counts Against Publishers
                    and Authors Fail Because Copyrights Are Not Property Objects* ............17

               b.   *Counts II, III and IV Fail to State Offenses Against the Customers* ..........20

III. THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF VENUE.................23

CONCLUSION................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**AUTHORITIES**                                                                                          **PAGES**

### <u>CASES</u>

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 143 S. Ct. 2522 (2023)........................................12

*Bascunan v. Elsaca*, 927 F.3d 108 (2d Cir. 2019) ..................................................................14, 15

*Bd. of Governors of Fed. Res. Sys. v. Mahfouz*, 1992 U.S. Dist. LEXIS 10866
(S.D.N.Y. July 23, 1992) ...........................................................................................................5

*Carpenter v. United States*, 484 U.S. 19 (1987) .....................................................................19

*Ciminelli v. United States*, 143 S. Ct. 1121 (2023).............................................................19, 20

*Collazos v. United States*, 368 F.3d 190 (2d Cir. 2004) .........................................................5

*Cooper v. United States*, 639 F. Supp. 176 (M.D. Fla. 1986).................................................18

*Degen v. United States*, 517 U.S. 820 (1996) ......................................................................4, 6

*Estelle v. Dorrough*, 420 U.S. 534 (1975) ..............................................................................5

*Fasulo v. United States*, 272 U.S. 620 (1926) .......................................................................20

*Hanson v. Phillips*, 442 F.3d 789 (2d Cir. 2006).....................................................................5

*In re Hijazi*, 589 F.3d 401 (7th Cir. 2009) ..............................................................................6

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y. 1992).............................................................12

*Kelly v. United States*, 140 S. Ct. 1565 (2020) ......................................................................18

*Levitin v. Sony Music Ent*, 101 F. Supp. 3d 376 (S.D.N.Y. 2015)............................................8, 11

*Lewis v. United States*, 146 U.S. 370 (1892) ..........................................................................4

*McNally v. United States*, 483 U. S. 350 (1987).................................................................18-19, 20

*Molinaro v. New Jersey*, 396 U.S. 365 (1970).........................................................................4-5

*Pasquantino v. United States*, 544 U.S. 349 (2005) ...............................................................15-16

*RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016).......................................................10

*Roth v. Pritikin*, 710 F.2d 934 (2d Cir. 1983) ...........................................................18

*Sekhar v. United States*, 570 U.S. 729 (2013) .........................................................20

*State Street Global Advisors Trust Co. v. Visbal*, 431 F. Supp. 3d 322 (S.D.N.Y. 2020) ... 9-11, 12

*United States v. Abakporo*, 959 F. Supp. 2d 382 (S.D.N.Y. 2013) ...............................23

*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998) ............................................13

*United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011) .....................................12, 16

*United States v. Arnold*, 2022 U.S. Dist. LEXIS 126993 (E.D. Mich. July 18, 2022) ................22

*United States v. Bello*, 2023 U.S. Dist. LEXIS 76472 (S.D.N.Y. May 2, 2023) ...................... 4-5

*United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021) ........................................ *passim*

*United States v. Blanco*, 861 F.2d 773 (2d Cir. 1988) ..................................................5

*United States v. Buck*, 2015 U.S. Dist. LEXIS 5434 (S.D.N.Y. Jan. 9, 2015) ...........................5

*United States v. Canady*, 126 F.3d 352 (2d Cir. 1997) ................................................4

*United States v. Catino*, 735 F.2d 718 (2d Cir. 1984) ................................................5

*United States v. Clark*, 593 F. App'x 53, (2d Cir. 2014) ............................................20

*United States v. Cornelson*, 595 F. Supp. 3d 265 (S.D.N.Y. 2022)...................................3, 6, 7, 8

*United States v. D-2 Chavonne Simmons*, 2013 U.S. Dist. Lexis 158158
(E.D. Mich. 2013) ................................................................................ 22-23

*United States v. Dowling*, 739 F.2d 1445 (9th Cir. 1984) ...........................................18

*United States v. Dowling*, 473 U.S. 207 (1985).................................................17, 18

*United States v. Eng*, 951 F.2d 461 (2d Cir. 1991)...................................................5

*United States v. Finazzo*, 2014 U.S. Dist. LEXIS 114430 (E.D.N.Y. Aug. 1, 2014)...................20

*United States v. Foley*, 73 F.3d 484 (2d Cir. 1996) ............................................. 12-13

*United States v. Hawit*, 2017 U.S. Dist. LEXIS 23391 (E.D.N.Y. Feb. 17, 2017).................14, 15

*United States v. Hayes*, 118 F. Supp. 3d 620, (S.D.N.Y. 2015) .....................................5

iii

*United States v. Hinton*, 127 F. Supp. 2d 548 (D.N.J. 2000) ........................................................23

*United States v. Kashamu*, 656 F. Supp. 2d 863 (N.D. Ill. 2009)..................................................5

*United States v. Kim*, 246 F.3d 186 (2d Cir. 2001).....................................................................16

*United States v. King*, 200 F.3d 1207 (9th Cir. 1999) ................................................................22

*United States v. Madzarac*, 2023 U.S. Dist. LEXIS 84753 (D.D.C. May 15, 2023)............... 23-24

*United States v. Manzer*, 69 F.3d 222 (8th Cir. 1995)................................................................18

*United States v. Martignon*, 346 F. Supp. 2d 413 (S.D.N.Y. 2004) ....................................... 18-19

*United States v. Miller*, 166 F. Supp. 3d 346 (W.D.N.Y. 2016)...................................................5

*United States v. Napout*, 963 F.3d 163 (2d Cir. 2020)................................................................15

*United States v. Oliveri*, 190 F. Supp. 2d 933  (S.D. Tex. 2001)...................................................5

*United States v. Pugh*, 2015 U.S. Dist. LEXIS 170271 (E.D.N.Y. Dec. 21, 2015).....................13

*United States v. Purcell*, 967 F.3d 159 (2d Cir. 2020), *cert. denied*, 142 S. Ct. 121 (2021).........23

*United States v. Riggs*, 739 F. Supp. 414 (N.D. Ill. 1990)...........................................................19

*United States v. Shapiro*, 391 F. Supp. 689 (S.D.N.Y. 1975)........................................................5

*United States v. Shultz*, 482 F.2d 1179 (6th Cir. 1973) ...............................................................18

*United States v. Smith*, 686 F.2d 234 (5th Cir. 1982) ..................................................................17

*United States v. Stanzione*, 391 F. Supp. 1201 (S.D.N.Y. 1975)....................................................5

*United States v. Stolon*, 555 F. Supp. 238 (E.D.N.Y. 1983 .........................................................13

*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013) ..............................................................13

*United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001)........................................................ 21-22

*United States v. Thomas*, 377 F.3d 232 (2d Cir. 2004)...............................................................17

*United States v. Vaulin*, 2017 U.S. Dist. LEXIS 123084 (N.D. Ill. Aug. 4, 2017)........................5

*United States v. Wang*, 898 F. Supp. 758 (D. Colo. 1995) ..................................................... 19-20

iv

*United States v. Woolaston,* N2022 U.S. App. LEXIS 8192 (2d Cir. Mar. 29, 2022)..................25

*United States v. Yeh*, 2013 U.S. Dist. LEXIS 69284 (N.D. Cal. May 15, 2013)...........................5

## STATUTES AND FEDERAL RULES

Federal Rule of Criminal Procedure 8 ........................................................................21

Federal Rule of Criminal Procedure 18 .......................................................................23

Criminal Copyright Infringement Statute, 17 U.S.C. §506 .................................. *passim*

Criminal Copyright Infringement, 17 U.S.C. §2319 .......................................... *passim*

Fugitive Disentitlement Statute, 28 U.S.C.S. § 2466...................................................5

Ownership of Copyright, 17 U.S.C.S. § 202 .........................................................17. 19

Subject Matter of Copyright,  17 U.S.C.S. § 104 .......................................................11

The Travel Fraud Act , 18 U.S.C. § 2314 ...................................................................17

The Wire Fraud Statute, 18 U.S.C. §1343 ......................................................... *passim*

## OTHER AUTHORITIES

Olga Razumovskaya, "*Google Moves Some Servers to Russian Data Centers,*"
THE WALL STREET JOURNAL, April 10, 2015 ................................................................4

 "*Zoom Traffic Through China: Company Apologizes, Announces You Can Control Data Routing,*" SECUREWORLD, April 14, 2020...................................................................11

"*Google Pay Usage Either for Online Payments in Various Countries as of March 2022*",
ECWID, May, 2022.......................................................................................................15

## <u>INTRODUCTION</u>

Defendants – foreign nationals Anton Napolsky and Valeriia Ermakova – seek to dismiss the indictment because – as the Government concedes – it improperly charges out-of-venue wire fraud counts (Counts III and IV). Further, the Superseding Indictment improperly charges extraterritorial copyright infringement of unidentified books, also restyled as wire fraud against copyright holders and bolstered with the duplicitous addition of customers as victims, against whom no allegations of fraud are pleaded, and improperly charges foreign usage of Amazon and Google as money laundering.

The Government's opposing arguments fail for the following reasons:

***First***, Defendants do not qualify as fugitives under *United States v. Bescond*, 24 F.4th 759, 764 (2d Cir. 2021), and, in any event, taking away their right to challenge the legal sufficiency of the Indictment would not serve the objectives of the fugitive disentitlement doctrine.

***Second***, the Government failed to overcome the presumption against extraterritorial application of the relevant statutes because the alleged Defendants' conduct at the statutes' focus is not domestic.

***Third***, the Government failed to state offenses: (i) no copyrighted works subject to infringement are stated; (ii) copyrights to books are not property for purposes of the wire fraud offenses, and customer fraud, a separate and distinct offense, is not properly pleaded; (iii) no money laundering transactions within this district are alleged.

***Finally***, the Court lacks venue because no facts establishing Defendants' conduct within this district are alleged.

## REPLY ARGUMENT

### I.   DEFENDANTS ARE ENTITLED TO SEEK THE DISMISSAL OF THE INDICTMENT

Defendants are entitled to seek dismissal of the Indictment because they cannot be categorized as fugitives under *United States v. Bescond*, 24 F.4th 759, 764 (2d Cir. 2021), and even if they were, the discretionary factors, including the burden on Defendants' exercise of their due process rights at the extradition proceedings in Argentina and in this court, and the delay in resolution of the legal challenges to the Indictment, would not serve the doctrine's objectives.

#### A.   EXTRADITION PROCEEDINGS IN ARGENTINA

On October 22, 2022, Defendants traveled to Cordoba, Argentina.  *See* Declaration of Anna Brown, dated September 10, 2023, ("Brown Decl.") ¶3. On November 3, 2022, Argentinian law enforcement authorities detained Defendants in the vicinity of Rio Gallegos pursuant to a U.S. law enforcement request.  *Id*. On December 9, 2022, the Central Authority of Argentina received the "Request for Assistance in the Investigation and Prosecution of Investigation of Z-Library" from the Central Authority of the United States.  Brown Decl. ¶4.  On January 12, 2023, Cordoba Federal Court reviewed the case and changed the jail detention to home confinement at a specific location in Cordoba. Brown Decl. ¶5; Exhibit "A".  On April 11, 2023, Cordoba Federal Court reviewed the extradition request and found it to be deficient, as "we request that the requesting State through the corresponding diplomatic channel, corrects the request for extradition while requesting more precision in the description of the actions with circumstances of time, mode and place, as well as it shall identify where the actions so allow, the supposed victims  (Art. 8 law 25126; Art. 13 lay 24767; Art 18 C.N.).  Brown Decl. ¶6; Ex. "A".  The extradition request was never supplemented. Brown Decl. ¶6.  On May 15, 2023, the Appellate Court issued a decision to substitute the judge in the extradition proceedings below. Brown Decl. ¶7.  On July 3, 2023, a new judge in Cordoba

Federal Court issued a decision to grant extradition but stayed the enforcement pending the outcome of the immigration proceedings. Brown Decl. ¶8. That decision is currently being appealed. *Id*. Defendants remain under house arrest as ordered by the Argentinian court. *Id*.

### B.   DEFENDANTS ARE NOT FUGITIVES

Under the circumstances of this case, Defendants do not meet the definition of fugitives. *See United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021); *United States v. Cornelson*, 595 F. Supp. 3d 265, 270 (S.D.N.Y. 2022).

*First*, they are not "traditional" fugitives. *Bescond* at 772. "A traditional fugitive is a person who, having committed a crime, flees from the jurisdiction of the court where a crime was committed or departs from his usual place of abode and conceals himself within the district." *Id.* (internal citations and quotations omitted). It is undisputed that Defendants were not in the United States at any time relevant to the Indictment and have never resided in this country. Contrary to the Government's insinuations, Opp. at 8, at the time of their arrest they were not hiding in a remote region in Argentina, but traveling as tourists. Defendants are Russian nationals. Had they desired to hide from justice, they would have stayed in their native Russia, a country with no extradition treaty with the United States. Following the arrest, Defendants complied with the Argentinian court orders and remained under the jurisdiction of Argentinian courts. Their place of residence is known; their stay in Argentina is as ordered by the Argentinian court.

*Second*, and for substantially similar reasons, Defendants are not a constructive-flight fugitives. A constructive-flight fugitive is "a person who allegedly committed crimes while in the United States but who was outside the country — for whatever reason — when [he] learned that [his] arrest was sought and who then refused to return to the United States in order to avoid prosecution." *Id*. at 772 (internal citations and quotations omitted). Defendants' actions do not fit

this definition, either. It is not alleged that they committed the crimes charged in the Indictment while they were physically present in the United States. The argument that "their online conduct repeatedly and deliberately crossed the U.S. border and made ample use of U.S. companies and facilities to commit their crimes" is a legal abstraction. Opp. at 8. Internet is a worldwide net, and Amazon and Google until recently operated, had offices, and stored data in Russia.[1] Defendants were arrested almost a month prior to indictment and only several days after the issuance of a sealed arrest warrant. They could not have had any knowledge of the pending charges. To find a person to be a constructive flight fugitive *Bescond* requires some physical presence in the United States prior to the refusal to return. The circuit court particularly cautioned against the application of fugitive disentitlement doctrine in cases of foreign nationals raising non-frivolous extraterritoriality claims. "Labeling a foreign defendant a fugitive can be enough to coerce submission to U.S. jurisdiction wholly regardless of whether the charged statute reaches individuals outside our territory. That result is in tension with principles that underlie the presumption against extraterritoriality. … And if our law does not reach [Defendants' or their] conduct, can it be said that [they are] in flight from it?" *Id.* 772-73.

The Government's reliance on *United States v. Bello*, 2023 U.S. Dist. LEXIS 76472, at *3 (S.D.N.Y. May 2, 2023) (the only post-*Bescond* case cited)[2] is misplaced. In *Bello*, the defendant

---

[1] *See, e.g., Wallstreet Journal Article*, "Google Moves Some Servers to Russian Data Centers,"available at https://www.wsj.com/articles/google-moves-some-servers-to-russian-data-centers-1428680491

[2] The majority of the cases cited by the Government are not directly relevant: some are factually different from this case; others are questionable after *Bescond*. *See United States v. Canady*, 126 F.3d 352, 360 (2d Cir. 1997) (reversing the conviction for failure to announce the decision in open court at defendant's presence at the return of a non-jury decision); *Lewis v. United States*, 146 U.S. 370, 377 (1892) (addressing jury selection process); *Degen v. United States*, 517 U.S. 820, 821 (1996) (disallowing fugitive disentitlement doctrine against a U.S. citizen residing in Switzerland in civil forfeiture proceedings); *Molinaro v. New Jersey*, 396 U.S. 365, 365  (1970) (disallowing

"[p]rior to being sanctioned by OFAC … lived in the United States with the intention of making it his permanent home. He enrolled his children in U.S. schools, owned property in the United States, and lived a luxurious life here." *Id*. None of these factors are present in this case. Defendants never resided or intended to reside in the United States.

Just as *Bescond*, this is not a case in which a defendant refuses to return to the United States to avoid prosecution.  *Id*.  Russian nationals have no obligation to appear in the United States under their national law, since there is no extradition treaty with Russia, and Argentinian court has stayed

---

appeal of a defendant who was freed on bail, has failed to surrender himself to state authorities following the conviction); *Hanson v. Phillips*, 442 F.3d 789, 790  (2d Cir. 2006) (reversing fugitive disentitlement for a defendant who failed to appear at sentencing but was subsequently apprehended); *United States v. Eng*, 951 F.2d 461, 468   (2d Cir. 1991) (permitting fugitive disentitlement in civil forfeiture proceedings); *Estelle v. Dorrough*, 420 U.S. 534, 543 (1975) (reviewing the convictions of escaped criminal defendants); *United States v. Oliveri*, 190 F. Supp. 2d 933, 936  (S.D. Tex. 2001) (applying the doctrine to a defendant who "desires to conduct business in this country, but cites the charges against him as curtailing his ability to do so."); *United States v. Kashamu*, 656 F. Supp. 2d 863, 865 (N.D. Ill. 2009) (applying fugitive disentitlement to a defendant, who's "current whereabouts are unknown to this Court, although, as the Court has previously noted, he may be located somewhere in Nigeria."); *United States v. Hayes*, 118 F. Supp. 3d 620, 622 (S.D.N.Y. 2015) (the rationale and the validity of this decision is questionable after *Bescond*); *United States v. Blanco*, 861 F.2d 773, 775 (2d Cir. 1988) (to avoid prosecution the defendant did not live openly, travelled under a false name, and carried a false passport); *Bd. of Governors of Fed. Res. Sys. v. Mahfouz*, 91 CIV. 5096 (MGC), 1992 U.S. Dist. LEXIS 10866, at *10 (S.D.N.Y. July 23, 1992) (in a civil matter the court permitted certain motion practice but disentitled defendant from discovery); *United States v. Catino*, 735 F.2d 718, 719 (2d Cir. 1984) (defendant was issued a United States passport under a different name and failed to appear at the sentencing hearing); *United States v. Miller*, 166 F. Supp. 3d 346, 348 (W.D.N.Y. 2016) (defendant chose not to return to the United States once he was indicted); *United States v. Buck*, 2015 U.S. Dist. LEXIS 5434, at *3 (S.D.N.Y. Jan. 9, 2015) (the rationale and the validity of this decision is questionable after *Bescond*);  *United States v. Stanzione*, 391 F. Supp. 1201, 1201 (S.D.N.Y. 1975) (defendant failed to appear for trial of another case in the same district); *United States v. Shapiro*, 391 F. Supp. 689, 690 (S.D.N.Y. 1975) (defendant fled to Canada after being released on bail); *Collazos v. United States*, 368 F.3d 190, 198 (2d Cir. 2004) (The court applied 28 U.S.C.S. § 2466 to disentitled defendant challenge the asset seizure based on her refusal to enter the United States to face the related criminal charges.); *United States v. Yeh*, No. CR 10-00231 WHA, 2013 U.S. Dist. LEXIS 69284, at *2 (N.D. Cal. May 15, 2013) (the rationale and the validity of this decision in this district is questionable after *Bescond*); *United States v. Vaulin*, No. 16 CR 438-1, 2017 U.S. Dist. LEXIS 123084, at *15 (N.D. Ill. Aug. 4, 2017) (the rationale and the validity of this decision in this district is questionable after *Bescond*).

the extradition pending the outcome of the Argentinian judicial proceedings. *See id*. at 767 (recognizing that, because the home country of the defendant had a non-extradition policy, the defendant "has no obligation to appear in the United States" "as far as [the] home country is concerned").

Based on these facts, Defendants do not fit the definition of "constructive-flight" fugitives. *Id*. at 772.

### C.   DISCRETIONARY FACTORS DO NOT FAVOR DISENTITLING DEFENDANTS

Even if Defendants were considered to be fugitives, disentitlement would be improper in this case because it would not serve the purposes and objectives of the fugitive disentitlement doctrine. These objectives are (1) "assuring the enforceability of any decision that may be rendered against the fugitive"; (2) "imposing a penalty for flouting the judicial process"; (3) "discouraging flights from justice and promoting the efficient operation of the courts"; and (4) "avoiding prejudice to the other side caused by the defendant's escape." *Bescond* at 773-74.  "The court may … exercise discretion to disentitle the fugitive—but only if doing so would serve the doctrine's objectives." *Id.* at 771.

*First*, the objective of assuring enforceability is diminished in resolving Rule 12 motions. "Courts have used this factor to analyze whether disentitlement is an appropriate means of ensuring mutuality in the litigation." *United States v. Cornelson*, 595 F. Supp. 3d 265, 272 (S.D.N.Y. 2022). The idea behind mutuality is that "litigation is a two-way street." *In re Hijazi*, 589 F.3d 401, 413 (7th Cir. 2009).  However, "[p]rinciples of deference counsel restraint in resorting to inherent power and require its use to be a reasonable response to the problems and needs that provoke it." *Degen*, 517 U.S. at 823-24 (citations omitted).  Stripping foreign defendants from the right to challenge their indictments based on legal grounds is "a disproportionately severe response to

[their] absence and therefore too and therefore too harsh a means of ensuring mutuality in the litigation." *Bescond* at 774. Defendants are already subject to home detention and restricted from traveling back to Russia. The resolution of the motion to dismiss would assist Argentinian courts, which also struggled with the language generalizations and failure to state offenses. *See* Cordoba Federal Court Order ("there was no clear description of the criminal act except for a very general one … [no] the circumstances of time, mode and place of the criminal acts mentioned in the request of extradition."). Brown Decl.; Ex. "B". Accordingly, this objective is not served by disentitling Defendants.

*Second*, disentitlement is not needed to punish Defendants for flouting the judicial process. There is no basis for a finding that Defendants are exhibiting disrespect for U.S. law. Their presence abroad is unrelated to the American prosecution. There is no concealment or evasion. They fully complied with Argentinian authorities, which ordered them stay in the country until the resolution of all Argentinian legal proceedings. *See United States v. Cornelson*, 595 F. Supp. 3d 265, 273 (S.D.N.Y. 2022) (finding the fact that foreign law permits defendant to stay in his home country to be determinative in reviewing this objective).

*Third*, disentitling Defendants does not discourage flights from justice or otherwise promote the efficient operation of this court. To the contrary, it would cause unreasonable delay in adjudication of this case and burden the American taxpayers with the costs of Defendants' pretrial detention during the resolution of the extraterritoriality challenge and other legal issues, for which Defendants' physical presence is not determinative.

*Finally*, disentitling Defendants is not needed to avoid prejudice to the Government. Defendants' challenges to extraterritoriality and the legal sufficiency of indictments and extradition requests are the due process rights afforded to them under the law of this country, the

extradition treaty, and the Argentinian law.   *See* Cordoba Federal Court Order referring to Defendants' right to "the due procedure and the right of the defense in court." Brown Decl.; Ex. "B". Defendants are exercising their rights to defend themselves in a court of law; they are not making some "demands" as the Government portrays them. *See Bescond* at 775 ("So long as the government surmounts the low threshold of securing an indictment, any soul on the planet may be deemed a fugitive, and disentitlement would then bar a challenge to extraterritoriality from abroad, requiring the foreigner to leave home and face arrest and detention to have any hope of securing dismissal. Such a result contravenes the rationales that underly disentitlement and assigns no weight to the sovereignty of other nations.").

Courts also repeatedly rejected the Government's argument of general claims of prejudice at the time of the motion to dismiss. *United States v. Cornelson*, 595 F. Supp. 3d 265, 273 (S.D.N.Y. 2022) ("The Government's argument that it is prejudiced by its "inability to present its case" is equally unavailing. … The Government has presented no evidence of that prejudice.").

In sum, the discretionary factors do not serve the goals and objectives of disentitlement and weigh strongly against refusal of consideration of Defendants' motion to dismiss.

## II.   THE INDICTMENT FAILS TO ESTABLISH DOMESTIC APPLICATION OF RELEVANT STATUTES AND FAILS TO STATE OFFENSES

### A.   COUNT I – CRIMINAL COPYRIGHT IS DEFICIENT

#### 1.   Charging Documents Fail to Allege Domestic Copyright Infringing Activities By Defendants

As courts in this Circuit consistently hold, unless "the act taking place in the United States . . . itself violate[s] the Copyright Act… there is no cause of action under the U.S. Copyright Act for foreign copyright infringement." *Levitin v. Sony Music Ent*, 101 F. Supp. 3d 376, 385 (S.D.N.Y. 2015) (internal citation omitted).

The Government misleadingly argues that at trial it "will prove that defendants accessed computer servers throughout the United States and used them for the purpose of committing their copyright infringements by making copyright protected works of people from within the Eastern District of New York, available for free to people within the Eastern District of New York…" However, there is not a single allegation in the Superseding Indictment or the Complaint that Defendants indeed used servers located in the United States to store infringed copies of copyrighted materials. The only actual allegations — which this Court is required to accept as true — are that Defendants used their personal Amazon accounts to accept donations and used Gmail (Amazon and Google provided services in Russia). Lack of U.S.-specific allegations is fatal to criminal copyright infringement count.

For example, in *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322 (S.D.N.Y. 2020), the court clarified that as to a foreign, extraterritorial entity—to the extent cache copies of infringed works "have been stored on" a server in the United States, "the creation of those copies would be an act of direct infringement" within the United States by the original website operator, but any such allegation needed to be clearly stated in the complaint. *State Street* involved a group of Australian firms uploading allegedly infringing photographs to Instagram and other social media accounts. 431 F. Supp. 3d at 338. The complaint alleged that the firms' communications were "accessible" from the United States but did "not allege that the images posted by the Australian firms used servers located in the United States." *Id*. at 338-39. In an era "when large internet service companies locate servers across the globe," and in the absence of an express allegation in the complaint, the court refused to draw an inference regarding use of a server based in the United States. *Id*. at 339 (finding that "[t]he adoption of a rule that would give rise to a copyright claim against a foreign actor solely on the basis of the fact that a U.S. copyrighted image

was posted on the internet—and was therefore "accessible" within the United States would undermine the extraterritorial limitations on U.S. copyright law.")

The Superseding Indictment here alleges merely that defendants infringed copyrights "within the Eastern District of New York." *Id.* ¶1.

In its Opposition, the Government argues that the charged offenses took place "within the Eastern District of New York," within the "District of New Jersey," and "within the Northern District of California," Opp. at 16. These are legal conclusions but not the facts of domestic activity required to be set forth in the Indictment for finding domestic application of a statute with no extraterritorial reach. *See State Street* at 339. While such language is used to set forth general subject matter jurisdiction in federal cases, the analysis of domestic application involves examination of specific activities to determine whether "the conduct relevant to the statute's focus occurred in the United States." *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016).

Similarly, the Government's argument that it will prove at trial that "defendants accessed computer servers throughout the United States and used them… [because] [w]ithout access to the computing power, bandwidth and other functions of these U.S.-based servers, the defendants could not have carried out their criminal copyright scheme."  Opp. at 16.  But that is not an allegation set forth in a charging document that needs to be accepted by the Court.

The Government could have included in the Superseding Indictment — but does not allege — that Defendants owned or possessed any servers in the United States.  There is no allegation that Defendants themselves sent copyrighted materials to U.S. third-party users or that copyrighted materials were stored by Z-Library on any U.S.-based servers. If the Government claims the use of Amazon personal accounts and Google email accounts for communications allegedly relevant to Z-Library activities, as set forth in Compl. ¶¶17, 27, these allegations have nothing to do with

the use of U.S.-based servers to store or distribute the allegedly infringing content; moreover, as explained in Defendants' Opening Brief, both Amazon and Google provided services and maintained data centers in Russia. Mere use of Gmail or making purchases on Russian Amazon by Defendants are insufficient to establish U.S. domestic activity. For example, Zoom has data centers in China, and some U.S. calls used to be processed through a Chinese server.[3] Finding domestic activity based on inadvertent transmission to servers in another country by third party internet services providers would mean that a person engages in domestic activity in China when making that Zoom call. As *State Street* makes clear, inferences should not be made regarding the use of servers based in the United States in an era "when large internet service companies locate servers across the globe," *Id*. at 339. Neither does the Copyright Act criminalize the use of Google and Amazon by worldwide users.

Finally, the Government's argument that "[t]he copyrighted content of U.S.-based authors and publishers—many of whom are based in New York—was the lifeblood of the defendants' scheme" also misses the mark. The residence of the alleged victims – N.Y.-based authors – is neither the element of the copyright offense nor the focus of the Copyright Act.[4] The focus of the statute is the infringing activities that take place in the United States by Defendants. These activities are not alleged. Nor does the statute criminalize foreign distribution of U.S. copyrighted materials written by New York authors. *Levitin, supra,* at 385 ("District courts do not have subject matter jurisdiction over infringement occurring outside of the United States").

---

[3] *See, e.g., Zoom Traffic Through China: Company Apologizes, Announces You Can Control Data Routing*, available at https://www.secureworld.io/industry-news/zoom-traffic-through-china-data-routing-controls.

[4] *See* 17 U.S.C. § 104 -- Subject matter of copyright: National origin ("The works … are subject to protection under this title without regard to the nationality or domicile of the author.").

To the extent that the Government argues that conduct by third-party users based in the U.S. who "uploaded and downloaded the copyrighted works to Z-Library" imposes indirect liability on Defendants, this argument also fails because acts by third parties do not create domestic activities by foreign Defendants. Internet users and law enforcement agents went on foreign websites and used their Z-Library foreign platform to download and upload U.S. copyrighted materials.  That is no different than if the users travelled to a foreign country and traded copyrighted works on the foreign book market.  Their acts cannot be imputed to Defendants as Defendants' own actions.  There is <u>no</u> allegation that Z-Library stored any copyrighted materials on U.S. servers. *See State Street* (denying motion to include secondary liability claims because "Plaintiff has not adequately alleged a direct copyright infringement by the Australian firms").

For the same reasons, the allegations regarding criminal copyright are insufficient to show that charging Defendants with copyright infringement under United States law is consistent with due process.  The Government relies on *United States v. Al Kassar*, 660 F.3d 108, 119 (2d Cir. 2011), claiming that "the defendants cannot credibly argue that the application of U.S. laws would 'be arbitrary or fundamentally unfair' or that they did not understand that their conduct 'would subject [them] to prosecution somewhere.'"  Opp. at 17.  Defendants are unaware of any other country that criminally prosecutes secondary infringement.  *See also Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 143 S. Ct. 2522, 2528 (2023) ("'[f]oreign conduct is generally the domain of foreign law.'") (internal citation omitted).

### 2.  Copyrighted Works Are Unknown

The Government does not address Defendants' argument that the Indictment does not specify which copyrighted works Defendants are alleged to have infringed.  *E.g*., *Kelly v. L.L. Cool J*., 145 F.R.D. 32, 36 (S.D.N.Y. 1992) ("a properly plead copyright infringement claim must allege … which specific original works are the subject of the copyright claim…" ).  *See also United*

*States v. Foley*, 73 F.3d 484, 488 (2d Cir. 1996) (when "one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense.").

Rather, citing inapposite caselaw, the Government argues that it does not need to. Opp. at 23. The Government is wrong. *United States v. Stolon*, 555 F. Supp. 238, 239 (E.D.N.Y. 1983), cited by the Government, specified the infringed copyrighted work in the Indictment ("original movie sound track -- Grease which was] first fixed and published with the requisite notice of copyright after February 15, 1972 and duly registered in the United States Copyright Office under the specified registration number"). The remaining cases cited by the Government are not relevant as they do not address copyright infringement. [5]

## B.   COUNTS II – V ARE DEFICIENT

### 1.   Charging Documents Fail to Allege Domestic Use of Wires By Defendants And Domestic Financial Transactions[6]

"[I]n order for incidental domestic wire transmissions not to haul essentially foreign allegedly fraudulent behavior into American courts, the use of the . . . wires must be essential, rather than merely incidental, to the scheme to defraud. This ensures that the domestic tail not wag, as it were, the foreign dog." *United States v. Napout*, 963 F.3d 163, 179 (2d Cir. 2020) (internal citations and quotations omitted).

---

[5] *United States v. Alfonso*, 143 F.3d 772, 775 (2d Cir. 1998) (addressing the pleading requirements for Hobbs Act violation); *United States v. Pugh*, No. 15-CR-116 (NGG), 2015 U.S. Dist. LEXIS 170271, at *20 (E.D.N.Y. Dec. 21, 2015) (terrorism charges); *United States v. Stringer*, 730 F.3d 120, 121 (2d Cir. 2013) (identity theft).

[6] The Government addressed the allegations of domestic conduct in wire fraud and money laundering counts in one section – *II-C The Wire Fraud and Money Laundering Counts Allege Domestic Conduct*. To follow the Government's argument structure, Defendants reply to those separate arguments in one section.

*First*, the general statements that the charged offenses took place "within the Eastern District of New York," within the "District of New Jersey," and "within the Northern District of California," Opp. at 18, are legal conclusions but not the facts of domestic activity required for finding domestic application of a statute with no extraterritorial reach. *See* the argument above. The Government further alleges that the two emails referenced in the Indictment from Z-Library accounts show domestic conduct. But domestic application is not based on "only incidental or minimal use of U.S. wires." *United States v. Hawit*, No. 15 Crim. 252 (PKC), 2017 U.S. Dist. LEXIS 23391, 2017 WL 663542, at \*5 (E.D.N.Y. Feb. 17, 2017); *Bascunan v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019) ("the use of the mail or wires must be essential, rather than merely incidental, to the scheme to defraud").

*Second*, the Government expects to prove the following facts at trial:

(a) "defendants transmitted and caused to be transmitted emails to copyright owners within the Eastern District of New York, the District of New Jersey, and the Northern District of California and elsewhere in the United States in furtherance of their criminal scheme."

But such emails are not communications in the furtherance of the fraud because, as discussed below, wire fraud offense against authors and publishers fails as a matter of law. At best, such emails could be qualified as communications in the furtherance of foreign copyright infringement, which is not unlawful conduct under U.S. law.

(b) "defendants accessed multiple servers in the United States... U.S.-based servers hosted websites through which the defendants were able to maintain their criminal scheme i.e., the operation of Z-Library. These websites were the medium through which the defendants were able to obtain and facilitate money transfers for Z-Library as a result of and to fuel their fraudulent actions. Further, the defendants made payments to companies in the United States to allow for Z-Library's data to be maintained at hosting servers located in the United States. Some of those payments were routed through a U.S. company that facilitates online payments." This was done to launder the proceeds and either route them back to the defendants abroad or to pay U.S. companies that maintained the servers that the defendants used to operate Z-Library.

Based on the facts in the Complaint, the Government asserts that Defendants used Amazon, Google for email, advertising via Google AdWords, receiving and making online payments. But those online service providers operate internationally. *See, e.g., Google Pay Usage Either for Online Payments in Various Countries as of March 2022* at https://www.ecwid.com/insights/google-pay-online-payments-by-country ("As of March 2022, the largest number of people making online payments using Google Pay live in Russia (29%)"). Third party online services may store data anywhere in the world and any inadvertent access of U.S. servers when using their international money services does not result in imputation of domestic activities to Defendants. These monetary transactions are completely online, and do not qualify "in the case of a non-United States citizen, [as] the conduct [that] occurs in part in the United States." 18 U.S.C.S. § 1956 (f).

In contrast, defendants in the cases cited by the Government engaged in much more extensive domestic conduct. In *United States v. Napout*, 963 F.3d 163, 180 (2d Cir. 2020), defendant had an account with Morgan Stanley bank in New York and received bribe payments in that account. He also made purchases at store in New York by debit card with funds held at his New York bank account. *Id*. Wires from U.S. bank accounts were also used for payments for luxury items and the use of a vacation house. *Id. United States v. Hawit*, No. 15-cr-252 (PKC), 2017 U.S. Dist. LEXIS 23391, at *19 (E.D.N.Y. Feb. 17, 2017) (same case in the district court) referenced "phone calls and meetings in the United States related to the bribery of CONMEBOL officials." In *Bascunan v. Elsaca*, 927 F.3d 108, 124 (2d Cir. 2019), plaintiff was a beneficiary of a large trust administered in New York. Defendants trust administrators made approximately 500 transfers from the trust's New York bank account to their personal accounts and stole the funds. *Id.* In *Pasquantino v. United States*, 544 U.S. 349, 352 (2005), two American citizens ordered

liquor from stores in one state by telephone calls from another state and then paid other American citizens to smuggle the liquor into Canada without paying the required Canadian excise taxes.  In *United States v. Kim*, 246 F.3d 186, 188 (2d Cir. 2001) (*pre-Morrison* case), the court noted at the onset that "there is no general bar against the extraterritorial application of our criminal laws to American citizens." Defendant, a U.S. citizen and a resident of New York, temporary stationed in Croatia, approved fraudulent travel invoices for payment by wire transfer from the Chase Manhattan Bank in New York City.  *Id*.

In this case Defendants are foreign citizens that have never resided in the United States, sent communications from any U.S. location, or owned any U.S. bank accounts.  Thus, no domestic activities relevant to the statutes' focus are present.

For the reasons stated in Defendant's Motion, the wire fraud and money laundering allegations are insufficient to show that charging Defendants under the United States laws is consistent with due process.  Wire fraud is an offense unique to US. criminal law.  Even the Argentinian judge did not believe that the charges presented in the extradition request are consistent with due process under Argentinian law. Brown Decl., Ex."B" at 3.  Foreign citizens cannot be expected to understand that the conduct charged in this case – secondary copyright infringement on the internet styled as wire fraud with dependent count of money laundering conspiracy – "would subject [them] to prosecution somewhere."  *Al Kassar*, 660 F.3d at 119.

### 2. Counts II (Conspiracy to Commit Wire Fraud( and Counts III and IV (Wire Fraud) Fail to State Offenses

Conspiracy to commit wire fraud and substantive wire fraud counts (collectively, "wire fraud counts") should be dismissed for the following reasons: (i) they fail to state offenses against publishers and authors because copyrights to books are not property; (ii) they are duplicitous because customer fraud is a separate and distinct offense; (iii) customer fraud is not properly pled.

###### a. *Wire Fraud Conspiracy and Wire Fraud Counts Against Publishers and Authors Fail Because Copyrights Are Not Property Objects*

Counts II, III and IV fail to state offenses against publishers and authors because neither copyrights and nor copies of copyrighted books constitute "property" that could be *obtained* or *conspired to be obtained* under the definition of Section 1343 wire fraud.

The copyrights were not obtained (taken away) from authors and publishers as objects of property.  As a matter of statutory construction, infringing (*i.e.*, impairing, damaging, encroaching, frustrating) copyrights does not equate to obtaining (*i.e.*, taking away, acquiring, securing) this intangible property interest.[7]  *See United States v. Dowling*, 473 U.S. 207, 216 (1985); *United States v. Smith*, 686 F.2d 234, 243 (5th Cir. 1982) ("There can be no question that copyright infringement by the unauthorized distribution of copies is not stealing, converting, or taking by fraud, if the statutory phrase is given its normal, ordinary, and logical import.").[8]

Copies of the books cannot be considered as property either. *Smith,* 686 F.2d at 243 ("nothing was removed from someone's possession…At most, the distribution denied the copyright owners the privilege of controlling distribution," which is not property). *See also* 17 U.S.C.S. § 202:

> Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a

---

[7] The reasoning is similar to tort concepts: conversion of property (theft) requires property that is capable of being misappropriated from the victim; while infliction of injury (infringement) is an act resulting in damage to the property of another.  The term "obtaining" does not mean damage to property, it means acquisition of property, *i.e.*, theft / conversion.

[8] *Dowling* and *Smith* interpreted 18 U.S.C. § 2314 (the Travel Fraud Act), which is "analyzed in the same way" as the wire fraud statute, because they "use the same relevant language."  *See United States v. Thomas*, 377 F.3d 232, 242 (2d Cir. 2004).

copyright or of any exclusive rights under a copyright convey property rights in any material object.

The Government claims that "defrauding a person of their copyright, among other things, would necessarily deprive them of property." Opp. at 29. Such contention is based on erroneous application of the wire fraud statute and incomplete analysis.

*First*, the Government improperly relies on outdated pre-*McNally* cases,[9] which never addressed the statutory requirement of *obtaining property* and analyzed only the *defrauding* prong of the wire fraud offense. The courts' reasoning in those cases was subsequently overruled by *McNally v. United States*, 483 U. S. 350, 358 (1987). *McNally* instructed that defrauding cannot stand independently from the "the money-or-property requirement." *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) (quoting *McNally* at 358).[10] The only fraud schemes implicated by the wire fraud statute are the ones that "deprive the victim of money or property." *Id.* Thus, those cases provide no support to the Government's position that copyrights in this case may constitute obtainable property under the wire fraud statute.

The Government further cites *Roth v. Pritikin*, 710 F.2d 934, 935 (2d Cir. 1983), a civil matter where plaintiff freelance writer assigned her copyrights to a book of recipes to defendants for a flat fee payment and later claimed that the contract is invalid; and *United States v. Martignon*, 346 F. Supp. 2d 413, 417-18 (S.D.N.Y. 2004), resolving the issue whether the anti-bootlegging

---

[9] *Cooper v. United States*, 639 F. Supp. 176, 180 (M.D. Fla. 1986); *United States v. Manzer*, 69 F.3d 222, 227 (8th Cir. 1995); *United States v. Shultz*, 482 F.2d 1179, 1181 (6th Cir. 1973); *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984) (overruled by *Dowling*, 473 U.S. 211).

[10] In *McNally*, the Supreme Court was presented with an issue "whether a state officer violates the mail fraud statute if he chooses an insurance agent to provide insurance for the State on condition that the agent must share its commissions with other named insurance agencies, in one of which the officer has an ownership interest and hence profits when his agency receives part of the commissions." *McNally,* at 360. The perpetrators "received part of the commissions but those commissions were not the Commonwealth's money." *Id.* Thus obtaining money or property requirement of the wire fraud statute was not met. *Id.* at 361.

statute was constitutional.  Both cases provide no support to the Government's position.  Unlike *Roth*, this case does not involve contractual assignment of copyrights.  *See* the argument above – transferring occurs via contractual assignment, not the distribution of books.  Unlike *Martignon*, no issue of constitutionality is raised. Defendants do not dispute that copyrights are intangible property rights.  However, in the context of copyright infringement (as opposed to contractual assignment of copyrights) they do not qualify as objects of property to be obtained under the definition of the wire fraud offense.  *See* 17 U.S.C.S. § 202 ("nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights").

*Second*, the Government's reliance on cases involving the theft of confidential business information is misplaced.  In *Carpenter v. United States*, 484 U.S. 19 (1987), the object of property was not an intangible right but the confidential business information itself.  An employee misappropriated it through fraud by an act of embezzlement from his employer.  As one district court explained in a similar case, "[t]he Supreme Court expressly rejected the notion that such a charge can be based on the deprivation of an intangible right ... The *McNally* Court ruled that a mail fraud charge must be based on the deprivation of property." *United States v. Riggs*, 739 F. Supp. 414, 419 n.7 (N.D. Ill. 1990) ("the wire fraud charge is not based on the deprivation of an intangible right. The government charges [defendants] with scheming to defraud [victim] out of property -- the confidential information contained in the E911 text file…"). *Id* at 418-19.  The *Ciminelli* Court also noted that after *McNally* the only intangible right protected under fraud statutes is the right to honest services under the subsequently enacted Section 1346.  *Ciminelli v. United States*, 143 S. Ct. 1121, 1123 (2023).

Notably, another case cited by the Government, *United States v. Wang*, 898 F. Supp. 758,

760 (D. Colo. 1995), specifically distinguished that the property involved was the confidential source code in the copyrighted computer files but not copyrights themselves. "While the alleged proprietary confidential business information at issue here was copyrighted material, copyright infringement is not the subject of this prosecution." *Wang* at 760.

*Third*, the Government erroneously distinguishes *Sekhar v. United States*, 570 U.S. 729 (2013) relying on invalid cases *United States v. Clark*, 593 F. App'x 53, 54 (2d Cir. 2014) ("a scheme to defraud could be established by proof that investors were deprived of information necessary to make discretionary economic decisions") and *United States v. Finazzo*, 2014 U.S. Dist. LEXIS 114430, at *107 (E.D.N.Y. Aug. 1, 2014) ("a prosecution for mail and wire fraud may be premised on a right to control theory"). *Ciminelli* expressly overruled "the right to control theory" for purposes of establishing wire fraud offenses. *Ciminelli* at 1128 ("The right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest. Accordingly, the right-to-control theory cannot form the basis for a conviction under the federal fraud statutes."). Thus, the reasoning in *Clark* and *Finazzo* is no longer valid.

As the Supreme Court said, "[t]here are no constructive offenses; and before one can be punished, it must be shown that his case is plainly within the statute." *McNally v. United States*, 483 U.S. 350, 360 (1987) (*quoting Fasulo v. United States*, 272 U.S. 620, 629 (1926)). The Government failed to show that Counts II, III and IV wire fraud offenses against authors and publishers are plainly within the statute.

### b.  *Counts II, III and IV Fail to State Offenses Against the Customers*[11]

Counts II, III and IV should be also dismissed because they are impermissibly duplicitous

---

[11] The Superseding Indictment amended the language of the wire fraud counts by adding "customers" to "authors and publishers" in the statement of wire fraud offences: "…a scheme to defraud authors, publishers and customers, and to obtain money and property from them…".

and fail to state customer fraud, which is a separate offense.

The Government's alleged object of wire fraud offenses against authors and publishers are obtaining their copyrights and books.  ECF 12-3, ¶5 ("Z-Library has robbed individuals of the fruits of their labor—which, for some literary works, represents years or even decades of work."); Opp. at 32 ("the defendants defrauded specific copyright owners by illegally making their property available to readers online for free through Z-Library").

While neither the Indictment, nor the charging documents present any allegations of fraud against the newly added victims – Z-Library users (customers), in the Opposition the Government states,

> In addition to defrauding authors and publishers, the defendants also, as now alleged in the Indictment, fraudulently induced customers to make payments to Z-Library for copyrighted works[12]. Z-Library held itself out to be a legitimate, legal entity: an online library. In reliance on this misrepresentation, certain customers made donations to Z-Library, money which the defendants, in turn, used for personal expenses.

Opp. at 27.

Clearly, the essential elements of wire fraud against customers are different from the allegations of fraud against the authors and publishers:  the supposed object of fraud is donations; the misrepresentations are as to the legitimacy of the legal entity; the alleged victims are website users making payments but not authors and publishers. Inducing customers to make donations (customer fraud) involves different actions than alleged offenses against the authors and publishers.

The Second Circuit has explained that "[a]n indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed.R.Crim.P. 8(a)'s

---

[12]  Complaint alleges that all books were available free of charge but for "a donation of $1.00 or more, users can upgrade their account to "Premium" status, which unlocks certain features, including the ability to allow users to convert their files to various formats beyond the default format, and access to relevant URLs for downloading purposes." Compl. ¶9.

requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001). "A duplicitous indictment compromises a defendant's Sixth Amendment right to know the charges against him, as well as his Fifth Amendment protection against double jeopardy." *United States v. King*, 200 F.3d 1207, 1212 (9th Cir. 1999) (internal citation omitted). In deciding whether a defendant is prejudiced by a duplicitous indictment, the relevant policy considerations are:

> avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in subsequent prosecutions.

*Id*. (internal citations omitted).

Defendants are prejudiced by combining offenses against authors and publishers with customer fraud in wire fraud counts. For the reasons stated above the wire fraud offenses against authors and publishers fail as a matter of law. It is unclear whether the grand jury issued the Superseding Indictment based on fraud related to copyrights to books or customer donations. No misrepresentations regarding donations appear anywhere in the Indictment and the charging documents. With this evolving theory of liability and mudding the elements of the wire fraud offenses, Defendants cannot adequately prepare their defense. Defendants have no requisite notice as to which crimes they are charged with, against whom, what are the fraudulent pretenses, what is the alleged property obtained or conspired to be obtained via wire fraud, who was deprived of what. *See, e.g., United States v. Arnold*, No. 15-20652, 2022 U.S. Dist. LEXIS 126993, at *3 (E.D. Mich. July 18, 2022) (dismissing without prejudice duplicitous counts in the indictment because they listed multiple victims in a single count); *United States v. D-2 Chavonne Simmons*, 2013 U.S. Dist. Lexis 158158, at *15-16, 2013 WL 5933679 (E.D. Mich. 2013) (dismissing count because

"there would be no way of knowing which of the alleged actions the jury found that [defendant] committed."); *United States v. Hinton*, 127 F. Supp. 2d 548, 556 (D.N.J. 2000) (granting "defendant's motion to dismiss the present indictment as duplicitous" because it alleges "frauds against six separate financial institutions" in one count) ("In the event of a conviction, it would not be possible to determine which aspects of this so-called unified scheme had been proved as to which financial institutions. The indictment, therefore, is duplicitous.").

The jury would also confuse the concept of damages resulting from copyright infringement with the definition of property obtained by wire fraud.   *See also United States v. Abakporo*, 959 F. Supp. 2d 382, 391 (S.D.N.Y. 2013) ("By charging both conspiracies in a single count, the Government has invited the very problems to which the prohibition against duplicity is directed (jury unanimity, notice, sentencing)").

Accordingly, the Counts II, III and IV against the customers should be dismissed because they are duplicitous (prejudicially combine copyright infringement styled as wire fraud against authors and publishers with customer fraud) and fail to state wire offenses against customers (no misrepresentations related to customer donations are alleged).

### III.    THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF VENUE

The Government concedes that the Court lacks venue in Wire Fraud Counts III and IV; those counts should be dismissed.  *United States v. Purcell*, 967 F.3d 159, 186 (2d Cir. 2020), *cert. denied*, 142 S. Ct. 121 (2021) (When "a defendant is charged with multiple crimes in a single indictment, the government must satisfy venue with respect to each charge."). [13]

---

[13] "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed.R.Crim.P. 18.  *See also United States v. Madzarac*, 2023 U.S. Dist. LEXIS 84753, at *24 (D.D.C. May 15, 2023) ("the government's knowing and voluntary choice to continue pursuing the case [based on an effects test] knowing

The remaining counts should also be dismissed for lack of venue because no facts are alleged in the Indictment that Defendants' own conduct took place in this district. Instead, as set forth above, the Government's arguments stated for the first time in their Opposition, describe extraterritorial conduct by foreign nationals with no physical presence in the United States.

The Government argues that:

> As the government asserts in its various charging instruments, victims were from the Eastern District of New York, copyright protected works were made available to people within the Eastern District of New York, and the defendants possessed at least one bank account through which they laundered funds through the Eastern District of New York. Opp. at 36. The Government's argument fails and asserts new "facts" not set forth in any

of the charging documents.

*First*, regarding the copyright count (Count I), as explained in Section II – A(1)) *supra*, there are no factual allegations of infringing activities that take place in the United States by Defendants - the venue provision requires conduct by defendants within the district. Simply making the website available on the internet to any person does not amount to conduct in this district.

*Second*, regarding the money laundering conspiracy count, the Government for the first time argues that there is a bank account used by Defendants in New York. However, a careful review of the charging documents reveals no such facts pled. The only accounts mentioned in the Complaint, ECF 12-3, are Amazon, credit cards on the Amazon account with a Russian address and an address for a mail forwarding service in Delaware ¶25, and Google e-payment system, ¶12. Both Amazon and Google operated in Russia until recently. Further, no other activities by Defendants are alleged that took place in this District.

---

full well that [the venue was lacking] … crossed over the threshold to harassment and … dismissal with prejudice is appropriate.").

*Third*, regarding the wire fraud conspiracy Count II - the emails allegedly sent to other districts are irrelevant for purposes of determining the venue instantly as neither the sender nor the recipient were located within the district.  No specific overt acts by any Defendant or any co-conspirator are alleged to take place in this district.  *See United States v. Woolaston,* No. 20-4233-cr, 2022 U.S. App. LEXIS 8192, at *2 (2d Cir. Mar. 29, 2022) (internal citation omitted) ("venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the co-conspirators.").

 For the foregoing reasons the Superseding Indictment should be dismissed for lack of venue.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Superseding Indictment against them be dismissed.

Dated: September 11, 2023                                        Respectfully submitted,

<table>
<tr>
<td>

Maria Temkin, Esq.
*Attorney for Defendant Valeriia Ermakova*
*Admitted Pro Hac Vice*

TEMKIN & ASSOCIATES, LLC
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 939-4181
Email: maria@temkinlegal.com

</td>
<td>

Anna V. Brown, Esq
*Attorney for Defendant Anton Napolsky*
*Admitted Pro Hac Vice*

BROWN LEGAL CONSULTING, LLC
10 Rittenhouse Rd.
Frenchtown, NJ 08825
Telephone: (856) 357-4651
Email: anna@brownlegalconsulting.com

</td>
</tr>
</table>

cc:      Clerk of the Court (By ECF)
          Counsel of Record (By ECF)